UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
APR 13 2026
CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DOE DEPUTY

Case No. 3:25-cv-03387-JLS-GC

**ALIREZA "ALI" SALEMI,**
Plaintiff,

**v.**

**U.S. DEPARTMENT OF HOMELAND SECURITY; FEDERAL BUREAU OF INVESTIGATION; CITY OF CARLSBAD; CARLSBAD POLICE DEPARTMENT; CITY OF SAN DIEGO; SAN DIEGO LAW ENFORCEMENT COORDINATION CENTER (SD-LECC); ENCINITAS UNION SCHOOL DISTRICT; STAYBRIDGE SUITES CARLSBAD / IHG HOTELS & RESORTS; SMILES FOR HEALTH DDS; CALIFORNIA DENTAL BOARD; JOHN DOES 1–50,**
Defendants.

# FIRST AMENDED COMPLAINT

**CIVIL RICO (18 U.S.C. § 1964(c)); 42 U.S.C. §§ 1983, 1985; BIVENS; CAL. PENAL CODE §§ 245(a)(1), 273a, 422**
**JURY TRIAL DEMANDED**

## I. INTRODUCTION & THE RICO ENTERPRISE

**1.** Plaintiff Alireza Salemi brings this First Amended Complaint to address a nine-year pattern of racketeering activity executed by an association-in-fact enterprise (the "Enterprise").

**2.** The Enterprise consists of a coordinated network including federal agencies (DHS, FBI), regional intelligence hubs (SD-LECC), municipal government (City of Carlsbad, City of San Diego), state agencies (California Dental Board), and private-sector "Community Partners" (Smiles for Health DDS and Staybridge Suites Carlsbad / IHG Hotels & Resorts).

**3.** The Hub-and-Spoke Model: The SD-LECC serves as the "Hub," utilizing UASI Goal 5 federal funding to maintain a "Threat Assessment" profile of the Plaintiff. The "Spokes" — private and local defendants — receive actionable "situational awareness" data from this hub, which they use to perform "interventions" and "neutralization" tactics against Plaintiff and his minor autistic son.

**4.** Common Purpose: The shared goal of the Enterprise is the persistent monitoring, psychological intimidation, and physical neutralization of the Plaintiff as a perceived "soft target" threat, as defined in the SDUA Homeland Security Strategy (§ 3.1) and the DHS CP3 Strategy.

## II. JURISDICTION, VENUE, AND THE DISCOVERY RULE

**5.** This Court has subject-matter jurisdiction under 18 U.S.C. § 1964(c) (Civil RICO), 42 U.S.C. § 1983, and 28 U.S.C. § 1331 (Federal Question). Supplemental jurisdiction over state claims exists under 28 U.S.C. § 1367. Bivens jurisdiction exists for constitutional claims against federal defendants. See Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

**6.** Venue is proper in this district under 28 U.S.C. § 1391(b) because all or substantially all events giving rise to this action occurred in San Diego County, California.

**7.** Interstate Nexus: The Enterprise affects interstate commerce through:

(a) IHG Hotels & Resorts (Staybridge Suites) is a multinational corporation headquartered in Denham, United Kingdom, operating over 6,000 hotels across 100+ countries, with interstate and international reservations processed through IHG's centralized booking system. Plaintiff's room reservations, payments, and communications with hotel staff utilized interstate wire communications and IHG's interstate banking infrastructure. The December 24-25, 2025 vent sabotage directly impacted IHG's interstate business operations;

(b) Electronic Health Record (EHR) portals and insurance clearinghouses: The falsified dental progress notes (Exhibit E) and the "paranoid schizophrenia" medical record entry (Exhibit V) were transmitted through interstate EHR systems (Epic, Cerner, or similar platforms operating across state lines) and insurance networks that process claims nationally;

(c) Federal UASI/HSGP grant funds: The receipt and expenditure of federal DHS/FEMA funds ($448,389.21 BearCat, $30,443 night vision, $619,528 U-MERV, $159,085 Dejero) flowing from Washington D.C. to California demonstrates direct interstate financial flows. Equipment vendors Licentia Arms Co. and TNVC Inc. ship tactical surveillance equipment from out-of-state facilities;

(d) U.S. Mail and interstate wires: FBI tip submissions via tips.fbi.gov, FOIA requests, CPRA responses, and Dental Board communications all utilized interstate electronic communications;

(e) ViaSat, Inc. is a federal defense contractor providing satellite communications services to the U.S. military and operating across multiple states. The workplace harassment described in ¶¶27, 37, 37A occurred at a facility engaged in interstate and international commerce.

**8.** The Discovery Rule (Statute of Limitations): Although the Enterprise began its pattern of activity in 2016, Plaintiff experienced continuous harassment, assault, and surveillance but could not identify the perpetrators or their coordinated structure. In mid-2020, Plaintiff hired a private investigator (Orange County Private Investigator) who concluded the pattern was attributable to "corruption in government" but could not identify specific defendants, funding sources, or the institutional framework linking the attacks. In mid-2020, Plaintiff hired a private investigator who concluded the pattern was attributable to "corruption in government". The private investigator, a licensed professional with 20 years

of law enforcement experience, conducted investigation. Despite investigation, the PI could not identify specific perpetrators, institutional affiliations, or funding sources due to the covert nature of the harassment and the absence of publicly available records linking surveillance activities to government entities. The PI's findings of "corruption in government" represented his professional assessment based on the systematic and coordinated nature of the harassment, but provided no actionable intelligence identifying specific defendants or the UASI Goal 5 funding nexus that Plaintiff discovered only in March 2026.Despite ongoing efforts to obtain assistance from law enforcement, attorneys, and medical professionals throughout 2020–2026, Plaintiff was systematically denied investigation, documentation, and legal representation. Plaintiff could not discover through reasonable diligence—and did not in fact discover—the interconnected nature of the Enterprise or the federal funding nexus (UASI Goal 5) until March 2026, when Plaintiff obtained:

(a) CPRA production R005766 containing CERT Unit 8 "Terrorism Awareness" training materials revealing the specific surveillance tactics (choke-point intercepts, proximity pressure, pre-positioning, mirroring, feints, prop usage, swarms, and property tampering) that had been deployed against Plaintiff since 2016;

(b) DHS grant "Face Sheets" showing $30,443 in night vision and thermal imaging equipment procurement funded through UASI Goal 5 for deployment in the Palomar Airport Road area;

(c) UAWG Minutes showing City of Carlsbad's formal integration into the SD-LECC intelligence sharing network and voting membership in the Urban Area Working Group;

(d) FY23 UASI Agreement between City of San Diego (Administrative Agent) and City of Carlsbad establishing the Hub-and-Spoke funding and coordination structure; and

(e) Resolution 2025-182 and BearCat Portfolio documents proving the City's adoption of PATRIOT Act compliance policies and procurement of the $448,389.21 armored surveillance vehicle.

Prior to March 2026, Plaintiff suspected coordinated activity but lacked admissible documentary evidence identifying the Enterprise defendants, their association-in-fact relationship, the federal funding nexus, the specific municipal policies and customs giving rise to Monell liability, or the predicate acts constituting the RICO pattern. Without these documents, Plaintiff could not have stated a plausible RICO claim under Twombly/Iqbal pleading standards or survived a motion to dismiss.

The statute of limitations for RICO and civil rights claims is therefore tolled under the federal Discovery Rule. See Rotella v. Wood, 528 U.S. 549 (2000) (discovery rule applies to civil RICO); Merck & Co. v. Reynolds, 559 U.S. 633 (2010) (statute runs when plaintiff discovers facts constituting the violation through reasonable diligence). Additionally, the statute is tolled under the doctrine of fraudulent concealment, as Defendants actively suppressed records (CPD incident reclassifications, Dental Board refusal to audit laser logs, FBI "no responsive records," Rady Hospital "no records

found"), refused investigations, and concealed their coordinated activities through institutional denial and evidence destruction. See Hobson v. Wilson, 737 F.2d 1 (D.C. Cir. 1984).

**8A.** Related Case: This action is related to Salemi v. City of Carlsbad et al., Case No. 3:25-cv-02934-AGS-MSB (S.D. Cal.), filed November 20, 2025, which sought preservation of CPRA records and emergency relief for workplace-based retaliation. That case demonstrated the institutional coordination described herein: the City of Carlsbad and San Diego County District Attorney jointly opposed the preservation order (ECF Nos. 31, 38; Exhibit Z.11), and the Court denied the motion on April 3, 2026 (ECF No. 54; Exhibit Z.10). The evidence gathered in that case — including CPRA productions showing contradictory responses and surveillance infrastructure documents — forms the factual basis for the RICO enterprise allegations in this First Amended Complaint.

## III. MONELL LIABILITY: THE CITY OF CARLSBAD POLICY

**9.** Under Monell v. Department of Social Services, 436 U.S. 658 (1978), the City of Carlsbad is liable for the constitutional violations described herein because they result from an official municipal policy and custom.

**10.** The Policy: The City has formally adopted the CERT Unit 8 "Terrorism Awareness" training curriculum. This policy instructs over 220 local civilians and volunteers to engage in "surveillance" and identify "people who don't belong" (Indicator #6). The City procured $30,443 in night vision devices and thermal imaging, an armored BearCat vehicle ($448,389.21), and equipped CERT volunteers with auxiliary radio communications for direct field reporting to SD-LECC and the FBI (Exhibits W, X, Z, Z.2 — CERT Manual, Resolution 2025-182, BearCat Portfolio, UAWG Minutes).

**11.** The Execution: This policy created the "custom" of organized stalking and community-based harassment faced by Plaintiff at Staybridge Suites and Smiles for Health, where staff members acted as deputized participants in the City's Goal 5 infrastructure. The City of Carlsbad, represented by Kimberly Young, is a voting member of the Urban Area Working Group (UAWG) that approves and directs these surveillance assets. The City of San Diego, as UASI Administrative Agent, funds and authorizes all surveillance equipment purchases through binding grant agreements and maintains fiscal oversight of their deployment (Exhibit Y — FY23 UASI Agreement). See City of Canton v. Harris, 489 U.S. 378 (1989).

## IV. PARTIES

### A. Plaintiff

**12.** Plaintiff Alireza Salemi is an individual residing at 2735 Palomar Airport Road, Carlsbad, California 92009. Plaintiff is the father and legal guardian of a minor autistic son (born February 3, 2013), referred to herein as "Minor Son" to protect his identity.

### B. Defendants

**13.** Defendant SMILES FOR HEALTH DDS is a dental practice located at 2656 Gateway Road, Suite 145, Carlsbad, California 92009. At all relevant times, it employed Hygienist Allison Schulz and operated under the supervision of Dr. Zorros, DDS.

**14.** Co-Conspirator DENTAL HYGIENIST ALLISON SCHULZ (identified as John Doe 1) is a dental hygienist employed at Smiles for Health who performed the September 2, 2025 Class IV laser procedure on Plaintiff without consent, without dentist supervision, without proper documentation, and with falsified progress notes. She is sued herein as John Doe 1 and will be added by name as a primary defendant upon further discovery.

**15.** Co-Conspirator DR. ZORROS, DDS (identified as John Doe 2) is the supervising dentist at Smiles for Health whose name appears on falsified progress notes purporting to document an examination that never occurred on September 2, 2025. He is sued herein as John Doe 2 and will be added by name as a primary defendant upon further discovery.

**16.** Defendant STAYBRIDGE SUITES CARLSBAD / IHG HOTELS & RESORTS is a hotel located near Palomar Airport Road, Carlsbad, California, where Plaintiff resided during the relevant period. At all relevant times, IHG operated and managed the property through its staff, including General Manager Jeff (last name unknown).

**16A.** Defendant ENCINITAS UNION SCHOOL DISTRICT (EUSD) is a public school district and political subdivision of the State of California, responsible for the acts, policies, practices, and customs of its employees and agents at Flora Vista Elementary School. At all relevant times, EUSD was responsible for providing mandated 1:1 supervision for Plaintiff's minor autistic son and for maintaining playground safety. EUSD's systematic failure to supervise, failure to investigate the 2023 and June 28, 2024 finger fractures, and refusal to produce CPRA-requested records regarding UASI/DHS coordination demonstrate its participation in the Enterprise

**17.** Defendant CITY OF CARLSBAD is a municipal corporation and political subdivision of the State of California, responsible for the acts, policies, practices, and customs of its employees and agents, including the Carlsbad Police Department.

**18.** Defendant CARLSBAD POLICE DEPARTMENT (CPD) is a department of the City of Carlsbad operating under color of state law. CPD officers, including Officer Eyestone and Officer Hecker, systematically refused to investigate Plaintiff's criminal complaints, classifying felony assaults as "civil matters" in incidents #250087291 and #250094323.

**18A**. Defendant CITY OF SAN DIEGO is a municipal corporation and political subdivision of the State of California, serving as the Administrative Agent and grant recipient for the San Diego Urban Area Security Initiative (UASI) program. The City of San Diego receives federal DHS/FEMA Homeland Security Grant Program (HSGP) funds and

distributes them to sub-recipients including the City of Carlsbad, SD-LECC, and other regional partners through binding grant agreements. As UASI administrator, the City of San Diego approves project vetting, equipment procurement, and surveillance infrastructure deployment under UASI Goal 5. This includes the authorization and reimbursement of surveillance equipment used to monitor Plaintiff: the $448,389.21 BearCat armored vehicle (Exhibit Z), the $619,528 U-MERV aerial surveillance platform with $159,085 Dejero live video streaming (Exhibit Z.1), and $30,443 in night vision and thermal imaging devices. The City of San Diego's Office of Emergency Services (County OES) processes all reimbursement claims and maintains fiscal oversight of how these surveillance assets are deployed against targets like Plaintiff. (Exhibit Y — FY23 UASI Agreement between City of San Diego and City of Carlsbad, signed by Management Analyst, dated May 19, 2025).

**19.** Defendant CALIFORNIA DENTAL BOARD is the state agency responsible for licensing and disciplining dental professionals in California. The Board closed Plaintiff's complaint on December 16, 2025, with a "no violation found" determination based solely on an undated photograph provided by the dental practice, without independent investigation.

**20.** Defendant SAN DIEGO LAW ENFORCEMENT COORDINATION CENTER (SD-LECC) is the regional fusion center operating under DHS UASI funding administered by the City of San Diego, responsible for coordinating intelligence and surveillance activities among law enforcement partners in the San Diego region, including the City of Carlsbad.

**21.** Defendant U.S. DEPARTMENT OF HOMELAND SECURITY (DHS) is a federal agency that funds, oversees, and coordinates the regional surveillance and "persistent monitoring" infrastructure under UASI Goal 5 deployed in the Carlsbad/Palomar Airport Road area.

**22.** Defendant FEDERAL BUREAU OF INVESTIGATION (FBI) received two separate tip submissions from Plaintiff (September 14, 2025 and November 7, 2025) reporting a death threat against his minor son. The FBI returned a FOIA response of "no responsive records" on November 14, 2025, demonstrating deliberate suppression of reports related to Plaintiff's family's safety.

**23.** Defendants JOHN DOES 1–70 are individuals, known and unknown, who participated in the organized stalking, assault, poisoning, intimidation, and child torture described herein, operating as part of the RICO enterprise. Known co-conspirators identified within John Does include: John Doe 1 (Dental Hygienist Allison Schulz); John Doe 2 (Dr. Zorros, DDS); John Doe 3 (General Manager Jeff, last name unknown, Staybridge Suites Carlsbad — authorized vent repair and directed maintenance to "do whatever makes him happy" while failing to investigate or report the chemical hazard); John Doe 4 (Maintenance Technician Umberto, last name unknown, Staybridge Suites — physically opened the contaminated vent on December 25, 2025, dismissed the exposed insulation as "normal," and sealed the vent only after GM Jeff's instruction); John Does 5–10 (additional Staybridge Suites Carlsbad staff, including front desk personnel, maintenance workers, and security staff who participated in or had knowledge of the vent

contamination, electrical tampering, acidic towel incidents, and chemical exposures in Rooms 206 and 306); John Does 11–20 (CERT volunteers or off-duty law enforcement personnel executing day-to-day harassment operations in the Palomar Airport Road area); John Does 21–50 (additional unknown participants). Their full identities will be ascertained through discovery, including hotel employee records, key-card access logs, and maintenance work orders, and this complaint will be amended to name them as primary defendants accordingly. John Does 51-60 (Encinitas Union School District staff, contractors, or volunteers who failed to provide mandated 1:1 supervision during the 2023 and June 28, 2024 finger fractures, received UASI-related payments for "safety presence" or "monitoring," or coordinated with SD-LECC regarding Plaintiff's minor son); John Does 61-70 (Rady Children's Hospital staff who participated in concealing abuse records, omitting stroke-alert narratives, or inserting the "paranoid schizophrenia" entry into Minor Son's medical records).

## V. STATEMENT OF FACTS

### A. Nine-Year Pattern of the Enterprise (2016–Present)

**24.** The Enterprise's intent to neutralize Plaintiff was established as early as November 2016. On November 11, 2016, Plaintiff discovered targeted property damage and "Big Brother" themed graffiti at his Denver, Colorado residence, signaling the onset of a surveillance-based intimidation campaign that would follow Plaintiff to Carlsbad, California. The harassment began following a personal conflict in Colorado that resulted in contact with Colorado Human Health Services and workplace retaliation. In September 2017, as Plaintiff relocated from Denver to Carlsbad for employment at ViaSat, Inc. (a federal defense contractor), a man was observed surveilling Plaintiff's Denver property during his departure. Upon arrival in Carlsbad, the pattern of coordinated harassment resumed without interruption, confirming the Enterprise's ability to operate across state lines.

**25.** From 2016 to the present, Plaintiff and his minor son have been subjected to a continuing campaign of physical assaults, poisoning, property sabotage, and surveillance. These acts mirror tactics taught in the Carlsbad CERT "Unit 8: Terrorism Awareness" manual produced via CPRA Request R005766-022326, including fixed-location choke-point intercepts, proximity pressure, pre-positioning, mirroring, feints, prop usage, non-verbal cues, swarms, and property tampering.

**26.** From late 2017 through the present, Plaintiff has been subjected to repeated low-level harassment that created constant stress and plausible deniability. This included frequent path-blocking and crowding of personal space in public places, close-proximity tails and right-side flanking, vehicles suddenly braking in front of Plaintiff's car with no apparent obstacle, pre-positioned actors appearing at blind spots and choke points, strangers making triggering gestures (such as pointing a finger downward), and minor property damage such as chipped countertops, sanded cabinet edges, and small holes appearing in flooring with no sign of forced entry. These incidents occurred with such regularity that Plaintiff eventually stopped logging every occurrence. The pattern is consistent with tactics described in Carlsbad CERT Unit 8 "Terrorism Awareness" training materials obtained through CPRA productions and is further supported by video recordings posted

on Plaintiff's TikTok account (@al18476). This ongoing low-level pressure escalated over time into more serious physical harm, including the September 2, 2025 laser assault and the December 24–25, 2025 vent sabotage at Staybridge Suites. Medical testing in September–October 2020 revealed elevated arsenic levels in Plaintiff's blood and urine with no identified dietary or environmental source (Exhibit Z.8). Throughout this period Plaintiff also experienced symptoms, including unexplained head pressure, tinnitus, burning skin, and progressive visual impairment documented by retina specialist Dr. Ehsan Mozayan-Isfahani on November 25, 2020 (Exhibit Q).

**27.** Workplace Coordination: Between 2016 and 2024, Plaintiff's supervisors Stuart Floyd and Curt Coleman made repeated statements indicating prior knowledge of the campaign. Coleman explicitly stated that "this abuse will continue for a long time and there is nothing I can do to stop it." Floyd inquired whether Plaintiff's "house had fallen apart yet." These statements demonstrate that supervisors at ViaSat, Inc., a federal defense contractor, had advance knowledge of the organized harassment targeting Plaintiff, establishing workplace participation in the Enterprise's coordinated activities.

**27A.** Causation of Physical Injuries (2019–2020): The sudden onset of unexplained medical conditions beginning in August 2019 — including permanent tinnitus (¶28), severe neck disc problems with no trauma (¶29), bilateral hip labral tears (¶30), and sudden vision loss (¶31) — occurred during the period when Plaintiff's ViaSat supervisors Coleman and Floyd demonstrated advance knowledge of the "abuse" campaign (¶27). The September–October 2020 toxicology testing revealing elevated arsenic levels with no dietary source (¶26, Exhibit Z.8), combined with the pattern of unexplained injuries requiring no precipitating trauma, establishes that these injuries were caused by covert chemical or directed-energy exposure consistent with the Enterprise's "neutralization" objective. The 2019-2020 injuries are directly and foreseeably caused by the same Enterprise that later executed the overt September 2, 2025 dental laser assault — representing an escalation from covert to overt attacks, not independent incidents.

**B. Physical Injuries to Plaintiff (2019–2025)**

**28.** August 31, 2019: Plaintiff suddenly developed permanent tinnitus accompanied by dizziness and balance problems. These accompanying symptoms resolved over time, but the tinnitus has persisted without resolution.

**29.** January 28, 2020: Plaintiff suddenly developed severe neck pain due to disc problems between vertebrae, with no prior injury or trauma. The pain was intense and persistent, documented in medical records, and contributed to ongoing mobility limitations.

**30.** July–August 2020: Bilateral hip labral tears, burning skin, knee/back pain.

**31.** October–December 2020: Sudden night blindness (September 22, 2020), permanent eye floaters, bright halos, and pulsatile tinnitus, documented by retina specialist Dr. Ehsan Mozayan-Isfahani on November 25, 2020, with no medical explanation. Plaintiff filed a California EDD State Disability Insurance claim based on inability to work due to sudden vision impairment (Exhibit R).

**32.** May 21, 2021: Plaintiff suffered a frozen shoulder with labral tear from a deliberate injection on May 21, 2021. The injury caused severe pain and limited range of motion,

requiring over a year of physical therapy. As of April 2026, the shoulder remains partially impaired with persistent pain and reduced mobility for specific movements (e.g., overhead reaching, lifting), as documented in follow-up records with Dr. Robert Afra.

**33.** October 16, 2025: Whole-body burning after eating lunch in Staybridge Suites room while recording device was turned off. Poison Control stated the cause was "hard to find."

**33A.** Pre-Assault Baseline (September 9, 2024): One year before the September 2, 2025 laser assault, Plaintiff was examined by periodontist Dr. Omer Aniso, who documented healthy gum tissue with no signs of laser damage, laceration, or recession. (Exhibit D). This independent third-party examination establishes Plaintiff's baseline oral health immediately prior to the Smiles for Health assault and directly refutes any claim that the damage documented post-September 2, 2025 was pre-existing or caused by natural deterioration.

**34.** On September 2, 2025, Plaintiff attended Smiles for Health DDS for a routine cleaning. He requested full-mouth X-rays; the hygienist refused, stating "you don't qualify," and shushed Plaintiff when he questioned the refusal. No pre-treatment photographs were taken. A smooth, tasteless gel was applied to Plaintiff's gums with no explanation, after which his teeth and gums became completely numb. Dental Hygienist Allison Schulz then scraped aggressively before activating a Biolase Epic X Class IV diode laser on Plaintiff's gums, stating only "we need to kill bacteria." No verbal or written consent was obtained for a laser procedure. No supervising dentist was present in the room during the laser use, in violation of California BPC §§ 1909 and 1914, which require direct dentist supervision of intra-oral laser use by hygienists. No device log was provided upon HIPPA request, just a picture of the device (Exhibit H — undated Biolase photo). The procedure caused immediate bleeding from gum lacerations, cracking of at least thirteen teeth, charring of enamel, and permanent thermal damage (Exhibit G — damage photographs; Exhibit I — periodontal chart, January 15, 2026, documenting ongoing recession and tissue loss). Corrective surgical grafts and related treatment are estimated to cost at least $4,383. The laser procedure was billed out-of-pocket at $90 with no submission to insurance (Exhibit F — billing record), despite Class IV laser procedures being billable under standard dental billing protocols — evidencing intent to conceal the procedure. Progress notes falsely state Plaintiff presented with discomfort (Exhibit E — progress notes) and that a dentist examined him; neither is true. At least six licensed dentists subsequently examined Plaintiff and verbally confirmed laser-induced damage but refused to provide written documentation, with one forensic odontologist stating "dental mutilation is hard to prove" before ending the call.
On October 15, 2025, periodontist Dr. Ann Kania, DDS, MS examined Plaintiff and determined that surgical gum grafting would be required to repair the tissue loss and recession caused by the September 2, 2025 Class IV laser procedure, with estimated costs exceeding $4,383. (Exhibit D).

**35.** On June 29, October 11–12, and November 27, 2025, Plaintiff awoke from short, unplanned sleeps (20–40 minutes) to find new dental damage: straight, heat-cut fractures

at the gum line with orange-brown grooves, gum recession, and no prior grinding. Plaintiff has no active grinding habit, ruling out bruxism as cause. These match the September laser pattern—identical thermal signatures, no pain during sleep, door unblocked, hotel key-card access possible. A January 17, 2026 enamel chip exposed charred dentin. Multiple forensic dentists declined examination, possibly due to coordinated pressure from local authorities or Enterprise participants—further evidencing obstruction and interference with Plaintiff's access to justice. Preservation of hotel key-card logs for those dates is demanded. These ongoing incidents extend the Enterprise's assault pattern into 2026. Hotel key-card access logs for these dates are demanded.

**36.** December 2, 2025 — Suspected Chemical Exposure in Hotel Lobby: On December 2, 2025, at approximately 7:00 PM, following time spent in the Staybridge Suites lobby, Plaintiff experienced sudden onset of dark discoloration of veins in both arms, severe joint burning, and pins-and-needles sensations across his body with an approximate 60-minute delay from exposure. Symptoms persisted for several hours. Plaintiff documented the symptoms contemporaneously. No new medications had been introduced. These symptoms are consistent with anticholinergic chemical exposure, though formal toxicological confirmation was not obtained due to the delay in symptom onset. This incident is part of the ongoing pattern of chemical attacks at the Staybridge Suites Carlsbad.

**37.** OFCCP Complaint — Workplace Harassment at Federal Contractor: On December 1, 2025, a U.S. Department of Labor Office of Federal Contract Compliance Programs (OFCCP) Investigator (Investigator Owens) contacted Plaintiff and opened a formal complaint regarding workplace harassment at ViaSat, Inc. and Avaya, both federal contractors. Plaintiff reported to Investigator Owens that the same coordinated pattern of harassment experienced outside the workplace — crowding, blocking, property sabotage, and intimidation — was replicated inside these federal contractor workplaces by supervisors and colleagues, beginning as early as 2018. The OFCCP's opening of this complaint constitutes official federal recognition of the workplace harassment pattern and establishes that the Enterprise's reach extended into federally regulated contractor environments, further satisfying the interstate commerce nexus for RICO purposes (Exhibit Z.7 — OFCCP complaint documentation).

**37A.** ViaSat HR Retaliation and Litigation Surveillance: Following the week of October 16–22, 2025, when Plaintiff informed his supervisor that Carlsbad Police were investigating the September 2, 2025 dental assault, ViaSat HR representative Sarah Poe initiated contact on November 26, 2025, offering unsolicited "counseling sessions" and paid leave. On December 15, 2025, Poe sent an email explicitly stating: "I saw you did manage to get your litigation moving and named Viasat in it in regard to badge swipes. I need to connect with you to understand the scope of your request." (Exhibit L). This demonstrates: (1) ViaSat actively monitoring Plaintiff's federal RICO litigation in real-time; (2) coordinated retaliation immediately following Plaintiff's report to law enforcement; and (3) witness intimidation and interference with Plaintiff's exercise of his right to petition the courts for redress of grievances.

**C. Assaults on Plaintiff's Minor Autistic Son (2017–2025)**

**38.** December 7, 2017: *Unexplained* sharp-force genital laceration at the family home. Rady Children's Hospital staff delayed treatment approximately 30 minutes despite active bleeding. No forensic examination, weapon sweep, or mandatory abuse report was initiated that night (Exhibit S — Rady ER Record, Page 1622, filed under seal).

**39.** January 18, 2020: Plaintiff's minor son experienced *unexplained* swelling and redness of the ear with no identified cause despite the child being in a supervised environment. No mandatory report was filed at the time (Exhibit U - Rady production Page 2031).

**40.** January 22, 2020: Four days after the ear injury, the County of San Diego authorized a $719.00 payment (CalEMA 2-900) for a non-consensual "Forensic Medical Exam" of Plaintiff's minor son, naming Social Worker Jessica Arrellano. Plaintiff was never informed of this state-funded forensic search — consistent with a preexisting surveillance profile targeting Plaintiff (Exhibit U.1 — CalEMA 2-900 abuse report, Page 14). On January 20, 2026, Rady Children's Hospital Lead Release of Information Specialist Cory Schwab, RHIT, responded to Plaintiff's formal request for incident reports, mandated reporter forms, abuse screenings, and social services referrals by stating "No records found." (Exhibit U.2 — Schwab denial email). This response is directly contradicted by the CalEMA 2-900 payment record on Page 12 and the child abuse report on Page 14 of the hospital's own production (MRN: H2248641, Release ID 114592880) — proving that abuse-related records do exist but are being actively concealed from the requesting parent. (Exhibit U.2: Rady Children's Hospital email exchange with Cory Schwab, RHIT, dated January 20, 2026).

**40A**. July 9, 2022: Plaintiff's minor son suffered an *unexplained* "Stroke Alert" activation at Rady Children's Hospital, presenting with facial droop and dysarthria. The diagnosis was recorded as Hemiplegic Migraine (ICD-10-CM: G43.409). Despite the severity of this event, the hospital's 2,700-page medical records production to Plaintiff omitted all narrative records from the July 9, 2022 emergency department visit, all MRI brain and MRA head imaging results, and all neurology clinic follow-up notes — while the diagnosis itself remains visible on Page 1 of the Problem List. This selective omission of records documenting a stroke-mimic event in a child is consistent with the pattern of record concealment described in ¶65(h). The selective omission of the stroke narrative constitutes spoliation. See Section IX(a) (preservation demand).

**41.** July 7, 2021: Left pinky sliced to the bone at surf camp while 1:1 supervision mandated for autism was not provided.

**42.** 2023: Right ring finger deliberately broken at school playground due to failure of mandated 1:1 supervision by Encinitas Union School District.

**43.** June 28, 2024: Second finger fracture at school during recess due to the same supervision failure.

**44.** August 6, 2025: Immediately before Plaintiff's federal filings, a clinical note was inserted into Minor Son's permanent medical record by Dr. Michaela Tsuha stating under family history: "Mother is concerned that father has schizophrenia (paranoid)." This entry serves as a "medical shield" to discredit Plaintiff's reports of physical injuries to his son and

create a pretextual basis for undermining his legal claims (Exhibit V — Rady Neurology Progress Note, Page 290, August 6, 2025, filed under seal).

**D. Hotel Sabotage and Poisoning — Staybridge Suites (October–December 2025)**

**45.** October–December 2025: Unknown chemical substances were released through AC vents in Rooms 206 and 306 at Staybridge Suites Carlsbad, causing severe itching, burning, stinging eyes, and needle-like pain across Plaintiff's body. Symptoms intensified when the AC was on and ceased when it was off.

**46.** Hotel staff attributed symptoms to "allergies" and relocated Plaintiff from Room 206 to Room 306 without investigation or repair — establishing a pattern of deliberate denial and relocation rather than remediation.

**47.** On December 24–25, 2025, at Staybridge Suites Carlsbad (Room 306), Defendants IHG / Staybridge Suites and their agents engaged in deliberate sabotage. Plaintiff experienced severe itching and coughing caused by fiberglass/insulation fibers released into the AC vent. Maintenance arrived at approximately 9:49 AM on December 25, opened the vent in Plaintiff's presence, observed dangling duct tape and exposed insulation, and repeatedly dismissed the hazard as “normal,” “not an issue,” or “allergies.” (Exhibit A: audio recording). General Manager Jeff instructed maintenance to “do whatever makes him happy.” The vent was sealed around 11:00 AM. Immediately after sealing, all itching and coughing ceased, proving the released insulation was the direct cause. (Exhibit B: photos of exposed insulation and dangling tape).

**48.** During the same maintenance visit on Christmas Day, while Plaintiff was present, all kitchen electrical outlets (including the refrigerator and oven) suddenly lost power. Plaintiff reported the outage. Maintenance returned approximately one hour later (after Plaintiff had left for a walk during Christmas lunch hour) and restored power in under 30 seconds — with no inspection and no tools. This demonstrated advance knowledge of the exact cause and location of the outage. (Exhibit C: video). The timing and method were clearly intended to isolate and inconvenience Plaintiff on a holiday with minimal staffing.

**49.** This incident repeats an earlier similar vent sabotage in Room 206, where staff again attributed symptoms to “allergies” and relocated Plaintiff instead of investigating or repairing the source. These coordinated acts of physical harm and sabotage constitute predicate acts of assault and obstruction in furtherance of the Enterprise.

**E. Direct Threats Against Plaintiff and Minor Son**

**50.** On approximately July 15, 2025, while Plaintiff was in the lobby of Staybridge Suites Carlsbad, one individual approached and stated: "You should be happy they haven't killed your son yet." On a separate occasion, a different individual stated: "We don't kill terrorists — we just torture them."

**51.** Plaintiff reported the July 2025 death threat against his minor son to the FBI via tips.fbi.gov on September 14, 2025, and again on November 7, 2025 : (Exhibit P — tip submission confirmations). On November 8, 2025, during a follow-up call, the FBI operator disconnected while Plaintiff was providing evidence of dental sabotage. On

November 14, 2025, a FOIA request returned "no responsive records." (Exhibit O — FBI FOIA response).

**F. Police and Agency Cover-Up**

52. Carlsbad Police Department, including Officer Hecker (incident #250087291) and Officer Eyestone (incident #250094323), repeatedly classified felony assaults and death threats as "civil matters" or "no crime," including the September 2, 2025 dental laser assault (Exhibit J — CAD Log; Exhibit K — CPRA Log).

53. California Dental Board closed Plaintiff's complaint on December 16, 2025, based solely on an undated photograph supplied by the dental office, without independent investigation, expert review, or contact with Plaintiff. The closure letter, signed by Consumer Services Analyst Genie Albertsen (Case No. 2026-1311), stated only that "no violation of the Dental Practice Act was found" with no further explanation. Additionally, the Dental Board refused to release digital laser logs and audit trails from Smiles for Health's Biolase Epic X device, citing "investigatory exemptions" to shield the records from Plaintiff despite the Board's closure determination. This concealment of the only objective electronic evidence that would prove the Class IV laser was used constitutes active obstruction and destruction/concealment of records in violation of 18 U.S.C. § 1519 : (Exhibit M — Dental Board Notice of Closure, Case No. 2026-1311).

54. San Diego County District Attorney Non-Response: Plaintiff repeatedly notified the San Diego County District Attorney's Office of serious crimes and child endangerment over multiple years (emails: June 8, 2020; October 4, 2025 to SanDiegoDA@sdcda.org; November 20, 2025), yet received no investigation, victim services, or referral to law enforcement. The DA's joinder in opposing the preservation order in Case No. 3:25-cv-02934-AGS-MSB (ECF No. 38) further confirms institutional coordination to suppress evidence of the Enterprise's activities.

55. CalVCB Denial — Evidence of CPD Cover-Up: The California Victim Compensation Board (CalVCB) denied Plaintiff's application No. A25-10183473 arising from the September 2, 2025 dental laser assault. The denial was based on the Carlsbad Police Department's failure to open a crime case for the incident — CPD classified the dental laser assault as a "civil matter" (incident #250094323), which directly caused CalVCB to deny Plaintiff crime victim benefits. This creates a compounding injury: CPD's deliberate misclassification not only shielded the perpetrators from criminal investigation but also stripped Plaintiff of state crime victim compensation he would otherwise have been entitled to. The causal chain — CPD misclassification → CalVCB denial → loss of compensation — constitutes an independent basis for deliberate indifference liability and demonstrates that CPD's "civil matter" label was not a good-faith legal determination but an affirmative act of cover-up in furtherance of the Enterprise (Exhibit N — CalVCB denial letter, Application No. A25-10183473).

56. Systematic Federal Obstruction and Documented Reporting: Plaintiff has exhausted administrative avenues by formally reporting RICO predicate acts and threats to life to multiple federal agencies. Documented submissions include: FBI FOIPA Request No. 1678822-000 (filed August 28, 2025, acknowledged by FBI Headquarters); FBI eFOIA files Q265433/D165543279 (released September 5, 2025); USMS FOIA Request No.

2025-USMS-FOIA/PA-000486 (final response received September 3, 2025); DOJ Civil Rights Division Report No. 661289-CTH (filed September 6, 2025); DOJ Civil Rights Division Police Misconduct Report No. 679709-LMP (filed December 2, 2025); California CRD Tickets No. 189461 and 189655 (filed September 2025); INTERPOL CCF Request No. CCF/134/R1546.25 (filed August 2025, deemed admissible September 15, 2025); OCR/OJP submission (filed September 6, 2025); and OIG complaint (filed September 14, 2025). Congressional outreach was made to Representative Mike Levin (Casework Authorization filed December 4, 2025) and Assemblywoman Boehmer (December 5, 2025). Despite specific incident dates and documented evidence, the FBI issued a "no responsive records" determination — a bad-faith effort to conceal evidence of felony acts and protect the Enterprise's UASI Goal 5 funding structure.

**57.** Plaintiff formally notified FEMA and the DHS Office of Inspector General regarding the misapplication of SHSP/UASI funds ($30,443 for Night Vision and Thermal Imaging) for the purpose of domestic intimidation. The agencies' total failure to respond or audit these funds constitutes a state-created danger, as their silence empowered local Defendants to continue the assault on Plaintiff's family.

**57A.** Encinitas Union School District (EUSD) CPRA Obstruction: On February 3, 2026, Plaintiff submitted a California Public Records Act request to Encinitas Union School District requesting: (1) any document, email, or log mentioning Plaintiff or his minor autistic son; (2) playground maintenance/inspection logs for Flora Vista Elementary; (3) records of payments, stipends, or reimbursements to staff, contractors, or volunteers for "safety presence," "parent monitoring," "crowd control," or "special-needs supervision"; and (4) any correspondence or grant documents referencing UASI, DHS, HSI, fusion centers, or law-enforcement liaisons on district property. As of April 10, 2026 — 66 days later and 42 days beyond the statutory deadline under Gov. Code § 7922.535 — EUSD has failed to produce items 1, 3, or 4. This obstruction is directly relevant to the Enterprise's operation: Plaintiff's minor son suffered two unexplained finger fractures at Flora Vista Elementary (2023 and June 28, 2024) during mandated 1:1 supervision failures (¶¶42–43). Item 3 would reveal whether school staff received UASI-funded payments for monitoring Plaintiff's son as a "Community Partner" activity, mirroring the hotel and dental office pattern. Item 4 would prove SD-LECC coordination extended into educational institutions. EUSD's 66-day silence, despite statutory obligations, follows the same obstruction pattern as CPD, California Dental Board, FBI, and Rady Children's Hospital — demonstrating institutional coordination to conceal the Enterprise's reach into schools. (Exhibit Z.14 — EUSD CPRA Request, February 3, 2026), (Exhibit Z.15 — EUSD Attorney Response and Litigation Hold, April 10, 2026)

**58.** On April 3, 2026, this Court issued an Order (ECF No. 54 in Case No. 3:25-cv-02934-AGS-MSB) denying Plaintiff's Renewed Motion for Preservation Order. The record nonetheless reflects a material contradiction in the City of Carlsbad's CPRA responses that bears directly on evidence destruction risk. On March 26, 2026 (Request R005830-031626), the City invoked a statutory 14-day extension under Gov. Code § 7922.535(b), citing the need to search "voluminous amounts of records" regarding hotel and security vendor payments and UASI Goal 5 activities. Shortly thereafter — within the same request cycle — the City reversed course and declared there were "no responsive documents" for those identical categories. This internal contradiction, combined with

simultaneous "no responsive documents" findings across related requests (R005829-031626, R005841-031826), is consistent with either the recent destruction of records or their active concealment. Because electronic SAR logs, BTAM files, and CERT field observation reports are subject to short-term retention schedules of 30–90 days in eSAR/Guardian systems, any further delay in preservation materially increases the risk of permanent evidence loss.

## G. UASI Goal 5 Surveillance Infrastructure

**59.** The City of Carlsbad is a formal subrecipient of federal DHS funds through UASI and SHSP, administered by the City of San Diego as Administrative Agent. Under the FY23 UASI Agreement, the City of Carlsbad is bound to the governance of the San Diego Urban Area Working Group (UAWG) and must comply with regional "Information Sharing" and "Threat Assessment" mandates enforced by the City of San Diego through grant compliance requirements (Exhibit Y — FY23 UASI Agreement; Exhibit X — Resolution 2025-182).

**60.** The City procured $55,929 in thermal imaging optics and night vision goggles from tactical vendors Licentia Arms Co. and TNVC Inc., an armored BearCat vehicle ($448,389.21), and FY24 UASI funding for a UAS-Major Event Response Vehicle (U-MERV, $619,528) for aerial photography and deployable PTZ camera systems, and Dejero DTS Live Video ($159,085) for real-time drone video streaming to regional command posts (Exhibit Z — FY25 BearCat Portfolio; Exhibit Z.1 — FY24 U-MERV/Dejero Vetting Documents).

**60A.** CPRA Responses Confirm Enterprise Coordination: Subsequent CPRA responses dated March-April 2026 further confirm the Enterprise's coordinated surveillance operation:
(a) the City of Carlsbad confirmed no official police off-duty work, MOUs, or extra-duty contracts exist between CPD and Staybridge Suites (R005871, R005873, R005874), demonstrating that hotel staff actions occurred outside official police channels and must have been directed through "Community Partner" coordination;
(b) the City admitted that incident reports and field interview cards mentioning "Salemi," "2735 Palomar Airport Road," and specific hotel locations (laundry room, breakfast area) DO EXIST but are exempt from disclosure under California Evidence Code § 1040 as "official information" whose disclosure would harm the public interest (R005875); and
(c) SD-LECC Deputy Director Kristi Laughlin admitted that SD-LECC maintains a Guardian/eSAR surveillance database containing searches for "Salemi" and "2735 Palomar Airport Road," that SD-LECC provides "community-based monitoring" and "persistent monitoring" guidance to Carlsbad Police Department and private entities under UASI Goal 5, and that CERT volunteers submit Suspicious Activity Reports using SD-LECC templates—but classified all such records as "investigative/security records" exempt under Gov. Code § 7923.600. (Exhibits Z.12, Z.13)

**61.** SD-LECC serves as the regional clearinghouse. SD-LECC Intelligence Analysts maintain 35 full user licenses for case management and analytical software. On March 27, 2026, SD-LECC admitted it provides reporting templates and "Power of Hello" guides used by local partners, confirming it is the central hub for the monitoring logs sought by Plaintiff (Exhibit Z.3 — Laughlin email chain).

**62.** These facts are documented in CPRA productions and grant records already filed with the Court in related Case No. 3:25-cv-02934-AGS-MSB (ECF Nos. 20–39).

## VI. RICO ALLEGATIONS (18 U.S.C. § 1962(c) and § 1964(c))

### A. The Enterprise

**63.** Defendants and their co-conspirators constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4) — an association-in-fact engaged in activities affecting interstate commerce. The Enterprise operates through a Hub-and-Spoke model: SD-LECC is the Hub; private actors (Smiles for Health, IHG/Staybridge), local government actors (City of Carlsbad, CPD), state agencies (California Dental Board), and federal actors (DHS, FBI) are the Spokes. John Does 1–70 execute day-to-day harassment operations.

**64.** The Enterprise's common purpose is to neutralize Plaintiff as a perceived threat within the DHS UASI Goal 5 framework: to prevent him from seeking legal redress for injuries and to silence his documentation of misconduct.

### B. RICO Conspiracy (18 U.S.C. § 1962(d))

**64A.** Defendants conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of the Enterprise through a pattern of racketeering activity. The conspiracy is evidenced by:

(a) Agreement: The SD-LECC "Information Sharing" mandate (¶59) and "Community Partner" coordination model (¶11) constitute an express agreement among defendants to share intelligence about Plaintiff and coordinate "interventions";

(b) Knowledge: Each defendant knew the essential nature and scope of the Enterprise. ViaSat HR's December 15, 2025 email (Exhibit L) proves workplace participants monitored litigation filings. The City's admission that incident reports mentioning Plaintiff exist (¶60A(b)) proves institutional coordination;

(c) Overt acts in furtherance: Each defendant committed overt acts including the dental assault (September 2), CPD misclassification (September 3), hotel sabotage (December 24-25), hospital concealment (January 20, 2026), and City CPRA obstruction (March-April 2026).

A defendant may be liable for RICO conspiracy even if not guilty of substantive RICO, and need only agree to facilitate the scheme. See United States v. Neapolitan, 791 F.2d 489 (7th Cir. 1986); Schreiber Distributing Co. v. Serv-Well Furniture Co., 806 F.2d 1393 (9th Cir. 1986).

Plaintiff suffered the same injuries alleged in ¶66, proximately caused by the conspiracy.

**C. Pattern of Racketeering Activity**

**65.** Defendants have engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), consisting of multiple related predicate acts over a period exceeding nine years:

**(a) Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343):** Transmission of falsified dental progress notes, fraudulent billing records ($90 out-of-pocket laser charge), fabricated HIPAA responses, and the "paranoid schizophrenia" medical record entry through interstate wire communications including EHR portals and insurance clearinghouses.

**(b) Obstruction of Justice (18 U.S.C. § 1503):** CPD's systematic reclassification of felony assaults as "civil matters" (incidents #250087291 and #250094323); California Dental Board's closure of Plaintiff's complaint without investigation; and the FBI's "no responsive records" response to a documented death threat against a minor.

**(c) Tampering with Records (18 U.S.C. § 1519):** Fabrication of dental progress notes falsely stating Plaintiff presented with discomfort and that a dentist examination occurred; strategic insertion of a "paranoid schizophrenia" family history label into Minor Son's permanent medical record immediately before Plaintiff's federal filings.

**(d) Assault with Deadly Weapon (Cal. Penal Code § 245(a)(1)):** The September 2, 2025 Class IV laser assault on Plaintiff by Hygienist Allison Schulz, performed without consent, without supervision, and with falsified records, constituting a violent crime in aid of racketeering.

**(e) Assault by Irritant / Chemical Exposure and Obstruction (Cal. Penal Code § 245(a)(1) and 18 U.S.C. § 1503):** On December 25, 2025, at Staybridge Suites Carlsbad (Room 306), agents of Defendant IHG Hotels & Resorts released fiberglass/insulation into the AC vent, causing severe itching, coughing, and respiratory distress. Maintenance personnel falsely claimed the condition was "normal" and "allergies." After the vent was sealed around 11:00 AM, all symptoms immediately ceased. During the same maintenance visit, all kitchen electrical outlets (fridge and oven) were deliberately disabled. Maintenance returned alone after Plaintiff left for a walk and restored power in under 30 seconds with no inspection or tools — demonstrating pre-planned sabotage timed for Christmas Day with minimal staffing to isolate Plaintiff. This incident constitutes assault via harmful irritant and obstruction.

**(f) Extortion/Intimidation (18 U.S.C. § 1951):** Direct verbal threats — "You should be happy they haven't killed your son yet" and "We don't kill terrorists — we just torture them" — intended to deter Plaintiff from seeking legal redress.

**(g) Torture/Endangerment of a Minor (18 U.S.C. § 1201; Cal. Penal Code § 273a):** Multiple assaults on Plaintiff's minor autistic son — the 2017 genital laceration, 2021 finger slice to bone, and 2023/2024 finger fractures in supervised settings — each followed by institutional cover-up.

**(h) Destruction/Concealment of Records (18 U.S.C. § 1519):** Withholding of Class IV laser logs, EHR audit trails, eSAR/Guardian logs, and BTAM files, constituting ongoing concealment of predicate acts. Additionally, Rady Children's Hospital's January 20, 2026 declaration of "No records found" in response to Plaintiff's request for incident reports, mandated reporter forms, and abuse screenings — despite its own

production containing the CalEMA 2-900 county-funded forensic exam record and child abuse report — constitutes affirmative concealment of records documenting state action against Plaintiff's minor son. The hospital further omitted all narrative records, MRI/MRA imaging, and neurology follow-up notes from its son's July 9, 2022 stroke alert event while leaving the diagnosis visible on the Problem List, evidencing selective rather than accidental omission.

**65A.** Continuity: This pattern demonstrates both closed-ended continuity (multiple distinct schemes spanning 2016–2026: workplace harassment scheme, dental assault scheme, hotel poisoning scheme, child endangerment scheme, and records obstruction scheme) and open-ended continuity (ongoing threat of continued activity, as evidenced by the December 2025 hotel sabotage, January 2026 hospital record concealment, March 2026 City CPRA obstruction, and April 2026 EUSD CPRA obstruction — all occurring after Plaintiff's November 2025 federal filings, demonstrating the Enterprise's intent to continue indefinitely). See H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 241–42 (1989) (pattern requires "continuity plus relationship").

**D. RICO Injury**

**66.** Plaintiff has suffered direct and proximate injury to his business and property by reason of Defendants' racketeering activity, including: permanent dental and gum damage requiring surgical tissue grafts ($4,383+); permanent visual impairment; permanent tinnitus; ongoing medical expenses exceeding $50,000; property damage exceeding $100,000; loss of earning capacity; and ongoing fear, anxiety, and trauma to himself and his minor son. These injuries were the direct and foreseeable result of each predicate act described above.

## VII. CIVIL RIGHTS CLAIMS (42 U.S.C. §§ 1983, 1985)

### A. First Claim — Fourteenth Amendment: Deliberate Indifference / State-Created Danger

**67.** Defendants City of Carlsbad and CPD, through their policy and custom of classifying assaults on Plaintiff as "civil matters," created and exacerbated a state-created danger to Plaintiff and his minor son. The deliberate indifference is established by:

(a) Knowledge: CPD possessed advance knowledge of threats to Plaintiff through SD-LECC Guardian/eSAR database entries (¶60A(c)), incident reports naming "Salemi" and his address (¶60A(b)), and CERT Field Observation reports submitted by volunteers monitoring the Palomar Airport Road area (¶61);

(b) Deliberate failure to act: Despite this knowledge, Officer Hecker classified the dental laser assault as a "civil matter" (incident #250087291) and Officer Eyestone did the same for the July 2025 death threat against Minor Son (incident #250094323), refusing investigation in both cases;

(c) Affirmative danger creation: CPD's "civil matter" classification removed Plaintiff's access to state protection (criminal investigation, prosecution, victim services) while simultaneously maintaining him in SD-LECC's surveillance database, creating a one-way monitoring regime where Plaintiff is tracked but receives no protection from the tracking entities;

(d) Foreseeable escalation: The pattern progressed from low-level harassment (2016–2024) to overt assault (September 2, 2025) to death threats (July 2025) to chemical attacks (December 2025). CPD's refusal to investigate early incidents emboldened the Enterprise to escalate, making subsequent injuries foreseeable and proximately caused by CPD's deliberate indifference.

See Kennedy v. City of Ridgefield, 439 F.3d 1055, 1064 (9th Cir. 2006) (state-created danger requires affirmative act placing plaintiff in danger, knowledge of danger, deliberate indifference).

**68.** Defendant California Dental Board's administrative closure of Plaintiff's complaint without investigation, despite documented laser injuries, constitutes deliberate indifference under color of state law, removing Plaintiff's only administrative avenue for relief and increasing his vulnerability to ongoing harm.

**B. Second Claim — Fourth Amendment: Unreasonable Search and Seizure**

**69.** The county-funded secret forensic examination of Plaintiff's minor son on January 22, 2020 ($719.00, CalEMA 2-900), authorized without parental notice or individualized probable cause, constitutes an unreasonable search of the child's body in violation of the Fourth Amendment. The concealment of this forensic examination is further evidenced by Rady Children's Hospital's January 20, 2026 written response declaring "No records found" for abuse reports and incident documentation — despite its own medical records production containing the CalEMA 2-900 payment authorization and child abuse report proving the examination occurred. This institutional denial of the examination's existence compounds the Fourth Amendment violation by obstructing Plaintiff's ability to challenge the warrantless search through legal process.

**70.** The deployment of UASI-funded surveillance assets — U-MERV, PTZ cameras, night vision goggles, and thermal imaging — targeting Plaintiff and his residence without a warrant, judicial authorization, or legitimate investigative predicate constitutes ongoing unreasonable surveillance in violation of the Fourth Amendment.

**C. Third Claim — Monell Liability (City of Carlsbad and SD-LECC)**

**71.** The City of Carlsbad's adoption of UASI Goal 5 policies — including Resolution 2025-182 (PATRIOT Act compliance), CERT terrorism awareness training, procurement of tactical surveillance equipment, and SD-LECC intelligence integration — constitutes the "moving force" behind the constitutional violations alleged herein. See Monell v. Dep't of Social Services, 436 U.S. 658 (1978); City of Canton v. Harris, 489 U.S. 378 (1989).

**72.** The SD-LECC, as the regional intelligence clearinghouse coordinating this surveillance infrastructure, operates under color of law and is liable for the unconstitutional application of its monitoring programs to Plaintiff without legitimate investigative predicate.

**D. Fourth Claim — Conspiracy (42 U.S.C. § 1985)**

**72A.** Under Monell v. Department of Social Services, 436 U.S. 658 (1978), Defendant Encinitas Union School District is liable for constitutional violations arising from its official policies and customs regarding special-needs supervision and UASI coordination.

**72B.** The Policy: EUSD maintained a de facto policy of failing to provide mandated 1:1 supervision for autistic students despite IEP requirements, as evidenced by two separate finger fractures (2023 and June 28, 2024) occurring during recess at Flora Vista Elementary when supervision was absent. This policy was ratified by EUSD's failure to investigate either incident, failure to discipline responsible staff, and failure to modify supervision protocols after the first fracture.

**72C.** 72C. UASI Coordination Policy: EUSD's 66-day obstruction of Plaintiff's CPRA request for UASI/DHS/fusion center records (¶57A) creates an inference that the District maintains an undisclosed policy of coordination with SD-LECC regarding "threat assessment" students, mirroring the City of Carlsbad's CERT "Community Partner" model. The District's refusal to produce records of payments for "safety presence" and "monitoring" activities (CPRA Item 3) suggests staff received UASI-funded compensation for surveillance activities disguised as special-needs support. This policy subjected Plaintiff's minor son to deliberate indifference and state-created danger. See *Conn v. City of Reno*, 591 F.3d 1081 (9th Cir. 2010).

**E. Fifth Claim — Conspiracy (42 U.S.C. § 1985)**

**73.** Defendants conspired to deprive Plaintiff of his constitutional rights through coordinated action across private, local, state, and federal actors. The following facts demonstrate an agreement and concerted action:

(a) Temporal synchronization: The dental assault (September 2, 2025), CPD "civil matter" classification (September 3, 2025), dental office HIPAA obfuscation (September-October 2025), Dental Board closure (December 16, 2025), hotel vent sabotage (December 24-25, 2025), hospital record concealment (January 20, 2026), and City CPRA obstruction (March-April 2026) occurred in coordinated sequence immediately following Plaintiff's attempts to seek legal redress;

(b) Institutional coordination infrastructure: The SD-LECC Guardian/eSAR database (¶60A(c)) serves as the communication hub enabling real-time information sharing among conspirators. The City of Carlsbad's admission that incident reports mentioning "Salemi" and "2735 Palomar Airport Road" exist but are withheld under Evidence Code § 1040 (¶60A(b)) proves cross-institutional coordination;

(c) Uniform obstruction response: CPD, California Dental Board, FBI, Rady Hospital, City of Carlsbad, and EUSD all deployed identical obstruction tactics: reclassifying incidents as "civil matters" / "no violation" / "no responsive records" / "no records found" / "no responsive documents" despite documentary evidence. This uniformity across independent entities demonstrates agreement than coincidence;

(d) ViaSat HR surveillance: Sarah Poe's December 15, 2025 email (Exhibit L) explicitly stating "I saw you did manage to get your litigation moving" proves participants were monitoring and sharing information about Plaintiff's legal filings in real-time;

(e) Animus: The conspiracy was motivated by invidious discrimination against Plaintiff as a perceived "soft target" / "terrorist threat" under UASI Goal 5, depriving him of equal protection under law. See *Griffin v. Breckenridge*, 403 U.S. 88 (1971) (§ 1985 requires class-based animus).

E. Fifth Claim — First Amendment Retaliation (42 U.S.C. § 1983)

**73A.** Plaintiff engaged in protected First Amendment activity by:

(a) Filing federal RICO litigation in November 2025;

(b) Reporting crimes to CPD (September 2025);

(c) Filing FBI tips regarding death threats (September 14, November 7, 2025);

(d) Submitting CPRA requests to City of Carlsbad (multiple 2026 requests);

(e) Filing complaints with California Dental Board, OFCCP, DOJ Civil Rights Division, and congressional representatives (¶56);

(f) Posting documentation videos on TikTok (@al18476) (¶26).

**73B.** Defendants retaliated against Plaintiff for this protected activity:

(a) CPD classified Plaintiff's September 2, 2025 assault report as "civil matter" (¶52) immediately after Plaintiff filed complaints;

(b) ViaSat HR representative Sarah Poe monitored Plaintiff's litigation in real-time and contacted him on November 26 and December 15, 2025, offering "counseling" and demanding to "understand the scope of your request" (¶37A) — a thinly veiled threat;

(c) Hotel sabotage escalated after Plaintiff informed his supervisor that CPD was investigating (October 16-22, 2025), culminating in Christmas Day vent attack (December 24-25, 2025);

(d) City of Carlsbad invoked "Evidence Code § 1040" to withhold incident reports mentioning Plaintiff (¶60A(b)) only after his federal filings;

(e) Dr. Tsuha inserted "paranoid schizophrenia" entry on August 6, 2025 (¶44) — immediately before Plaintiff's anticipated filings — to preemptively discredit him.

**73C.** Causal connection: The temporal proximity (retaliation within days/weeks of protected activity) and direct evidence (Sarah Poe's email explicitly referencing litigation monitoring) establish but-for causation.

**73D.** Chilling effect: A person of ordinary firmness would be deterred from exercising First Amendment rights when reporting crimes results in "civil matter" classification, filing litigation results in workplace surveillance, and posting videos results in coordinated sabotage.

See Hartman v. Moore, 547 U.S. 250 (2006); Skoog v. County of Clackamas, 469 F.3d 1221 (9th Cir. 2006).

**F. Sixth Claim — Bivens Claims Against Federal Defendants (DHS and FBI)**

**74.** FBI Suppression of Tip Submissions (Bivens and APA Claims):
Defendant FBI's deliberate suppression of Plaintiff's documented reports—two tip

submissions on September 14, 2025, November 7, 2025, and November 8, 2025 detailing a death threat against his minor autistic son—by returning a FOIA response of "no responsive records" on November 14, 2025, despite Plaintiff's proof of filing (Exhibit P), violates his First Amendment right to petition the government for redress of grievances and his Fifth Amendment due process rights.

**BIVENS CLAIM**: This conduct falls within the existing Bivens framework recognized in Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). While Egbert v. Boule, 596 U.S. 482 (2022), instructs courts to hesitate before recognizing new Bivens contexts, no such hesitation is required here because:

(a) Suppressing reports of threats to a child's life implicates the core Fifth Amendment liberty interest in family integrity and parental rights recognized in Meyer v. Nebraska, 262 U.S. 390 (1923), and protecting children from harm—interests already recognized in the constitutional canon;

(b) No "special factors counseling hesitation" exist: This case does not involve national security, foreign affairs, military operations, or sensitive law enforcement operations requiring deference to executive judgment. Egbert, 596 U.S. at 491. The FBI's duty to accept and retain citizen tips reporting death threats against children is ministerial, not discretionary;

(c) Congress has not provided an alternative remedial scheme: FOIA provides a mechanism to request records but does not remedy the constitutional injury of suppressing reports of threats. The FBI's "no responsive records" response precludes FOIA as an effective remedy—Plaintiff cannot obtain non-existent records. This creates a remedial gap that Bivens was designed to fill;

(d) The conduct is retaliatory: The FBI's suppression occurred in temporal proximity to Plaintiff's other federal filings (OFCCP complaint, DOJ reports, congressional outreach), suggesting retaliation for exercising First Amendment rights—conduct Bivens was designed to deter.

**APA ALTERNATIVE CLAIM**: In the alternative, the FBI's FOIA response constitutes agency action unlawfully withheld and unreasonably delayed under 5 U.S.C. § 706(1), subject to judicial review under the Administrative Procedure Act. See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971). The FBI's "no responsive records" response (Exhibit O) is arbitrary and capricious under 5 U.S.C. § 706(2)(A) because:

(1) Plaintiff possesses confirmation emails proving the tips were submitted and received (Exhibit P);

(2) The FBI's own procedures require retention of all tip submissions for investigative and administrative purposes per the FBI's Records Management Division policies;

(3) A death threat against a minor child documented in two separate submissions (September 14, November 8, November 7, 2025) cannot reasonably result in "no responsive records" absent destruction or concealment—the only rational explanation is bad faith suppression.

The FBI's failure to search or produce these records constitutes "agency action unlawfully withheld" under § 706(1), subject to compelling relief under the APA's waiver of sovereign immunity at 5 U.S.C. § 702. See Norton v. Southern Utah

Wilderness Alliance, 542 U.S. 55 (2004). This is "final agency action" because the FOIA determination letter (Exhibit O) represents the FBI's definitive position and Plaintiff has exhausted administrative appeals.

Plaintiff seeks: (1) Bivens monetary damages from individual FBI officers in their personal capacities; (2) in the alternative, APA declaratory and injunctive relief compelling the FBI to produce the tip submission records and conduct the investigation that was unlawfully withheld.

**75.** Defendant DHS's funding, oversight, and coordination—via UASI Goal 5 grants—of warrantless surveillance infrastructure targeting Plaintiff (including PTZ cameras, thermal imaging, and CERT volunteer deployments in the Palomar Airport Road area) without individualized probable cause, judicial warrant, or legitimate investigative predicate, constitutes an unreasonable seizure of Plaintiff's liberty, privacy, and freedom of movement under the Fourth Amendment. This ongoing monitoring, enabled by federal dollars and SD-LECC integration, creates a chilling effect on daily life with no statutory alternative remedy. See Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). No adequate alternative remedy exists for this warrantless domestic surveillance.

**F. Sixth Claim — Discrimination Against Disabled Child**

76. Section 504 of Rehabilitation Act (29 U.S.C. § 794): Defendant EUSD receives federal financial assistance and is subject to Section 504. EUSD discriminated against Plaintiff's minor autistic son on the basis of disability by:

(a) Failing to provide mandated 1:1 supervision despite IEP requirements, resulting in two finger fractures (2023, June 28, 2024);

(b) Denying him a free appropriate public education (FAPE) by removing required safety supports; and

(c) Subjecting him to different treatment than non-disabled students, who received adequate recess supervision.

The discrimination was intentional (deliberate removal of supervision) or, at minimum, reflected deliberate indifference (failure to correct known deficiency after first fracture). Plaintiff, as parent and guardian, has standing to assert this claim on behalf of Minor Son.

**77.** Americans with Disabilities Act Title II (42 U.S.C. § 12132): EUSD, as a public entity, excluded Plaintiff's disabled minor son from participation in school programs (safe recess) and subjected him to discrimination by denying required accommodations. The discrimination was intentional or reflected deliberate indifference. Exhaustion of administrative remedies under IDEA is not required where claims seek compensatory damages for past injuries, not educational services. See Payne v. Peninsula School Dist., 653 F.3d 863 (9th Cir. 2011).

**78.** Individuals with Disabilities Education Act (20 U.S.C. § 1415): EUSD denied Minor Son FAPE by failing to implement IEP-mandated 1:1 supervision, constituting a procedural violation that resulted in substantive harm (two finger fractures). Plaintiff seeks compensatory education, reimbursement for private services, and compensatory damages.

**G. Seventh Claim — Procedural Due Process (14th Amendment):**

**79A.** Plaintiff has a protected property and liberty interest in his dental health, professional reputation, and freedom from state-sanctioned assault. He has a procedural due process right to a meaningful hearing before the California Dental Board adjudicates his complaint.

**79B.** Defendant California Dental Board deprived Plaintiff of this interest without adequate process by:

(a) Closing his complaint on December 16, 2025 (¶53) based solely on an undated photograph supplied by the accused dental office;

(b) Conducting no independent investigation, no expert review, and no interview of Plaintiff;

(c) Providing no pre-deprivation or post-deprivation hearing;

(d) Offering no opportunity to respond to the dentist's evidence or present rebuttal evidence;

(e) Issuing a conclusory closure letter with no findings of fact or legal analysis (Exhibit M).

**79C.** The process provided falls below the minimum required by Mathews v. Eldridge, 424 U.S. 319 (1976):

(a) Private interest: Plaintiff's interest in redress for permanent bodily injury is substantial;

(b) Risk of erroneous deprivation: The risk is high where the Board relies solely on the accused party's evidence without independent verification;

(c) Government interest: The Board's interest in administrative efficiency does not outweigh Plaintiff's due process rights. A brief hearing or expert review imposes minimal burden.

The Board's closure without process violates procedural due process under the Fourteenth Amendment. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985).

**H. Qualified Immunity Does Not Apply**

**80.** Individual defendants sued in their personal capacities for § 1983 violations cannot invoke qualified immunity because Plaintiff's clearly established constitutional rights were violated:

(a) CPD Officers Hecker and Eyestone: The right to police investigation of felony assault and death threats was clearly established. Classifying a documented Class IV laser assault as a "civil matter" violates clearly established Fourth and Fourteenth Amendment protections. See DeShaney v. Winnebago County, 489 U.S. 189 (1989); Kennedy v. City of Ridgefield, 439 F.3d 1055 (9th Cir. 2006).

(b) Social Worker Jessica Arrellano (if added): The right to be free from warrantless bodily searches of one's child was clearly established in 2020. Authorizing a forensic exam without parental notice or consent violates the Fourth Amendment. See Vernonia School Dist. v. Acton, 515 U.S. 646 (1995).

(c) Dental Hygienist Allison Schulz (when added): Battery, assault with a deadly weapon, and medical procedures without consent are not discretionary acts protected by qualified immunity. Qualified immunity does not apply to state law tort claims.

(d) Hotel Staff (when added): Deliberate vent sabotage and chemical exposure are not discretionary governmental functions. Hotel employees are not government entitled to qualified immunity.

Moreover, even if the specific factual scenario was not previously adjudicated, the constitutional violation was so obvious that any reasonable official would have known the conduct was unlawful. See Hope v. Pelzer, 536 U.S. 730 (2002) ("officials can still be on notice that their conduct violates established law even in novel factual circumstances").

## VIII. STATE LAW CLAIMS

### A. Battery / Assault with Deadly Weapon (Cal. Penal Code § 245(a)(1))

**81.** Hygienist Allison Schulz's non-consensual use of a Class IV surgical laser on Plaintiff's gums constitutes battery under California law. A Class IV laser is a deadly weapon within the meaning of Penal Code § 245(a)(1). Smiles for Health and Dr. Zorros are vicariously liable as employer and supervising dentist. Damages include permanent dental damage requiring surgical grafts ($4,383+), ongoing pain and sensitivity, and future dental treatment costs.

### B. Fraud and Falsification of Medical Records

**82.** Defendants Smiles for Health and Dr. Zorros fabricated dental progress notes falsely stating that Plaintiff presented with discomfort and that a dentist examination occurred on September 2, 2025. This constitutes fraud under California law and a violation of Health & Safety Code § 123111. These fabrications were transmitted through insurance and HIPAA channels, constituting wire fraud.

**82A.** Respondeat Superior Liability (Smiles for Health DDS): Under California law, Defendant Smiles for Health DDS is vicariously liable for the tortious acts of its employee, Dental Hygienist Allison Schulz (John Doe 1), committed within the course and scope of her employment. The September 2, 2025 Class IV laser assault occurred during Schulz's scheduled work shift, using employer-owned equipment (Biolase Epic X laser), on employer premises, during the performance of duties for which she was hired (dental hygiene services). Smiles for Health exercised control over the manner and means of Schulz's work, provided the instrumentality of harm (the laser device), and benefited from the $90 billing for the unauthorized procedure. Under California Civil Code § 2338 and common law respondeat superior doctrine, Smiles for Health is jointly and severally liable for all damages caused by Schulz's battery, assault, and fraud. See *Mary M. v. City of Los Angeles*, 54 Cal.3d 202 (1991).

Additionally, Defendant Dr. Zorros, as the supervising dentist whose name appears on the falsified progress notes, is vicariously liable under California Business & Professions Code §§ 1909 and 1914, which impose strict supervisory duties on dentists for intra-oral laser use by hygienists. Dr. Zorros's failure to supervise Schulz during the Class IV laser

procedure, combined with his apparent authorization of the falsified examination entry, constitutes both direct negligence and vicarious liability for Schulz's acts.

**C. Negligence / Premises Liability (Staybridge Suites / IHG)**

**83.** Defendants Staybridge Suites and IHG breached their duty of care to Plaintiff as a hotel guest by knowingly failing to investigate and repair the source of airborne irritants in Plaintiff's room, instead repeatedly relocating him while attributing symptoms to "allergies." The pattern of denial — "normal," "not an issue," "allergies" — followed by immediate cessation of all symptoms upon vent sealing, establishes both causation and breach. The restoration of kitchen power in under 30 seconds without tools further establishes advance knowledge and intentional sabotage.

**83A.** Respondeat Superior Liability (IHG Hotels & Resorts / Staybridge Suites): Under California law, Defendant IHG Hotels & Resorts is vicariously liable for the tortious acts of its employees and agents at Staybridge Suites Carlsbad, including General Manager Jeff (John Doe 3) and Maintenance Technician Umberto (John Doe 4), committed within the course and scope of their employment. The December 24-25, 2025 vent sabotage, fiberglass/insulation release, and electrical tampering occurred during work shifts, on hotel premises, using hotel maintenance tools and access, in the performance of duties for which employees were hired (guest room maintenance and management). IHG operated and managed the Staybridge Suites property, exercised control over employee conduct through policies and supervision, and benefited financially from Plaintiff's continued occupancy despite the hazardous conditions. Under California Civil Code § 2338 and common law respondeat superior doctrine, IHG is jointly and severally liable for all damages caused by its employees' assault, battery, negligence, and intentional infliction of emotional distress. See *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal.4th 291 (1995).
Furthermore, General Manager Jeff's instruction to maintenance to "do whatever makes him happy" (Exhibit A) demonstrates managerial ratification of the sabotage, independently establishing IHG's direct liability under California Civil Code § 2343 (ratification of tort by principal).

**D. Bane Act (Cal. Civ. Code § 52.1)**

**84.** Defendants, through threats, intimidation, and coercion — including direct death threats to Plaintiff's son, dental mutilation without consent, hotel poisoning, and daily organized stalking — interfered with Plaintiff's exercise and enjoyment of constitutional and statutory rights, in violation of California's Bane Act. Each Defendant is jointly and severally liable for their role in the coordinated pattern of interference.

**E. Child Endangerment (Cal. Penal Code § 273a)**

**85.** Defendants whose conduct placed Plaintiff's minor autistic son in situations of risk — including the repeated assaults in supervised settings, failure of mandated 1:1

supervision, medical record falsification to undermine the reporting parent, and direct death threats — are liable under California Penal Code § 273a.

## F. Intentional Infliction of Emotional Distress (California Common Law)

**86.** Defendants' conduct — including death threats against Minor Son ("You should be happy they haven't killed your son yet"), non-consensual dental laser assault, Christmas Day vent sabotage and electrical tampering while Plaintiff was isolated in a hotel room, deliberate poisoning attempts, and nine years of coordinated stalking — was extreme and outrageous, exceeding all bounds of decency tolerated in a civilized society.

**87.** Defendants acted intentionally and with reckless disregard for the certainty that Plaintiff would suffer severe emotional distress. The deliberate timing of attacks on holidays (Christmas), the targeting of Plaintiff's disabled minor child, and the coordination across multiple entities to deny all avenues of redress demonstrate intentional infliction.

**88.** Plaintiff suffered severe emotional distress including anxiety, depression, fear for his son's life, insomnia, hypervigilance, and trauma symptoms. This distress is objectively serious and medically documented.

See Christensen v. Superior Court, 54 Cal.3d 868 (1991); Cochran v. Cochran, 65 Cal.App.4th 488 (1998) (IIED requires extreme and outrageous conduct).

## G. Defamation Per Se (California Common Law)

**89.** On August 6, 2025, immediately before Plaintiff's federal filings, Dr. Michaela Tsuha published a false statement in Minor Son's permanent medical record stating: "Mother is concerned that father has schizophrenia (paranoid)." (Exhibit V, Page 290).

**90.** This statement is false. Plaintiff does not have schizophrenia, has never been diagnosed with schizophrenia, and no medical professional has ever evaluated Plaintiff for schizophrenia. The statement was fabricated to create a pretextual basis for undermining Plaintiff's credibility in anticipated legal proceedings.

**91.** The statement was published to third parties including medical staff, insurance companies, potential expert witnesses, opposing counsel, and courts with access to Minor Son's medical records. Publication to even one third party satisfies this element.

**92.** The statement is defamatory per se under California Civil Code § 45a as it imputes mental illness that would injure Plaintiff's reputation, expose him to hatred/contempt/ridicule, and disparage him in his profession and custody rights. No special damages need be proven for defamation per se.

**93.** Dr. Tsuha acted with actual malice: she knew the statement was false (having never examined or treated Plaintiff) or acted with reckless disregard for its truth. The strategic timing — immediately before federal filings — demonstrates malicious intent.

Damages: Presumed damages for injury to reputation, special damages for lost custody time and legal fees defending against the false mental illness claim, and punitive damages. See Smith v. Maldonado, 72 Cal.App.4th 637 (1999).

**94.** Intrusion Upon Seclusion: Defendants' deployment of UASI-funded surveillance infrastructure (night vision goggles, thermal imaging, PTZ cameras, U-MERV aerial surveillance) targeting Plaintiff's residence at 2735 Palomar Airport Road without warrant or consent constitutes intentional intrusion upon Plaintiff's solitude, seclusion, and private affairs. The intrusion is highly offensive to a reasonable person and includes:

- Thermal imaging penetrating walls to monitor interior activities (¶60)
- Night vision surveillance of nighttime activities (¶60)
- CERT volunteers conducting "choke point intercepts" and "proximity pressure" (¶25)
- Hotel key-card access to enter Plaintiff's room during sleep (¶35, ¶83)
- Monitoring of Plaintiff's location through SD-LECC Guardian/eSAR database (¶60A(c))

## H. Invasion of Privacy (Cal. Const. Art. I, § 1; California Common Law)

**95**. Intrusion Upon Seclusion: Defendants' deployment of UASI-funded surveillance infrastructure (night vision goggles, thermal imaging, PTZ cameras, U-MERV aerial surveillance) targeting Plaintiff's residence at 2735 Palomar Airport Road without warrant or consent constitutes intentional intrusion upon Plaintiff's solitude, seclusion, and private affairs. The intrusion is highly offensive to a reasonable person and includes:

- Thermal imaging penetrating walls to monitor interior activities (¶60)
- Night vision surveillance of nighttime activities (¶60)
- CERT volunteers conducting "choke point intercepts" and "proximity pressure" (¶25)
- Hotel key-card access to enter Plaintiff's room during sleep (¶35, ¶83)
- Monitoring of Plaintiff's location through SD-LECC Guardian/eSAR database (¶60A(c))

**96**. Public Disclosure of Private Facts: The insertion of "paranoid schizophrenia" into Minor Son's medical record and its dissemination to medical providers, insurance companies, and potential litigation participants constitutes publication of private medical information that would be highly offensive to a reasonable person. The matter disclosed is not of legitimate public concern.

**97**. False Light: The "paranoid schizophrenia" entry, CPD's characterization of Plaintiff's felony assault reports as "civil matters," and the FBI's "no responsive records" response place Plaintiff in a false light before the public by portraying him as mentally unstable, litigious, and untruthful — attributes highly offensive to a reasonable person. Defendants acted with actual malice or reckless disregard.

See Hill v. National Collegiate Athletic Assn., 7 Cal.4th 1 (1994); Shulman v. Group W Productions, Inc., 18 Cal.4th 200 (1998).

## IX. PRESERVATION OF EVIDENCE

**98.** Plaintiff expressly demands that all Defendants immediately preserve the following categories of evidence at risk of routine deletion, overwriting, or destruction:

(a) **Smiles for Health:** All internal Biolase Epic X laser logs for September 2, 2025; all EHR audit trails and metadata for Plaintiff's patient file; all intraoral photographs, X-ray requests, and consent forms.

(b) **Staybridge Suites / IHG:** All maintenance logs, key-card access records, work orders, and communications regarding Rooms 206 and 306 from October 2025 through present; all security camera footage; all communications with or about Plaintiff.

(c) **City of Carlsbad / CPD:** All incident reports, body camera footage, and communications related to incidents #250087291 and #250094323 and all prior incidents reported by Plaintiff; all CERT deployment logs and SD-LECC submissions referencing Plaintiff or his address.

(d) **SD-LECC:** All Guardian/eSAR logs, BTAM files, CERT Field Observation reports, and NVG/TIC deployment logs referencing "Salemi," Plaintiff's minor son, or 2735 Palomar Airport Road.

(e) **DHS / FBI:** All records related to Plaintiff's September 14, 2025 and November 7, 2025 tip submissions; all Goal 5 project records referencing the Carlsbad/Palomar Airport Road area; all DHS OIG correspondence related to Plaintiff's notifications.

(f) **California Dental Board:** All investigation files, correspondence, and internal communications related to Plaintiff's complaint, including the full investigation file and any records regarding the undated photograph submitted by Smiles for Health.

(g) **Encinitas Union School District / Flora Vista Elementary**: All incident reports, playground maintenance logs, and injury documentation for Plaintiff's minor son from January 2017 to present; all records of payments, stipends, honoraria, or reimbursements to staff, contractors, or volunteers for "safety presence," "parent monitoring," "crowd control," or "special-needs supervision"; all correspondence, MOUs, or grant documents referencing UASI, DHS, HSI, SD-LECC, fusion centers, or law-enforcement liaisons on district property; all 1:1 aide logs and supervision schedules for Plaintiff's minor son; all communications with or about Plaintiff or his son.

## X. SOVEREIGN IMMUNITY WAIVERS

**99.** Defendant California Dental Board: The Board is an arm of the State and ordinarily entitled to Eleventh Amendment immunity. However:

(a) Plaintiff seeks only prospective injunctive relief (requiring production of laser logs and investigation file), which is permissible under Ex parte Young, 209 U.S. 123 (1908);
(b) Plaintiff sues individual Board members in their official capacities for prospective relief only;
(c) To the extent monetary damages are sought, they are sought from the Board in its proprietary capacity (operating a licensing/investigation program funded by licensee fees, not general tax revenue).

**100.** Defendant EUSD: Public school districts are not entitled to Eleventh Amendment immunity. See Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274 (1977). EUSD is a political subdivision, not an arm of the State. Plaintiff seeks monetary damages and injunctive relief.

**101.** Defendants DHS and FBI: Federal sovereign immunity is waived for:
(a) Bivens claims (constitutional torts) seeking monetary damages from individual federal officers in their personal capacities;
(b) APA claims seeking judicial review of unlawful agency action (5 U.S.C. § 702 waives sovereign immunity);
(c) Injunctive relief under Ex parte Young analogy.

Plaintiff seeks no monetary damages directly from the United States Treasury. All damage claims against federal defendants are against individual officers in their personal capacities.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

**a.** A Temporary Restraining Order and Preliminary Injunction prohibiting all Defendants and persons acting in concert with them from: approaching within 500 feet of Plaintiff or his minor son; contacting, filming, or following Plaintiff or his son; releasing any substance through hotel ventilation systems; tampering with electrical systems or outlets in Plaintiff's residence; isolating Plaintiff through coordinated sabotage on holidays or low-staffing periods; and destroying, altering, or concealing any evidence relevant to this action.

**b.** A permanent Preservation Order directing all Defendants and relevant third parties to immediately preserve all records described in Section IX above, with certification of compliance filed within 14 days.

**c.** Monitoring and Compliance Requirements:

(i) Defendants shall file weekly certifications of compliance with the TRO, under penalty of perjury, detailing any contacts, surveillance activities, or proximity events involving Plaintiff or his minor son;

(ii) Hotel Defendants (Staybridge Suites/IHG) shall provide Plaintiff with weekly maintenance logs, key-card access reports for his room, and HVAC system inspection certifications;

(iii) City of Carlsbad and SD-LECC shall provide bi-weekly certifications that no eSAR/Guardian entries, BTAM files, or CERT deployment logs have been created referencing Plaintiff, his son, or 2735 Palomar Airport Road.

**d.** Third-Party Discovery Orders:

(i) Biolase, Inc. (manufacturer of Epic X laser) shall produce all training materials, device logs, and service records for the Epic X unit serial number used at Smiles for Health on September 2, 2025;

(ii) Tactical equipment vendors Licentia Arms Co. and TNVC Inc. shall produce all purchase orders, delivery logs, and training materials for night vision and thermal imaging equipment sold to City of Carlsbad under UASI grants;

(iii) City of San Diego (as UASI Administrative Agent) shall produce all reimbursement claims, project vetting documents, and compliance audits for surveillance equipment deployed in the Palomar Airport Road area;

(iv) Encinitas Union School District shall produce all CPRA-requested records from Plaintiff's February 3, 2026 request within 14 days, including: all documents mentioning Plaintiff or his minor son; all records of UASI/DHS/fusion center coordination; and all payments for monitoring, safety presence, or crowd control activities.

**e.** Appointment of Special Master:

Plaintiff requests appointment of a Special Master pursuant to Federal Rule of Civil Procedure 53 to oversee evidence preservation, monitor compliance with discovery obligations, and conduct forensic examination of electronic records at risk of destruction, including: Biolase Epic X laser device logs; hotel key-card access systems; SD-LECC Guardian/eSAR databases; and CPD body camera footage. The Special Master shall have authority to conduct unannounced inspections and shall report directly to the Court on any spoliation, non-compliance, or destruction of evidence.

**f.** Declaratory judgment that Defendants violated Plaintiff's rights under 18 U.S.C. § 1962(c), the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, and applicable California law.

**g.** **Criminal referral** to the U.S. Attorney for the Southern District of California for child torture (18 U.S.C. § 1201), felony assault (Cal. Penal Code § 245(a)(1)), and obstruction of justice (18 U.S.C. § 1503).

**h.** Compensatory damages in an amount to be proven at trial, but not less than $75,000,000, for permanent dental damage, visual impairment, tinnitus, poisoning injuries, emotional distress, property damage, and loss of earning capacity.

**i.** Treble damages under 18 U.S.C. § 1964(c) for civil RICO violations.

**j.** Punitive damages against all Defendants in an amount not less than $25,000,000 to punish and deter the willful, malicious, and coordinated misconduct alleged herein.

**k.** Full discovery of all UASI Goal 5 records, SD-LECC Guardian/eSAR logs, BTAM files, dental laser logs, hotel maintenance records, and FBI tip records.

**l.** Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(h).

**m.** Such other and further relief as the Court deems just and proper.

**n.** Declaratory judgment that EUSD violated Section 504, ADA Title II, and IDEA by denying Minor Son FAPE and required accommodations;

## XII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

## XIII. VERIFICATION

I, Alireza Salemi, declare under penalty of perjury under the laws of the United States of America (28 U.S.C. § 1746) that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: April 13, 2026

Respectfully submitted,

/s/ Alireza Salemi
Alireza "Ali" Salemi
Pro Se Plaintiff
2735 Palomar Airport Road
Carlsbad, California 92009
Telephone: (720) 208-8755
Email: alireza.salemi@udo.edu

**Exhibit D**

## Fw: response to October 29, 2025 request - Complaint 2026-1311

**From** <DentalBoardComplaints@dca.ca.gov>
**To** alireza.salemi@udo.edu <alireza.salemi@udo.edu>
**Date** 2025-11-05 07:56

HIPAA Access Reques - Dr. Zorros.png (~436 KB) xray_perio_chart_panoramic_oral_camera.zip (~6.5 MB)

Dear Alireza,

Thank you for your response.

I will be requesting your dental records today or tomorrow. Once I have, I will mail you a status letter.

*Please note that once I begin to work your complaint, the details of the investigation remain confidential and are not disclosed to the public, including the parties involved. This is to ensure that the success of the investigation is not jeopardized in any way.*

You will be notified at the conclusion. Thank you.

Kind regards,

DENTAL BOARD
OF CALIFORNIA

DentalBoardComplaints@dca.ca.gov - (916) 263-2300
2005 Evergreen Street, Suite 1550
Sacramento, CA 95815
GA

Privilege and Confidentiality Notice: This e-mail message, including any attachment, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. The foregoing applies even if this notice is embedded in a message that is forwarded or attached. If you are the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

**From:** Alireza Salemi <alireza.salemi@udo.edu>
**Sent:** Tuesday, November 4, 2025 5:17 PM
**To:** DentalBoardComplaints@DCA <DentalBoardComplaints@dca.ca.gov>
**Subject:** Re: response to October 29, 2025 request - Complaint 2026-1311

November 4, 2025

**Exhibit D**

Dental Board of California
2005 Evergreen Street, Suite 1550
Sacramento, CA 95815

Re: Complaint Reference 2026-1311

Dear Dental Board of California,
I am writing in response to your correspondence dated October 29, 2025 , requesting additional information regarding my complaint.
Specifically, you requested details about the dentist I saw on September 9, 2024.
The dentist is Dr. Omer Aniso, DDS, located at 501 N El Camino Real STE 200, Encinitas, CA 92024. His office phone number is (760) 642-4030.
During the visit, Dr. Aniso examined my gums and stated, "I see signs of gum laceration." No examination fee was charged, and no chart entry was made.
For context, here is a brief timeline of relevant events, emphasizing that prior to the procedure, I had no tooth sensitivity:

The dental procedure on September 2 was as followed:

1. Prophy cup application: Hygienist Allison stated "polish first" and applied contents from a prophy cup to my teeth prior to any cleaning. However, the substance was completely smooth and not gritty, unlike standard prophy paste which typically contains abrasive particles such as pumice or silica for polishing. I request documentation of what was actually used in the cup—if not standard prophy paste, please identify the substitute (e.g., a topical anesthetic gel), including brand, ingredients, texture, concentration, and intended purpose.

2. Scaling: The scaling that followed was aggressive, causing discomfort and carved new grooves.

3. Diode laser application: They told me the diode laser was "only to kill bacteria and not cut gum" but the attached intra-oral photos proves it cut my gums (razor-straight edges), the laser was fired without any dentist in the room in violation of California Code of Regulations § 1067(g) requiring direct dentist supervision, no record was created, and immediately afterward I developed crippling cold/hot tooth sensitivity plus deep new grooves beside every gum line when I had zero sensitivity before September 1.
4. Dr. Zorros came in and Saluted. They just told me to come back for dental work no treatment plan. Dr. didn't checked my teeth but charged insurance.

Smile for Health committed fraud when Allison lied—"laser will only kill bacteria and will not cut your gums"—yet photos proves razor-straight incisions, violating B&P § 1680(n).
Smile for Health committed gross negligence with aggressive scaling that carved new grooves and forcing gum grafting, violating B&P § 1680(a).
Dr. Zorros committed billing fraud by saluting only, never touching my teeth, yet charging insurance, violating B&P § 1680(w).

On October 15, 2024 I saw Periodontist Ann Kania, DDS, MS (Encinitas) examined me and stated: "The lower left teeth and upper right now require GUM GRAFTING due to recession and tissue loss."

November 2, 2025 - I have submitted an to request HIPAA Access Request from Dr. Zorros but I have not received anything (see attached email screenshot). I will also submit a HHS Complaint on December 2, 2025 if I don't receive an answer.

I have enclosed copies of the X-rays, addendum, and timeline for your reference. Please let me know if any further details are required to proceed with the investigation.

Please let me know what else you need. Please open a full investigation.

Sincerely,
Alireza Salemi

2735 Palomar Airport Rd
Carlsbad, CA
720-208-8755
[Date: November 04, 2025]

**Exhibit D**

HIPAA Access Reques - Dr. Zorros.png ~436 KB



**Exhibit E**

# Chart Progress Notes

**Alireza 'Ali' Salemi**

**01/15/2026**



| Date | Th | Surf | Dx | Description | Stat | Prov | Amount | ADA Code | User | Signed |
|---|---|---|---|---|---|---|---|---|---|---|
| | 3 | MO | | resin-based composite - two surfaces, posterior | EO | DOC | 0.00 | D2392 | | |
| | 4 | OD | | resin-based composite - two surfaces, posterior | EO | DOC | 0.00 | D2392 | | |
| | 8 | L | | resin-based composite - one surface, anterior | EO | DOC | 0.00 | D2330 | | |
| | 12 | OD | | resin-based composite - two surfaces, posterior | EO | DOC | 0.00 | D2392 | | |
| | 13 | MOD | | resin-based composite - three surfaces, posterior | EO | DOC | 0.00 | D2393 | | |
| | 14 | MO | | resin-based composite - two surfaces, posterior | EO | DOC | 0.00 | D2392 | | |
| | 15 | O | | resin-based composite - one surface, posterior | EO | DOC | 0.00 | D2391 | | |
| | 19 | OD | | resin-based composite - two surfaces, posterior | EO | DOC | 0.00 | D2392 | | |
| | 19 | MOD | | resin-based composite - three surfaces, posterior | EO | DOC | 0.00 | D2393 | | |
| | 20 | OD | | resin-based composite - two surfaces, posterior | EO | DOC | 0.00 | D2392 | | |
| | 29 | O | | resin-based composite - one surface, posterior | EO | DOC | 0.00 | D2391 | | |
| | 30 | MO | | resin-based composite - two surfaces, posterior | EO | DOC | 0.00 | D2392 | | |
| 04/18/2022 | | | | intraoral - comprehensive series of radiographic images | EO | DOC | 0.00 | D0210 | | |
| 04/19/2023 | | | | periodic oral evaluation - established patient | EO | DOC | 0.00 | D0120 | | |
| 04/19/2023 | | | | bitewings - two radiographic images | EO | DOC | 0.00 | D0272 | | |
| 04/19/2023 | | | | prophylaxis - adult | EO | DOC | 0.00 | D1110 | | |
| [illegible] | | | | Appointment - 2:30 PM<br>CmpEx, #-PA, #-PA+, 4BW, PC<br>CHIP ON UA- NOT ELIG FOR PANO | | | | | | |
| 12/02/2024 | 18 | O | | resin-based composite - one surface, posterior | TP | DOC | 290.00 | D2391 | | |
| 12/02/2024 | 19 | OD | | resin-based composite - two surfaces, posterior | TP | DOC | 367.00 | D2392 | | |
| 12/02/2024 | 20 | V | | resin-based composite - one surface, posterior | TP | DOC | 290.00 | D2391 | | |
| 12/02/2024 | 31 | O | | resin-based composite - one surface, posterior | TP | DOC | 290.00 | D2391 | | |
| 12/02/2024 | | | | comprehensive oral evaluation - new or established patient | C | DOC | 129.00 | D0150 | Dr. Raven | |

BP: wnl
REFERRAL: walk by
CHIEF DENTAL CONCERNS: chipped tooth on upper anterior
LAST CLEANING/VISIT: Over a year
REVIEWED MED HX: WNL
HISTORY OF BRACES: No history of braces
3D FINDINGS/AIRWAY: 3D was not taken
X-RAYS REVIEWED: 4 BWX 2 PA
TMJ: WNL
IO: wear, stain=, chipped teeth due to grinding, old fillings, tonsils removed, gum recession, malaligment
/EO: wnl
OCS: (-)
ORAL HABITS: Fair
WISDOM TEETH: pt state that he hasnt get his wisdom teeth removed (not able to see wisdom teeth in bw
BRUXISM: Pt clenches and grinds , Pt is unaware of clenching and grinding
RECESSION: Generalize gum Recession
OCLUSSION: Class II
DR'S TEETH DIAGNOSIS:
#2- O
#5- V
#8- IFL
#18- O

**Exhibit E**

# Chart Progress Notes

**Alireza 'Ali' Salemi**



| Date | Th | Surf | Dx | Description | Stat | Prov | Amount | ADA Code | User | Signed |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | #19- DO<br>#20- V<br>#30- MO<br>#31- O<br>PERIO DX:<br>WHITENING: Not discussed at visit today<br>CHIPPED TEETH: Yes: #8 and 9<br>NIGHTGUARD: Pt has NG (lower)<br>SURESMILE: not discuss in this appoiment.<br>WATCHES:<br>PERSONAL NOTES: pr from iran, lived in colorado, likes to go the beach.<br>N.V: cleaning and filling on tooth #8.<br>Dr. Zorro/ Lis | | | | | | |
| 12/02/2024 | | | | intraoral - periapical first radiographic image | C | DOC | 43.00 | D0220 | | |
| 12/02/2024 | | | | intraoral - periapical each additional radiographic image | C | DOC | 36.00 | D0230 | | |
| 12/02/2024 | | | | bitewings - four radiographic images | C | DOC | 94.00 | D0274 | | |
| 12/02/2024 | | | | PerioChart | C | DOC | 0.00 | D99999 | | |
| 12/02/2024 | | | | Comm - ApptRelated<br>Text message sent: You will now receive recurring appointment messages from Smiles for Health. Reply [HELP] for help, reply STOP to cancel. Msg&data rates may apply. | | | | | Bianca Munoz | |
| 12/02/2024 | | | | DENTAL HISTORY | | | | | | |
| 12/02/2024 | | | | HIPPA | | | | | | Partial |
| 12/02/2024 | | | | Registration Form | | | | | | |
| 12/02/2024 | | | | Notice of Privacy Practices Acknowledgement and Consent | | | | | | Signed |
| 12/02/2024 | | | | Notice and Acknowledgement of Risk for Dental Treatment | | | | | | Partial |
| 12/02/2024 | | | | Medical History New Patient | | | | | | Signed |
| 12/02/2024 | | | | Insurance Acknowledgement Form | | | | | | Signed |
| 12/02/2024 | | | | Informed Consent to Perform Dentistry | | | | | | Partial |
| 12/02/2024 | | | | SMILES FOR HEALTH FINANCIAL POLICY | | | | | | Signed |
| 12/02/2024 | | | | General Dentistry Informed Consent | | | | | | Partial |
| 12/03/2024 | | | | Comm - ApptRelated<br>Thank you for visiting Smiles for Heal(...) | | | | | | |
| 12/03/2024 | | | | Comm - ApptRelated<br>Alireza is scheduled for 8:30 AM on Dec(...) | | | | | | |
| 12/06/2024 | | | | cancelled appointment<br>Appt BROKEN for Pro Tue 12/10/2024 9:30:00 AM | C | DOC | 0.00 | D9987 | Bianca Munoz | |
| 12/05/2024 | | | | Comm - ApptRelated<br>Text message sent: Hi Ali, this is Bianca with Smiles for Health. I'm reaching out to confirm your appointment on TUES 12/10 at 9:30am. Please confirm by MON 12/9 12pm to avoid a $50 late cancellation fee and release your appointment. Thank you for understanding! | | | | | Bianca Munoz | |
| 12/06/2024 | | | | Comm - ApptRelated<br>Alireza is scheduled for 9:30 AM on Dec | | | | | | |
| 12/06/2024 | | | | Comm - ApptRelated<br>Hello Bianca, Thank you for the reminder. I checked my calendar, and I have meetings that day. Could you cancel the appointment, please, and I will reach out to you to make a new appointment | | | | | | |
| 12/07/2024 | | | | Comm - ApptRelated<br>Alireza is scheduled for 8:30 AM on Dec(...) | | | | | | |
| 12/09/2024 | | | | cancelled appointment<br>Appt BROKEN for #2-O-C1(P), #5-V-C1(P), #8-IFL-C3 Tue 12/10/2024 8:30:00 AM | C | DOC | 0.00 | D9987 | Bianca Munoz | |
| 12/10/2024 | | | | BROKEN Appointment - 9:30 AM<br>Pro | | | | | | |

**Exhibit E**

# Chart Progress Notes

**Alireza 'Ali' Salemi**



| Date | Th | Surf | Dx | Description | Stat | Prov | Amount | ADA Code | User | Signed |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/10/2024 | | | | prophylaxis - adult | TP | RDH Carly | 177.00 | D1110 | | |
| 12/17/2024 | | | | Comm - ApptRelated<br><br>Text message sent: Hello Ali, this is Nancy with Smiles for Health. I was giving you a call regarding your pending dental treatment. What day works best to bring you back to take care of pending treatment? | | | | | Bianca Munoz | |
| 02/06/2025 | | | | Comm - ApptRelated<br><br>Text message sent: Hello Ali, this is Nancy with Smiles for Health. I was giving you a call regarding your pending dental treatment. What day works best to bring you back to take care of pending treatment? | | | | | Nancy Cervantes | |
| 02/10/2025 | | | | Comm - ApptRelated<br><br>Text message sent: Hi Ali, this is Nancy from Smiles for Health DDS! We wanted to remind you about your pending dental treatment to help keep your smile healthy and prevent future issues. Let's get you scheduled soon! Give us a call at 760-297-6216 or visit www.smilesforhealthdds.com to book your appointment. We look forward to seeing you! | | | | | Nancy Cervantes | |
| 03/13/2025 | | | | Comm - ApptRelated<br><br>Text message sent: Hi Ali,<br>Hope all is well. Just a quick reminder that you have pending dental treatment with us. We'd be happy to help you complete it! Please call/text (760)297-6216 to reschedule.<br><br>Best,<br>Smiles for Health | | | | | Bianca Munoz | |
| 08/27/2025 | | | | Comm - ApptRelated<br><br>Text message sent: Hi Ali,<br>It's Keylee with Smiles for Health. I was reaching out about some pending dental treatment. What day works best for you to come in? I have some openings as son as next week. Give the office a call or reply to this text. Thanks! | | | | | Nancy Cervantes | |
| 09/02/2025 | | | | Appointment - 10:00 AM<br>PerEx, Pro, FloVarn, PC, Laser Tx<br>IS HAVING DISCOMFORT but didnt say where<br>*/## | | | | | | |
| 09/02/2025 | | | | Lab Fee | TP | DOC | 280.00 | D8888 | | |
| 09/02/2025 | 30 | | | intraoral - periapical first radiographic image | TP | DOC | 47.00 | D0220 | | |
| 09/02/2025 | 30 | | | crown - porcelain fused to high noble metal | TP | DOC | 1771.00 | D2750 | | |
| 09/02/2025 | 30 | | | core buildup, including any pins when required | TP | DOC | 400.00 | D2950 | | |
| 09/02/2025 | | | | occlusal guard - hard appliance, full arc | TP | DOC | 450.00 | D9944 | | |
| 09/02/2025 | | | | Biteguard Deliver | TP | DOC | 0.00 | N4124 | | |
| 09/02/2025 | 30 | | | PFM Seat | TP | DOC | 0.00 | N4118 | | |
| 09/02/2025 | | | | periodic oral evaluation - established patient | C | DOC | 83.00 | D0120 | | |
| 09/02/2025 | | | | prophylaxis - adult | C | RDH Alison | 177.00 | D1110 | Nancy Cervantes | |

Patient presents for: Adult Prophy
Health History: Reviewed
X-Rays: none
Exam: Dr. Zorro,
Chief Concern: PENDING TX , Pt reports discomfort
OCE: WNL
Plaque: Light, Mod.
Calculus: Light-Moderate
Hemo: Light-Moderate
Stain: Light-Moderate
Generalized PPDs: FMP completed today
Localized PPDs:
Completed full mouth scalinng, polish, floss, and OHI
During cleaning pt prefers: Cavitron, Hand scaling, Polish

**Exhibit E**

# Chart Progress Notes

**Alireza 'Ali' Salemi**

**01/15/2026**



| Date | Th | Surf | Dx | Description | Stat | Prov | Amount | ADA Code | User | Signed |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Laser: LBR completed using Biolase on perio setting. uninitiated tip. safety glasses worn.<br>OHI: Rec etb and waterflosser, Discussed benefits of fluoride/ nanohydroxyapatite , Reviewed boneloss/periodontal disease , Explained the importance of routine cleanings, Explained the coorelation of oral health and sysytemic health. Diet/decay process reivewed<br>Notes:<br>Fluoride: Yes. applied varnish with post op instructions<br>Personal:<br>NV: 6MO<br>Provider: Alison Schulz, RDH #31024 | | | | | | |
| 09/02/2025 | | | | topical application of fluoride varnish | C | RDH Alison | 40.00 | D1206 | | |
| 09/02/2025 | | | | LBR | C | RDH Alison | 90.00 | D4999.10 | | |
| 09/02/2025 | | | | PerioChart | C | RDH Alison | 0.00 | D99999 | | |
| 09/02/2025 | | | | Group Note<br>pt presented for periodic exam stating sensitivity EO wnl IO previous tx diagnosed not completed 2-O , 5 and 20 class V due to grinding resecion sensitivity,#8 IFL broken incisal edge,18-O 19DO caries 31-O and 30 advised crown large composite resecion abfraction and breaking filling wear facets. Pt will come back for tx | EC | DOC | 0.00 | ~GRP~ | Diana | |
| 09/02/2025 | | | | Comm - ApptRelated<br>Thank you for visiting Smiles for Heal(...) | | | | | | |
| 09/02/2025 | | | | General Dentistry Informed Consent | | | | | | Partial |
| 09/12/2025 | | | | Comm - ApptRelated<br>Alireza is scheduled for 11:00 AM on S(...) | | | | | | |
| 09/16/2025 | | | | cancelled appointment<br>Appt BROKEN for #2-O-C1(P), #5-V-C1(P), #8-IFL-C3 Fri 09/19/2025 11:00:00 AM | C | DR. OB | 0.00 | D9987 | Nancy Cervantes | |
| 09/16/2025 | | | | Comm - ApptRelated<br>Alireza is scheduled for 11:00 AM on S(...) | | | | | | |
| 09/16/2025 | | | | Comm - ApptRelated<br>Hello, I can't make it to the appointment | | | | | | |
| 09/17/2025 | | | | Comm - ApptRelated<br>Text message sent: Hello, Would you like to reschedule? | | | | | Bianca Munoz | |
| 09/19/2025 | | | | BROKEN Appointment - 11:00 AM<br>#2-O-C1(P), #5-V-C1(P), #8-IFL-C3<br>V++ | | | | | | |
| 09/19/2025 | 2 | O | | resin-based composite - one surface, posterior | TP | DR. OB | 290.00 | D2391 | | |
| 09/19/2025 | 5 | V | | resin-based composite - one surface, posterior | TP | DR. OB | 290.00 | D2391 | | |
| 09/19/2025 | 8 | IFL | | resin-based composite - three surfaces, anterior | TP | DR. OB | 394.00 | D2332 | | |
| 10/24/2025 | | | | Comm - Misc<br>does not have insurance- will call back when he can-bm | | | | | Bianca Munoz | |
| 11/17/2025 | | | | Comm - ApptRelated<br>Text message sent: Hi Ali! Bianca from Smiles for Health here. I'm checking in regarding your pending dental treatment. Is there anything you'd like to go over, or are you ready to book your appointment? | | | | | Bianca Munoz | |
| 11/20/2025 | | | | Comm - Misc<br>Delta Dental of California contacted our office requesting records for date of service 09/02/2025. All requested documentation was emailed to Delta Dental on 11/18/2025. On Thursday, 11/20/2025, Delta Dental insurance r | | | | | Diana | |

**Exhibit E**

# Chart Progress Notes

**Alireza 'Ali' Salemi**

**01/15/2026**



| Date | Th | Surf | Dx | Description | Stat | Prov | Amount | ADA Code | User | Signed |
|---|---|---|---|---|---|---|---|---|---|---|
| | | epresentative Edna Phillips contacted our office regarding a complaint submitted by the patient. Ms. Phillips advised that Delta Dental does not investigate or manage complaints related to clinical care or staff conduct as their role is limited to insurance and billing matters only. Delta Dental will be sending the patient a letter informing him of this. | | | | | | | | |
| 03/10/2026 | | | | periodic oral evaluation - established patient | TP | DOC | 93.00 | D0120 | | |
| 03/[illegible]/2026 | | | | prophylaxis - adult | TP | RDH Alison | [illegible] | D1110 | | |

**Exhibit F**

Smiles for Health
2656 Gateway Rd
Suite 145
Carlsbad, CA 92009-1778
(760)297-6216

# STATEMENT

01/14/2026
Account Number 3789

| Amount Due | Date Due | Amount Enclosed |
|---|---|---|
| 0.00 | Upon Receipt | |

CREDIT CARD TYPE ______________________

\# ______________________

3 DIGIT CSV ______________________

EXPIRES ______________________

AMOUNT APPROVED ______________________

NAME ______________________

SIGNATURE ______________________

Alireza Salemi
2744 Levante st
Carlsbad, CA 92009

| | |
|---|---|
| Total | $0.00 |
| -Ins Estimate | $0.00 |
| **=Balance:** | **$0.00** |

| 0-30 | 31-60 | 61-90 | over 90 |
|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 |

**Alireza Salemi**

| Date | Patient | Code | Tooth | Description | Charges | Credits | Balance |
|---|---|---|---|---|---|---|---|
| 12/02/2024 | Alireza 'Ali' | D0150 | | comprehensive oral evaluation - new or established patient<br>Ins Paid: $36.00, Writeoff: $93.00 | 129.00 | | 129.00 |
| 12/02/2024 | Alireza 'Ali' | D0220 | | intraoral - periapical first radiographic image<br>Ins Paid: $17.00, Writeoff: $26.00 | 43.00 | | 172.00 |
| 12/02/2024 | Alireza 'Ali' | D0230 | | intraoral - periapical each additional radiographic image<br>Ins Paid: $13.00, Writeoff: $23.00 | 36.00 | | 208.00 |
| 12/02/2024 | Alireza 'Ali' | D0274 | | bitewings - four radiographic images<br>Ins Paid: $35.00, Writeoff: $59.00 | 94.00 | | 302.00 |
| 12/02/2024 | Alireza 'Ali' | D99999 | | PerioChart (No Bill Ins) | 0.00 | | 302.00 |
| 12/02/2024 | Alireza 'Ali' | Claim | | Pri Claim $302.00 Delta Dental of CA<br>Received 12/14/2024<br>Payment: $101.00<br>Writeoff: $201.00 | | | |
| 12/06/2024 | Alireza 'Ali' | D9987 | | cancelled appointment (No Bill Ins) | 0.00 | | 302.00 |
| 12/09/2024 | Alireza 'Ali' | D9987 | | cancelled appointment (No Bill Ins)<br>cancelled appt for cleaning and tx | 0.00 | | 302.00 |
| 12/14/2024 | Alireza 'Ali' | InsPay | | Insurance Payment for Claim 12/02/2024<br>Payment: $101.00<br>Writeoff: $201.00 | | 302.00 | 0.00 |
| 09/02/2025 | Alireza 'Ali' | D0120 | | periodic oral evaluation - established patient<br>Ins Paid: $30.00, Writeoff: $53.00 | 83.00 | | 83.00 |
| 09/02/2025 | Alireza 'Ali' | D1110 | | prophylaxis - adult<br>Ins Paid: $72.00, Writeoff: $105.00 | 177.00 | | 260.00 |
| 09/02/2025 | Alireza 'Ali' | D1206 | | topical application of fluoride varnish<br>Ins Paid: $25.00, Writeoff: $15.00 | 40.00 | | 300.00 |
| 09/02/2025 | Alireza 'Ali' | D4999.10 | | LBR (No Bill Ins)<br>Pat Paid: $90.00, Pat Port: $90.00 | 90.00 | | 390.00 |
| 09/02/2025 | Alireza 'Ali' | D99999 | | PerioChart (No Bill Ins) | 0.00 | | 390.00 |
| 09/02/2025 | Alireza 'Ali' | Pay | | Mastercard $90.00 | | 90.00 | 300.00 |

Exhibit F

| Date | Patient | Code | Tooth | Description | Charges | Credits | Balance |
|---|---|---|---|---|---|---|---|
| 09/02/2025 | Alireza 'Ali' | Claim | | Pri Claim $300.00 Delta Dental of CA<br>Received 09/11/2025<br>Payment: $127.00<br>Writeoff: $173.00<br>PP-0 | | | |
| 09/11/2025 | Alireza 'Ali' | InsPay | | Insurance Payment for Claim 09/02/2025<br>Payment: $127.00<br>Writeoff: $173.00 | | 300.00 | 0.00 |
| 09/16/2025 | Alireza 'Ali' | D9987 | | cancelled appointment (No Bill Ins)<br>HAS A BOOKED SCHEDULE AND NEEDS TO CANCEL | 0.00 | | 0.00 |
| 10/29/2025 | Alireza 'Ali' | Stmt | | Statement-Email | | | |
| 11/10/2025 | Alireza 'Ali' | Stmt | | Statement-InPerson | | | |
| 11/18/2025 | Alireza 'Ali' | Stmt | | Statement-Email (unsent) | | | |

Scheduled Appointments:
Alireza 'Ali' Salemi: Tuesday, 03/10/2026, 10:30 AM, PerEx, Pro

**Exhibit G**

**DENTAL INJURY TIMELINE & PHOTOGRAPHIC SUMMARY Progressive Damage Following September 2, 2025 Laser Procedure at Smile for Health, Carlsbad Prepared by Alireza Salemi, Pro Se Plaintiff Case No. 3:25-cv-02934-AGS-MSB**

This exhibit documents the rapid, progressive, and permanent damage to 14 healthy teeth following a Class IV diode laser procedure performed without consent or dentist supervision on September 2, 2025. The timeline and photographs demonstrate injury inconsistent with natural decay, routine cleaning, or patient self-harm, supporting the allegation of felony assault with a deadly weapon (Cal. Penal Code § 245(a)(1)).

## I. Key Timeline of Injury Progression

- **September 2, 2025** (Date of Procedure)
  - Procedure at Smile for Health (Carlsbad): Hygienist Allison used Class IV surgical diode laser on 14 healthy teeth without dentist present, without consent, without documentation, and without billing to insurance.
  - Immediate effects: Patient reported intense heat, burning sensation, and visible charring. False statement by hygienist: "It only kills bacteria and will not cut gum."
  - No pre-treatment X-rays or photos taken despite request.
- **September 3–10, 2025** (Days 1–8 post-procedure)
  - Severe sensitivity, sharp pain on hot/cold/air.
  - Enamel appeared fused/glassy; early recession observed.
  - **Photos**: E-1 (close-up of initial trench/charred enamel on tooth #19).
- **September 15–30, 2025** (Weeks 2–4)
  - Recession progressed ~1 mm/week; new micro-fractures visible.
  - Black lines and razor-straight trenches deepened.
  - **Photos**: E-2 (progression on teeth #18–20); E-3 (multiple teeth showing uniform linear damage).
- **October 1–31, 2025** (Weeks 5–8)
  - Recession reached 2–3 mm on multiple teeth; daily new fractures reported.
  - Exposed dentin caused excruciating lifelong sensitivity.
  - Consulted 5 licensed dentists; all verbally confirmed laser injury but refused to file mandated reporter forms (Cal. Penal Code § 11160) without police case.
  - **Photos**: E-4 (severe recession and charring on lower incisors).
- **November 1, 2025 – January 2026** (Weeks 9–20+)
  - Damage continued: trenches deepened, enamel continued to fracture, gum tissue severed.
  - CalVCB application denied based on Carlsbad PD classifying incident as "civil matter" (see Exhibit D – Denial Letter).
  - Appeal filed January 27, 2026 (Exhibit T – CalVCB Appeal Form), asserting felony assault with deadly weapon and ongoing harm.
  - **Photos**: E-5 (latest images showing 14 affected teeth, January 2026).

## II. Summary of Physical Evidence

- **Nature of Damage**: Razor-straight linear trenches (2–3 mm deep), black charring, fused glassy enamel, progressive recession (1–2 mm/week), severed healthy gum tissue — all consistent with Class IV laser burn, not natural decay or routine dental care.
- **Number of Teeth Affected**: 14 healthy teeth (no pre-existing conditions documented).
- **Medical Confirmation**: Verbal confirmation from multiple dentists; no natural explanation provided.
- **CalVCB Outcome**: Denied due to PD's "civil matter" classification (Exhibit D). Appeal pending (Exhibit T).
- **Conclusion**: The photographs and timeline demonstrate a clear pattern of intentional, progressive physical injury caused by the September 2, 2025 laser procedure, supporting claims of felony assault and deliberate indifference by law enforcement in failing to investigate.

**Exhibit G**

**Some photographs**

Exhibit E-1: Initial trench and charring, 1 week post-procedure (Sept 2025)



Exhibit G

Exhibit E-2: Multiple teeth showing uniform linear damage, 8 weeks post-procedure



Exhibit G



**Exhibit G**



Exhibit H



Exhibit H



**Exhibit H**


IEC 60825-1: 2014
IEC 60601-2-22: 2012
CAUTION - LASER RADIATION WHEN
DEVICE IS ACTIVATED AND/OR OPENED
VISIBLE AND INVISIBLE LASER RADIATION
AVOID EYE OR SKIN EXPOSURE TO DIRECT OR
SCATTERED RADIATION. CLASS 4 LASER PRODUCT
10.0 W MAX. @ 940± 10nm
5 mW MAX. C.W. @ 625 - 670 nm
RAYONNEMENT LASER VISIBLES ET INVISIBLES
ÉVITER L'EXPOSITION DES YEUX OU DE LA
PEAU POUR DIRIGER OU LA RADIOTHÉRAPIE
ÉPARS. PRODUIT LASER DE CLASSE 4
I
O

**Exhibit H**


MODEL: EPIC X
FCC ID: G2OEPIC
IC: 10338A-EPIC
5400581 Rev. A
COMPLIES WITH FDA PERFORMANCE STANDARDS FOR LASER PRODUCTS EXCEPT FOR CONFORMANCE WITH IEC 60825 1 Ed 3 AND IEC 60601-2-22 Ed. 3.1. AS DESCRIBED IN LASER NOTICE NO.56, DATED MAY 8, 2019
REV.C
BIOLASE
Epic X
Diode Laser System
BIOLASE, Inc.
27042 Towne Centre Drive
Suite 270
Foothill Ranch, CA
+1 949 361 1200 biolase.com
MT Promedt Consulting GmbH
Altenhofstrasse 80
D-66386 St. Ingbert/Germany
+49 6894 581020
www.mt-procons.com
CE
Rx Only
Made in USA
7400073
942206010
2022-06
(01)00647529000175
(11)220622
(21)942206010
+12V 5A
Battery
Intertek
9800165
NOTICE
This device complies with Part 15 of FCC Rules. Operation is subject to the following two conditions: (1) this device may not cause harmful interference, and (2) this device must accept any interference received, including interference that may cause undesired operation.
5400601 Rev. B

2:16 pm

Ann Kania, D.D.S., DMSc, Inc.

**Exhibit I**

11/3/2025

PERIO CHART

Patient Name: Salemi , Alireza

Patient ID: 3547

Exam Date: 10/30/2025

| Tooth | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MOB | | | | | | | | | | | | | | | | |
| PD | | 2 2 2 | 2 2 2 | 2 2 2 | 2 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 2 2 3 | 3 2 3 | |
| GM | | | 2 | | 3 | 3 0 | | | | | | | | | | |
| CAL | | 2 2 2 | 2 4 2 | 2 2 2 | 2 5 3 | 3 5 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 2 2 3 | 3 2 3 | |
| MGJ | | | | | | | | | | | | | | | | |
| Bcl | | | | | | | | | | | | | | | | |
| FG | | | | | | | | | | | | | | | | |
| Ling | | | | | | | | | | | | | | | | |
| PD | | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | |
| GM | | | | | | | | | | | | | | | | |
| CAL | | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | |
| MGJ | | | | | | | | | | | | | | | | |

| Tooth | 32 | 31 | 30 | 29 | 28 | 27 | 26 | 25 | 24 | 23 | 22 | 21 | 20 | 19 | 18 | 17 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MOB | | | | | | | | | | | | | | | | |
| PD | | 3 3 3 | 3 3 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 3 3 | |
| GM | | | | | | | 1 | 2 | 2 | 1 | 1 | | | | | |
| CAL | | 3 3 3 | 3 3 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 3 3 | 3 4 3 | 3 4 3 | 3 3 3 | 3 3 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 3 3 | |
| MGJ | | | | | | | | | | | | | | | | |
| Ling | | | | | | | | | | | | | | | | |
| FG | | | | | | | | | | | | | | | | |
| Bcl | | | | | | | | | | | | | | | | |
| PD | | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 3 3 | |
| GM | | | 1 | | | | | | | 1 | | 3 | 3 | 2 | | |
| CAL | | 3 2 3 | 3 3 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 2 3 | 3 3 3 | 3 2 3 | 3 5 3 | 3 5 3 | 3 4 3 | 3 3 3 | |
| MGJ | | | | | | | | | | | | | | | | |

Summary Information

| Date | Bleeding | | Suppuration | | Furcation | | Mobility | PD > Alert | | CAL < 0 | | CAL 1-3 | | CAL 4-5 | | CAL 6+ | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Teeth | Sites | Teeth | Sites | Teeth | Sites | Teeth | Teeth | Sites | Teeth | Sites | Teeth | Sites | Teeth | Sites | Teeth | Sites |
| 10/30/2025 | 4 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 28 | 160 | 8 | 8 | 0 | 0 |

Exhibit J

**Detailed History for Police Incident #250094323 As of 11/25/2025 09:47:20**

# Output for: WQ6101

# Priority:3 Type:R240 - RPT ASSAULT Location:CPD, CB at 2560 ORION WY, CB LocCross:btwn ORION ST and ORION ST Map:5619-A2

CONFIDENTIAL- THIS IS A CONTROLLED DOCUMENT. DO NOT RELEASE WITHOUT PERMISSION OF THE CARLSBAD POLICE DEPARTMENT.
Release to: Alireza Salemi By: A. Liuchan 11-25-25

| | | | |
|---|---|---|---|
| Created: | 11/10/2025 12:29:03 | RCPT | CB6022 |
| Entered: | 11/10/2025 12:32:37 | RCPT | CB6022 |
| Dispatch: | 11/10/2025 12:44:21 | DSP4 | CB6071 |
| Enroute: | 11/10/2025 12:44:27 | LT1164 | CB5606 |
| Onscene: | 11/10/2025 13:02:54 | LT1164 | CB5606 |
| Control: | 11/10/2025 13:57:58 | DSP3 | CB6096 |
| Closed: | 11/10/2025 14:38:20 | LT1164 | CB5606 |

# ICUnit: PrimeUnit:15P Dispo:IO Type:R240 - RPT ASSAULT Agency:CBPD Group:PD01 Beat:5 RD:130 □Detail

| | | |
|---|---|---|
| 12:29:03pst | CREATE | Location:CPD, CB Type:R240 Name:ALIREZA SALEMI RPaddr:2744 LEVANTE ST CARLSBAD Phone:720/208-8755 Group:PD01 RD:130 TypeDesc:RPT ASSAULT LocDesc:at 2560 ORION WY, CB LocCross:btwn ORION ST and ORION ST Priority:3 Response:1PAT Agency:CBPD |

**Exhibit J**

| | | |
|---|---|---|
| | | Map:5619-A2 LocType:C |
| 12:32:37 | ENTRY | Comment:RP IS IN LOBBY AND WANTS TO REPORT TO AN OFFICER THAT ON 9/2/25 RE BEING ASSAULTED AT SMILES FOR HEALTH LOCATED IN CARLSBAD.<br>CADL 78675862<br>DOB 5/13/72 |
| 12:32:37 | -PREMIS | Comment:PPR |
| 12:32:45 | NOMORE | |
| 12:33:23 | SELECT | |
| 12:35:40 | LOGM | Message:992511102035003565 MessageType:HTML Received:11/10/2025 12:35:30 [redacted] |
| 12:36:02 | HOLD | |
| 12:38:09 | RFT | [redacted] |
| 12:38:19 | RFT | [redacted] |
| 12:39:07 | SELECT | |
| 12:39:08 | RFT | [redacted] |
| 12:40:15 | -SELECT | |
| 12:42:14 | LOGM | Message:992511102042003610 MessageType:Text Received:11/10/2025 12:39:10 [redacted] |
| 12:43:49 | SELECT | |
| 12:44:21 | DISP | 15P EmpID:CB5606 OperNames:EYESTONE, BRIAN |
| 12:44:21 | -PRIU | 15P |
| 12:44:27 | *ENRTE | 15P |
| 13:02:24 | MISC | 15P [redacted] |
| 13:02:54 | *ONSCN | 15P |
| 13:03:47 | RFT | 15P [redacted] |
| 13:04:10 | LOGM | 15P Message:992511102104003681 MessageType:Text Received:11/10/2025 13:03:54 [redacted] |
| 13:04:28 | RFT | 15P Name:SALEMI,ALIREZA DOB:19720513 Repeat:Yes |
| 13:04:28 | RFT | 15P [redacted] |
| 13:07:00 | MISC | 15P [redacted] |
| 13:57:58 | OK | 15P |
| 14:09:04 | *MISC | 15P Comment:SALEMI STATED THAT ON 09/02/2025 HE WAS SEEN AT SMILES FOR HEALTH IN BRESSI RANCH BY ZORRO DDS AND A DENTAL HYGENTIST NAMED "ALISON." HE WAS EXPLAINED ALL THE PROCEDURES BUT BELIEVES HE DID NOT RECEIVE THE DESCRIBED CARE. IN PARTICULAR, SALEMI STATED THAT A LASER USED FOR KILLING BACTERIA ON THE TEETH CAUSED A 2MM-3MM CUT IN HIS GUMS. SALEMI SHOWED ME PHOTOGRAPHS TAKEN AFTER THE INCIDENT AND THE INSIDE OF HIS MOUTH. I DID NOT SEE SIGNS OF ANY CURRENT OR PAST TRAMAU. SALEMI STATED THEY PREMEDITATED HIS CARE. |
| 14:19:18 | *MISC | 15P Comment:SALEMI STATED HE WENT TO FIVE OTHER DENTAL SPECIALISTS WHO DENIED TO HELP HIM WITH IMAGERY, BUT OFFERED DENTAL SERVICES. HE BELIEVES THEY WERE "COERCED" OR "PRESSURED" INTO NOT HELPING HIM BY SOMEONE. THE DENTITSTS HE WENT TO WERE: ANISO DDS, ENCINITAS; FAHOURMUND, PERIODONTUS, ENCINITAS; GALLI, DDS; SKEENS, DDS; KANIA, PERIODONTIST; SALEMI COULD NOT RECALL THE DENTISTS OFFICES CONTACT INFORMATION. HE STATED THAT WHILE AT ANISO'S OFFICE AN UNKNOWN OLDER MAN LOOKED AT HIM AND SAID, "TORTURE. TORTURE," AND THEN WALKED |

**Exhibit J**

| | | |
|---|---|---|
| | | OUT. sALEMI STATED THAT WHEN FAHOURMUND WALKED INTO THE ROOM TO MEET WITH HIM, SHE HELD HER HAND IN A "FINGER GUN" POSITION THAT WAS POINTED AT THE GROUND AND HELD AGAINST HER CHEST. SALEMI STATED THAT KANIA DID NOT WANT TO DOCUMENT HIS INJURIES FOR HIM, BUT STATED HE NEEDED SKIN GRAPHS ON HIS GUMS. |
| 14:20:51 | *MISC | 15P Comment:SALEMI STATED HE SPOKE TO ANTHONY CARDOZA, BOARD CERTIFIED ODONTOLOGIST, ABOUT GETTING PROOF. CARDOZA REFUSED TO SEE HIM AND SAID TO TALK TO THE POLICE WHO HAVE DENTISTS/DOCTORS WHO COULD HELP. |
| 14:22:38 | *MISC | 15P Comment:SALEMI STATED HE WORKS FOR VIASAT REMOTELY AS A SOFTWARE ENGINEER. HIS IMMEDIATE SUPERVISOR IS A MARTIN BROWN IN THE COMMERCIAL MOBILITY DIVISION. SALEMI COULD NOT GIVE ME A PHONE NUMBER FOR BROWN. SALEMI STATED HE ONLY COMMUNICATES THROUGH A WORK APP. |
| 14:33:57 | *MISC | 15P Comment:I CONTACTED SMILES FOR HEALTH (760-297-6216) AND THEY CONFIRMED THAT SALEMI HAD BEEN SEEN BY THEIR OFFICE ON 09/02/2025 FOR A CHECK-UP AND CLEANING. THEY STATED THERE WAS NOTHING UNUSUAL ABOUT THE VISIT AND HE MADE NO COMPLAINTS. SALEMI EVEN SCHEDULED FUTURE APPOINTMENTS. SMILES FOR HEALTH HAS BEEN CONTACT BY THE DENTAL BOARD CONCERNING HIS VISIT AND THEY PROVIDED THEM WITH ALL DOCUMENTATION OF HIS VISIT. |
| 14:35:56 | *MISC | 15P Comment:SALEMI STATED HE REPORTED THE INCIDENT OT THE CALIFORNIA DENTAL BOARD AND THE CALIFORNIA VICTIM COMPENSATION BOARD. HE ALSO STATED THAT HE HAS OPENED A FEDERAL CASE WITH EITHER HOMELAND SECURITY OR THE FBI AND REPORTED THESE INCIDENTS. |
| 14:38:20 | *CLEAR | 15P Dispo:IO Comment:ALIREZA SALEMI RECEIVED CARE FROM A DENTIST THAT HE FELT WAS CRIMINAL. SALEMI COULD NOT PROVIDE PROOF OF ANY CRIME. HE WAS ADVISED THAT A COMPLAINT ABOUT DENTAL CARE IS A CIVIL MATTER. INCIDENT NUMBER PROVIDED. SEE NOTES FOR DETAILS. |
| 14:38:20 | -CLEAR | |
| 14:38:20 | *CLOSE | |

# CONTACT INFO:

| Name | Phone | RPaddr | RPcontact | Alt_Phone | GateCode | RP4 |
|---|---|---|---|---|---|---|
| ALIREZA SALEMI | 720/208-8755 | 2744 LEVANTE ST CARLSBAD | | | | |

**Exhibit K**

| | | | | |
|---|---|---|---|---|
| 11/10/2025 | 12:29:03 | 250094323 | CPD, CB | R240 |
| | ENTRY | RP IS IN LOBBY AND WANTS TO REPORT TO AN OFFICER THAT ON 9/2/25 RE BEING ASSAULTED AT SMILES FOR HEALTH LOCATED IN CARLSBAD. CADL [redacted] DOB [redacted] | | |

Redaction Date: 12/19/2025 7:25:55 AM

Exhibit K

# Redaction Log

Total Number of Redactions in Document: 2

## Redaction Reasons by Page

| Page | Reason | Description | Occurrences |
|---|---|---|---|
| 1 | Personal Privacy | The city has redacted information from the responsive records to protect information the disclosure of which would constitute an unwarranted invasion of personal privacy that clearly outweighs the strong public interest in disclosure of that information pursuant to California Government Code sections 7922.000 and 7927.700. | 2 |

Redaction Date: 12/19/2025 7:25:55 AM

Exhibit K

# Redaction Log

## Redaction Reasons by Exemption

| Reason | Description | Pages (Count) |
|---|---|---|
| Personal Privacy | The city has redacted information from the responsive records to protect information the disclosure of which would constitute an unwarranted invasion of personal privacy that clearly outweighs the strong public interest in disclosure of that information pursuant to California Government Code sections 7922.000 and 7927.700. | 1(2) |

**Exhibit L**

**Viasat HR Retaliation Timeline – After I Told Boss About Police Contact**

**Week of October 16–22, 2025**: Police call multiple times about dental injury (Sept 2 assault). I miss meetings. Boss notices, asks; I tell him police are contacting me about a tooth thing. He tells HR (date unknown, but after that week).

**November 26, 2025**: Sarah Poe sends first email: "brief check-in to see how things are going and make sure you have the support and resources you need." Offers four free counseling sessions and paid leave. (Screenshot attached)

**December 11, 2025**: Sarah Poe emails again: "I hope you've been well since our last chat! I'd like to do a brief check-in to see how you're doing, and I have a question for you." I ask for agenda; she replies with the same message, but for Friday, December 12 at 10:00 a.m.

**December 15, 2025**: Sarah Poe emails: "It's not a formal agenda, but I saw you did manage to get your litigation moving and named Viasat in it in regards to badge swipes. I need to connect with you to understand the scope of your request so we can determine next steps."

**Key Notes**:

- All contacts from Sarah Poe began immediately after I told my boss about police involvement in the dental assault.
- No agenda provided despite two requests.
- Latest email admits knowledge of my federal RICO lawsuit (3:25-cv-03387-JLS-BLM) and badge swipe request — evidence of monitoring litigation and potential interference.
- Offers of counseling/time off instead of investigation — classic deflection/gaslighting.

This timeline shows clear retaliation tied to my protected activity (reporting assaults and filing litigation).

**Subject:** P&C Connect
**Location:** https://viasat.zoom.us/j/93445933371?pwd=7bwYwMRhcikocxskhsuBL2jRXs8nP4.1&from=addon
**Organizer:** Sarah.Poe@viasat.com
**Start time:** Wednesday, November 26, 2025 at 2:00 PM
**Time zone:** Central Standard Time
Event starts at 12:00 PM in local time zone (Pacific Standard Time)
**End time:** Wednesday, November 26, 2025 at 2:30 PM
**Time zone:** Central Standard Time
Event ends at 12:30 PM in local time zone (Pacific Standard Time)

**From:** Sarah.Poe@viasat.com
**When:** 12:00 PM - 12:30 PM November 26, 2025
**Subject:** P&C Connect
**Location:** https://viasat.zoom.us/j/93445933371?pwd=7bwYwMRhcikocxskhsuBL2jRXs8nP4.1&from=addon

**From:** Sarah.Poe@viasat.com
**When:** 12:00 PM - 12:30 PM November 26, 2025
**Subject:** P&C Connect
**Location:** https://viasat.zoom.us/j/93445933371?pwd=7bwYwMRhcikocxskhsuBL2jRXs8nP4.1&from=addon

Hi Alireza,

I'm your Regional P&C Business Partner. I'd like to have a brief check-in with you to see how things are going and to make sure you have the support and resources you need. Please let me know if we need to adjust the time.

Thank you,

Sarah

Sarah Poe is inviting you to a scheduled Zoom meeting.

**Exhibit L**

**Thursday, December 11, 2025 at 19:49:41 Pacific Standard Time**

---

**Subject:** Wellness Resources
**Date:** Wednesday, November 26, 2025 at 12:39:52 PM Pacific Standard Time
**From:** Poe, Sarah
**To:** Salemi, Alireza
**Attachments:** image001.png, image002.png, image003.png, image004.png, image005.png, image006.png, image007.png

Hi Alireza,

Thank you for your time today! Here are some wellness resources that are available to you. Your health and safety are important to us and I wanted to share the resources in writing so you can hopefully reference them more easily:

-

**Employee Assistance Program**

- Employee Assistance Program (company code: Viasat) 1-866-621-0554

You qualify for up to 4 free face-to-face or video calls with a counselor and they can provide a list of recommended counselors in your area for more long-term sessions.

**Taking time off**

- Sick/PTO time – you can take this time intermittently as needed, but if you need more than a week off please let me know.
- If you need time off due to a medical condition, you may qualify for a leave of absence under the Family and Medical Leave Act, and/or Short or Long Term Disability, or through a state-mandated leave program. Let me know if you're interested in more information on how to pursue a Leave of Absence.

This is a brief overview of some of the benefits available, please let me know if you would like to discuss further. I'm always available to discuss any questions or concerns.

Thank you,

**Sarah Poe**
US Regional People and Culture Business Partner
(she/her)

Viasat

**T.** 720.476.2161
www.viasat.com

**Exhibit L**

**Thursday, December 11, 2025 at 19:52:51 Pacific Standard Time**

---

**Subject:** P&C Connect
**Date:** Thursday, December 11, 2025 at 7:08:42 AM Pacific Standard Time
**From:** Poe, Sarah
**To:** Salemi, Alireza

Hi Alireza,

I hope you've been well since our last chat! I'd like to do a brief check in to see how you're doing and I have a question for you. Are you available to talk at this time? If not, let me know and I'm happy to adjust the meeting.

Best,

Sarah

zoom

Sarah Poe is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting

Phone one-tap: US: +16465588656,,99441942914# or +16469313860,,99441942914#

Meeting URL: https://viasat.zoom.us/j/99441942914?pwd=6RarxgStkGYjfaNQJQWbUpyofU7JX5.1&from=addon

Meeting ID: 994 4194 2914

Passcode: 535177

### Join by Telephone

For higher quality, dial a number based on your current location.

Dial:

US: +1 646 558 8656 or +1 646 931 3860 or +1 301 715 8592 or +1 305 224 1968 or +1 309 205 3325 or +1 312 626 6799 or +1 507 473 4847 or +1 564 217 2000 or +1 669 444 9171 or +1 669 900 9128 or +1 689 278 1000 or +1 719 359 4580 or +1 253 205 0468 or +1 253 215 8782 or +1 346 248 7799 or +1 360 209 5623 or +1 386 347 5053
Australia: +61 3 7018 2005 or +61 7 3185 3730 or +61 8 6119 3900 or +61 8 7150 1149 or +61 2 8015 6011
Brazil: +55 11 4632 2237 or +55 11 4680 6788 or +55 11 4700 9668 or

**Exhibit L**



---

**Subject:** Re: P&C Connect
**Date:** Wednesday, December 10, 2025 at 10:57:41 PM Pacific Standard Time
**From:** Salemi, Alireza
**To:** Poe, Sarah

Hi Sarah,

Thank you for reaching out. We are finishing the current sprint items, and I was very busy today and will be busy tomorrow as well.
I am available for a call on Friday at 10:00 AM PT or 2:00 PM PT — which works better for you?

What's the agenda for the check-in?

Best,
Alireza Salemi

**From:** "Poe, Sarah" <Sarah.Poe@viasat.com>
**Date:** Wednesday, December 10, 2025 at 11:44 AM
**To:** "Salemi, Alireza" <Alireza.Salemi@viasat.com>
**Subject:** P&C Connect

Hi Alireza,

I hope you've been well since our last chat! I'd like to do a brief check in to see how you're doing and I have a question for you. Are you available to talk at this time? If not, let me know and I'm happy to adjust the meeting.

Best,

Sarah

Sarah Poe is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting

Exhibit L

**Thursday, December 11, 2025 at 20:05:08 Pacific Standard Time**

---

**Subject:** Accepted: P&C Connect
**Date:** Thursday, December 11, 2025 at 7:48:24 AM Pacific Standard Time
**From:** Salemi, Alireza
**To:** Poe, Sarah

**Exhibit L**

**Thursday, December 11, 2025 at 19:54:59 Pacific Standard Time**

---

**Subject:** Declined: P&C Connect
**Date:** Thursday, December 11, 2025 at 7:35:36 PM Pacific Standard Time
**From:** Salemi, Alireza
**To:** Poe, Sarah

Dear Sarah,
Thank you for the check-in. I'm managing alright and don't need any support from HR at this time.
Let's reconnect if anything changes.
Bests,
Alireza Salemi

**Exhibit L**



---

**Subject:** Re: P&C Connect
**Date:** Friday, December 12, 2025 at 10:33:13 AM Pacific Standard Time
**From:** Salemi, Alireza
**To:** Poe, Sarah

Hi Sarah,

Thank you for reaching out.

I am available for a meeting via Teams/Zoom.

To ensure the meeting is productive and I am prepared with my incident logs, I reiterate my request for a formal agenda and the specific question you mentioned.

Please confirm the agenda at your earliest convenience.

Best regards,

Alireza Salemi

**From:** "Poe, Sarah" <Sarah.Poe@viasat.com>
**Date:** Friday, December 12, 2025 at 8:21 AM
**To:** "Salemi, Alireza" <Alireza.Salemi@viasat.com>
**Subject:** P&C Connect

Hi Alireza,

I hope you've been well since our last chat! I'd like to do a brief check in to see how you're doing and I have a question for you. Are you available to talk at this time? If not, let me know and I'm happy to adjust the meeting.

Best,

Sarah

Sarah Poe is inviting you to a scheduled Zoom meeting.

**Exhibit L**

**Monday, December 15, 2025 at 09:45:34 Pacific Standard Time**

---

**Subject:** RE: P&C Connect
**Date:** Monday, December 15, 2025 at 7:30:14 AM Pacific Standard Time
**From:** Poe, Sarah
**To:** Salemi, Alireza

Good morning!

It's not a formal agenda, but I saw you did manage to get your litigation moving and named Viasat in it in regards to badge swipes. I need to connect with you to understand the scope of your request so we can determine next steps. This shouldn't take long at all.

Talk soon!

Sarah

**From:** Salemi, Alireza <alireza.salemi@viasat.com>
**Sent:** Friday, December 12, 2025 12:33 PM
**To:** Poe, Sarah <Sarah.Poe@viasat.com>
**Subject:** Re: P&C Connect

Hi Sarah,

Thank you for reaching out.

I am available for a meeting via Teams/Zoom.

To ensure the meeting is productive and I am prepared with my incident logs, I reiterate my request for a formal agenda and the specific question you mentioned.

Please confirm the agenda at your earliest convenience.

Best regards,

Alireza Salemi

**From:** "Poe, Sarah" <Sarah.Poe@viasat.com>
**Date:** Friday, December 12, 2025 at 8:21 AM
**To:** "Salemi, Alireza" <Alireza.Salemi@viasat.com>
**Subject:** P&C Connect

Hi Alireza,

Exhibit M

CALIFORNIA DEPARTMENT OF CONSUMER AFFAIRS

DENTAL BOARD OF CALIFORNIA
2005 Evergreen St., Suite 1550, Sacramento, CA 95815
P (916) 263-2300 | F (916) 263-2140 | www.dbc.ca.gov

December 16, 2025

Alireza Salemi
2735 Palomar Airport Rd #206
Carlsbad, CA 92010

**NOTICE OF CLOSURE OF BOARD CASE NO. 2026-1311**

Dear Alireza:

Thank you for submitting your complaint to the Dental Board of California (Board). The Board has concluded its review of the above-referenced complaint.

As the agency that licenses dental professionals, the Board has authority to enforce the Dental Practice Act (chapter 4 of division 2 of the Business and Professions Code) and discipline licensees for unlawful activities related to their practice of dentistry. In reviewing complaints, diligent efforts are made to ensure that every allegation is properly reviewed to determine any violation(s) of the law. The Board is authorized to take disciplinary action only against those dentists it finds in violation of the Dental Practice Act and must determine whether it is appropriate to pursue administrative action.

The necessary dental records were obtained, and the complaint was reviewed. No violation of the Dental Practice Act was found. Unfortunately, we are unable to assist you any further with this matter. Your case will be closed at this time.

If you have any questions regarding this notice, please contact us by phone at (916) 576-1758 or by email at DentalBoardComplaints@dca.ca.gov.

Sincerely,

*Genie Albertsen*

Genie Albertsen
Consumer Services Analyst
Complaint and Compliance Unit

Whether you agree or disagree with the outcome of your complaint, the Board would like to give you the opportunity to comment on the overall complaint review process.

Please take a moment to complete the survey located at
https://www.surveymonkey.com/r/consumeraffairs.

Take this survey on your phone. Use your smart phone to download a QR reader from your app store.

CamScanner

CALIFORNIA CalVCB VICTIM COMPENSATION BOARD

Exhibit N

STATE OF CALIFORNIA
GAVIN NEWSOM, Governor

Alireza Salemi
2735 Palomar Airport Road
Carlsbad, CA 92009

Please carefully review the items in this packet as it may contain multiple letters.

NOTICE TO RECIPIENT: If you are not the intended recipient of this mail, you are prohibited from sharing, copying, or otherwise using or disclosing its contents. If you have received this correspondence in error, please notify the sender immediately by reply fax and disregard this correspondence and any attachments without reading, forwarding or saving them. Thank you.

Por favor revise cuidadosamente los articulos de este paquete, ya que puede contener varias letras.

AVISO AL DESTINATARIO: Si usted no es el destinatario de este correo, tiene prohibido compartir, copiar o utilizar o divulgar su contenido. Si ha recibido esta correspondencia por error, por favor notifique al remitente inmediatamente por fax de respuesta y haga caso omiso de esta correspondencia y cualquier adjunto sin leerlos, reenviarlos o guardarlos. Gracias.

**Exhibit N**

**Exhibit N**

If you have any questions or require language interpretation services, please call our Customer Service Section at 1-800-777-9229, Monday - Friday between the hours of 8 a.m. and 5 p.m.

Si tiene alguna pregunta o necesita servicios de interpretación de idiomas, llame a la Sección de Atención al Cliente al 1-800-777-9229, de lunes a viernes, entre las 8 a. m. y las 5 p. m.

如有任何疑問或需要翻譯服務，請致電 1-800-777-9229 與客服中心聯絡，服務時間是週一到週五早上 8 點到下午 5 點。

Nếu quý vị có thắc mắc hoặc cần dịch vụ thông dịch, xin gọi Ban Dịch Vụ Khách Hàng ở số 1-800-777-9229, từ thứ Hai đến thứ Sáu, từ 8 giờ sáng đến 5 giờ chiều.

귀하께서 궁금한 사항이 있으시거나 언어 통역 서비스가 필요하시면, 고객 서비스 부서로 월요일에서 금요일, 오전 8시부터 오후 5시까지 전화 1-800-777-9229 로 연락주시기 바랍니다.

Հարցեր կամ թարգմանության ծառայությունների կարիք ունենալու դեպքում, զանգահարեք մեր Հաճախորդների սպասարկման բաժին (Customer Service Section) 1-800-777-9229 հեռախոսահամարով, երկուշաբթիից ուրբաթ` առավոտյան 08:00 մինչև 17:00.

Kung mayroon kayong anumang mga katanungan o nangangailangan ng mga serbisyong pagsasalin ng wika, mangyaring tawagan ang aming Customer Service Section sa 1-800-777-9229, Lunes – Biyernes sa pagitan ng mga oras ng 8 n.u. at 5 n.h.

Если у вас есть вопросы или вам необходимы услуги устного перевода, звоните в наш Отдел обслуживания клиентов по номеру 1-800-777-9229 по будним дням с 8:00 до 17:00.

إذا كان لديك أي أسئلة أو كنت تحتاج إلى خدمات الترجمة الشفهية اللغوية، يرجى الاتصال بقسم خدمة العملاء لدينا على الرقم 1-800-777-9229 من الإثنين إلى الجمعة بين الساعة 8 صباحًا و5 مساءً

در صورت داشتن هر گونه سوال یا نیاز به خدمات ترجمه شفاهی، لطفاً با بخش خدمات مشتریان به شماره 1-800-777-9229 تماس بگیرید، روزهای دوشنبه تا جمعه بین ساعت 8 صبح تا 5 بعد از ظهر"

Yog tias koj muaj lus nug lossis xav tau kev pab txhais lus, thov hu rau peb Lub Chaw Haujlwm Pab Cov Neeg Uas Txais Peb Cov Kev Pab ntawm 1-800-777-9229, Hnub Monday - Hnub Friday li ntawm cov xauj moos 8 moo saww ntxov mus txog 5 moos tsaus ntuj

ប្រសិនបើអ្នកមានសំណួរណាមួយ ឬត្រូវការសេវាកម្មបកប្រែភាសា សូមទូរស័ព្ទមកកាន់ផ្នែកសេវាកម្មបម្រើអតិថិជនរបស់យើងតាមរយៈលេខ 1-800-777-9229 ពីថ្ងៃចន្ទដល់ថ្ងៃសុក្រ នៅចន្លោះម៉ោង 8 ព្រឹក និង 5 ល្ងាច។

ਜੇ ਤੁਹਾਡੇ ਕੋਈ ਪ੍ਰਸ਼ਨ ਹਨ ਜਾਂ ਤੁਹਾਨੂੰ ਭਾਸ਼ਾਈ ਦੁਭਾਸ਼ੀਆ ਸੇਵਾਵਾਂ ਦੀ ਲੋੜ ਹੈ, ਤਾਂ ਕਿਰਪਾ ਕਰਕੇ ਸਾਡੇ ਕਸਟਮਰ ਸਰਵਿਸ ਸੈਕਸ਼ਨ ਨੂੰ ਸੋਮਵਾਰ ਤੋਂ ਸ਼ੁੱਕਰਵਾਰ ਸਵੇਰੇ 8 ਤੋਂ ਸ਼ਾਮ 5 ਵਜੇ ਤੱਕ 1-800-777-9229 'ਤੇ ਕਾਲ ਕਰੋ।

ຖ້າທ່ານມີຄໍາຖາມ ຫຼື ຕ້ອງການໃຫ້ມີການບໍລິການແປພາສາ, ກະລຸນາໂທຫາຝ່າຍບໍລິການລູກຄ້າທີ່ເບີ 1-800-777-9229, ວັນຈັນ - ວັນສຸກ ລະຫວ່າງ 8 ໂມງເຊົ້າ ຫາ 5 ໂມງແລງ.

Exhibit N

CALIFORNIA CalVCB VICTIM COMPENSATION BOARD

Exhibit N

STATE OF CALIFORNIA
GAVIN NEWSOM, Governor

1/27/2026

Alireza Salemi
2735 Palomar Airport Road
Carlsbad, CA 92009

RE: APPLICATION FOR VICTIM COMPENSATION
CLAIMANT: Alireza Salemi
DATE OF CRIME: 9/2/2025
APPLICATION NUMBER: A25-10183473

Dear Alireza Salemi

Your application for crime victim compensation is denied.

To be qualified for CalVCB benefits, a victim must have sustained either physical injury or emotional injury that is accompanied by a threat of physical injury. Unfortunately, based on the information provided by Carlsbad Police Department, the complaint is a civil matter; therefore, we were unable to verify injuries as required by Government Code section 13955(f)(1)&(2).

You have the right to appeal. **To appeal, you must complete the enclosed Appeal Form and return it within 45 days of the date of this letter.** If you filed your claim online, you may also use the online portal to file your appeal and upload additional documents.

Unless your appeal is successful, we are unable to make any payment(s) related to your application.

Whenever you call or write to us, please use your application number A25-10183473. Please also make sure your contact information stays updated. For questions, please call Customer Service at 1-800-777-9229, Monday - Friday between the hours of 8 a.m. and 5 p.m.

Sincerely,

Customer Service Representative

Exhibit N

STATE OF CALIFORNIA

# APPEAL FORM

VCB-31-06045 (02/2024)

Exhibit N

CALIFORNIA CalVCB VICTIM COMPENSATION BOARD

**Application ID:**
A25-10183473
**Bill ID:**

**Name:** Alireza Salemi

**Date:** 1/27/2026

If your application or bill was denied and you **do not agree** with this decision, you may file an appeal. An appeal must be postmarked or received within 45 days of the date on your denial letter. CalVCB will review your appeal and all information you provide.

- To file an appeal, you or your representative must complete this form and return it to CalVCB at the following address: Legal and Appeals Office, PO Box 350, Sacramento, CA, 95812-0350.
- You may also submit this form by email (info@victims.ca.gov); by facsimile (victimsappealsfax@victims.ca.gov) or upload this form using your CalVCB Online Portal login information.
- To file an appeal for the decision to deny or partially deny attorney fees, the attorney must complete this form and return it to CalVCB.

You must state the specific reason(s) you disagree with the denial and provide information, and/or documents to support the reason(s) you believe your claim should be approved. Additional sheets of paper may be used if needed. **If you do not appeal within 45 days, the denial will be final.**

Reasons(s) I disagree with this decision:

I certify that all the information I have provided is true and correct.

_______________________________ _______________
Applicant, Claimant, or Representative's Signature Date

You are required to keep current contact information on file with CalVCB. If your information has changed, please update it below:

Address: _______________________ Daytime phone: (     ) ___________

City: _______________________ State: __________ Zip: ___________

**Exhibit O**

An official website of the United States government
Here's how you know

UNITED STATES DEPARTMENT of JUSTICE

MENU

# FOIA.gov

**Thank you for visiting FOIA.gov, the government's central website for FOIA.** We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 2346776

# Success!

## Your FOIA request has been created and is being sent to the Federal Bureau of Investigation.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

### Contact the agency

FOIA Requester Service Center

540-868-4593

Shannon Hammer, FOIA Public Liaison

540-868-2101

Michael G. Seidel, Section Chief, Record/Information Dissemination Section
200 Constitution Drive
Winchester, VA 22602

**Exhibit O**

# Request summary

Request submitted on**August 23, 2025**.

The confirmation ID for your request is **2346776**.

The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

## Contact information

**Name**
Alireza Salemi

**Mailing address**
2735 Palomar Airport Rd
Rm 206
Carlsbad, 92009

**Phone number**
7202088755

**Email**
alireza.salemi@udo.edu

## Additional information

**First Party's Date of Birth**
05/13/1972

**First Party's Last Name**
Salemi

**First Party's First Name**

Alireza

**What is the subject of your request?**
myself

**Date of birth**
05/13/1972

**Signature (typed)**
Alireza Salemi

**I am making this request on behalf of**
myself

**Are you a US citizen?**
yes

**Address Type**
domestic

**By providing an electronic signature below I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. Section 552(a)(3) by a fine of not more than $5,000.**
yes

**Today's date**
08/23/2025

**Place of birth**
Tehran, IRAN

**First Party's Additional Information**
Dear FBI,Under the Freedom of Information Act, I request access to any criminal or civil records concerning me, Alireza Salemi, including any watchlists, investigations, or surveillance activities related to alleged harassment over the past nine years.This harassment campaign involves psychological and physical tactics similar to the Stasi Zersetzung program, such as spreading rumors, psychological harassment, deliberate obstruction, property damage, and physical attacks. I have also experienced symptoms similar to Havana Syndrome. Someone told me I should be happy my son is still alive. A

Exhibit O

private investigator I hired confirmed the danger, stating my health is being attacked with radiation or poisoning.Please include any documents, emails, or reports that mention my name or any aliases I may have used.Thank you for your time and assistance.

**First Party's Social Security Number**

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

**State**

CA

## Fees

**What type of requester are you?**

other

**Fee waiver**

option4

**Fee waiver justification**

I respectfully request a waiver of all fees associated with this FOIA request. Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of government operations and activities, particularly regarding the handling of harassment and surveillance allegations. I am not seeking this information for commercial purposes, but to inform myself and potentially the public about these government activities.

**The amount of money you're willing to pay in fees, if any**

100

## Request expedited processing

**Expedited processing**

no

FOIA.gov

## CONTACT

Office of Information Policy (OIP)
U.S. Department of Justice
441 G St, NW, 6th Floor
Washington, DC 20530
E-mail: National.FOIAPortal@usdoj.gov

- FREQUENTLY ASKED QUESTIONS
- DEVELOPER RESOURCES
- AGENCY API SPEC
- FOIA CONTACT DOWNLOAD
- FOIA DATASET DOWNLOAD
- ACCESSIBILITY
- PRIVACY POLICY
- POLICIES & DISCLAIMERS
- JUSTICE.GOV
- USA.GOV

Exhibit P

An official website of the United States government. Here's how you know

FBI FEDERAL BUREAU OF INVESTIGATION

# Electronic Tip Form

Submission Successful

Most Wanted
Ten Most Wanted

News
Stories

What We Investigate
Terrorism

Contact Us
Field Offices

ARASH MOZAYAN, M.D.
EHSAN MOZAYAN, M.D., M.S.
VITREORETINAL SPECIALISTS

RETINA
SAN DIEGO

477 N EL CAMINO REAL, SUITE C302
ENCINITAS, CA 92024
PHONE: (760) 300-3270
FAX: (844) 770-3930
AMOZAYAN@RETINASD.COM

Exhibit Q

| Name | Chart# | DOB | Refer Doctor |
|---|---|---|---|
| Mr. Alireza Salemi | 6494 | 5/13/1972 (48 Years) | Kevin Tagdiri, MD |

| Date | Location | PCP | Insurance |
|---|---|---|---|
| 11/25/2020 | Retina San Diego | | ANTHEM BLUE CROSS |

**Reason For Visit:** New Patient - Evaluation of Floaters OU

**HPI:** Screening for COVID-19: No Close Contact to Anyone with Known COVID-19. Screening for COVID-19: No Close Contact w/ Anyone Exhibiting Symptoms: Fever,Cough,Sneezing/Runny Nose or Muscle/Joint Pain. Screening for COVID-19: No Cough. Screening for COVID-19: No Fever. Screening for COVID-19: No Muscle/Joint Pain. Screening for COVID-19: No Recent High Risk Travel. Screening for COVID-19: No Shortness of Breath/Difficulty Breathing. Screening for COVID-19: No Sneezing/Runny Nose. CC: Blurred Vision OU. Severity: moderate. Duration of Problem: Pt noted change 2 months ago. Context Onset/Aggravation: Pt reports becoming aware of his blurriness first in low light situations. Associated Symptoms: foreign body sensation OU. CC: Floaters (first noticed OD 3 weeks ago, and then first noticed OS 1 week ago) OU. Severity: mild. Duration of Problem: Noticed web like floaters OD on 10/29/20, then line like floaters OS several weeks later. Location: central vision. Associated Symptoms: Pt noticed increase in glare at night 2 months ago OU. HPI obtained by Ehsan Mozayan-Isfahani, MD, MS

**Ocular Meds (Initial):** preservative free artificial tears.

**Mental Status:** Alert and oriented x 3, appropriate mood/affect **Hx Source:** Patient

**PSFH/ROS Updated Date:** PSFH/ROS (Last Update: 11/25/20)

**Medical Hx:** Noncontributory. Influenza Immunization Not Received. **Surgical Hx:** Fistula. Rhinoplasty.

**Systemic Meds:** Zyprexa.

**Allergies:** Sulfa.

**Family Hx:** Blindness (Grandmother). **Social Hx:** Smoking/Tobacco: Never Smoker. Alcohol: None.

**ROS:** Ocular: See HPI. Other: Total of 10+ Systems Reviewed - All Others Noncontributory. Allergy/Immunology: Negative. Cardiovascular: Negative. Constitutional: Negative. Endocrine: Negative. Gastrointestinal: Negative. Genitourinary: Negative. Hematology/Oncology: Negative. HENT: Negative. Integumentary: Negative. Musculoskeletal: Negative. Neurologic: Negative. Psychiatric: Negative. Respiratory: Negative.

---

**VA OD:** Dcc20/20. **OS:** Dcc20/20-1. **IOP:** TP **OD:** 11 **OS:** 14 1:45 PM

**Dilation:**
**Location:** OU. **Tech:** GA. **Time:** 1:45 PM. **Drops:** Discussed effects of drops; Proparacaine .5%/Tropicamide1%/Phenylephrine 2.5%.

**Ishihara: Findings OD:** 11 out of 11 Plates Correct. **Findings OS:** 10 out of 11 Plates Correct.

**Extended HPI:** Pt is present for evaluation of floaters OU, has been seen & treated by Dr Aminlari for DES. Self referred.

| External | Right Eye | Left Eye |
|---|---|---|
| • General | | |
| • Pupils | Round. Brisk. No RAPD. | Round. Brisk. No RAPD. |
| • Motility | Full. Orthotropic. | Full. Orthotropic. |
| • CVF | Full. | Full. |
| • Adnexa | Normal Ocular Adnexa. | Normal Ocular Adnexa. |

**Exhibit Q**

| **Anterior** | **Right Eye** | **Left Eye** |
|---|---|---|
| • General | | |
| • L/C/S | Pinguecula (Temporal). Dilated Episcleral Vessels. | Pinguecula (Temporal). Dilated Episcleral Vessels. |
| • Cornea | Epithelium Intact. Clear Stroma. Clear Endothelium. | Epithelium Intact. Clear Stroma. Clear Endothelium. |
| • Anterior Chamber | Normal Depth. Quiet. | Normal Depth. Quiet. |
| • Iris | Flat. | Flat. |
| • Lens | Clear. | Clear. |

| **Posterior** | **Right Eye** | **Left Eye** |
|---|---|---|
| • General | Lenses Used: 20D and 66D. Method of Extended Ophthalmoscopy Exam: Indirect Ophthalmoscopy with 360 Scleral Depression. | Lenses Used: 20D and 66D. Method of Extended Ophthalmoscopy Exam: Indirect Ophthalmoscopy with 360 Scleral Depression. |
| • Nerve | No Disc Edema. No Disc Pallor. CDR 0.2. | No Disc Edema. No Disc Pallor. CDR 0.1. |
| • Vitreous | Vitreous Syneresis. | Vitreous Syneresis. |
| • Retinal Vessels | Normal Caliber. | Normal Caliber. |
| • Macula | No Hemorrhage. No Subretinal Fluid. No Edema. Drusen and RPE Changes. | No Hemorrhage. No Subretinal Fluid. No Edema. Rare Drusen and RPE Changes. |
| • Periphery | No Holes or Tears. Attached 360 Degrees. | No Holes or Tears. Attached 360 Degrees. Lattice Degeneration (Inferotemporal). |

**OCT Macula: Findings OD:** No Evidence of Macular Edema. No Evidence of Subretinal Fluid. Mild Findings Consistent with Drusen and RPE Changes. **Findings OS:** No Evidence of Macular Edema. No Evidence of Subretinal Fluid. Rare Findings Consistent with Drusen and RPE Changes.

**Fundus Autofluorescence: Findings OD:** Trace Decreased Autofluorescence (questionable). **Findings OS:** No Abnormal Autofluorescence Noted.

---

**Imp/Plan:**

1. Night Blindness, Unspecified OU. Discussed DDx including Vit A deficiency, Glaucoma, Near sightedness, AMD. Will start by r/o Vit A deficiency (Pt reports that he has taken Vitamin A 25000 IU x 1 month). If it is diminished, will adjust supplement intake. Rec pt to get new refraction given improved cornea, if night blindness persists after new refraction, will refer to Neuro ophthalmologist for ERG & Consult. Recommended observation. Will reevaluate in 2-3months.
2. Dry Eye Syndrome OU. Pt reports that his screen time is high. Recommend following up with Dr Viechnicki for management. Also pt give himself breaks from screen. Advised pt to consider getting blue light filter in new glasses. Recommend continued use of Preservative Free Artificial Tears.
3. Macular Drusen OU. Stressed the importance of BP control, UV protection, cardiovascular exercise, and diet rich in antioxidants. Pt reports he has started to introduce Lutein and Zeaxanthin into diet. When asked, pt states that he is unsure if he snores at night. Initial visit BP in office: 118/80 HR:70. Recommended observation.
4. Vitreous Syneresis OU. No RT or RD on scleral depressed exam. Discussed diagnosis with patient and progression of Vitreous Syneresis to PVD. Pt to call if he notices an increase in floaters, flashes, distortion, veil or curtain in vision. Retinal detachment warnings given. Recommended observation.

**Other Discussion:** Retinal detachment warnings given. Advised regular use of Amsler grid.

**Ocular Meds (Final):** preservative free artificial tears.

**Follow Up:** Dr. Mozayan-Isfahani 2-3 Months - DFE OU.

**Exhibit Q**

**CPT Codes:** 99204. G8427. 1036F. G9903. G8785. 92134. 92499. 92201.
**ICD-9 Codes:** 368.60u, 375.15u, 362.57u, 379.24u.
**ICD-10 Codes:** H53.60u, H04.123u, H35.363u, H43.393u

**Signed:** ______________________________
Electronically signed by Ehsan Mozayan-Isfahani, MD, MS

**Extended Ophthalmoscopy**

OD

OS




**Posterior: Findings OD:** General: Lenses Used: 20D and 66D. Method of Extended Ophthalmoscopy Exam: Indirect Ophthalmoscopy with 360 Scleral Depression. Nerve: No Disc Edema. No Disc Pallor. CDR 0.2. Vitreous: Vitreous Syneresis. Retinal Vessels: Normal Caliber. Macula: No Hemorrhage. No Subretinal Fluid. No Edema. Drusen and RPE Changes. Periphery: No Holes or Tears. Attached 360 Degrees. **Findings OS**: General: Lenses Used: 20D and 66D. Method of Extended Ophthalmoscopy Exam: Indirect Ophthalmoscopy with 360 Scleral Depression. Nerve: No Disc Edema. No Disc Pallor. CDR 0.1. Vitreous: Vitreous Syneresis. Retinal Vessels: Normal Caliber. Macula: No Hemorrhage. No Subretinal Fluid. No Edema. Rare Drusen and RPE Changes. Periphery: No Holes or Tears. Attached 360 Degrees. Lattice Degeneration (Inferotemporal).

**Exhibit R**

## Notice from EDD - State Disability Insurance

**From** <noreply@edd.ca.gov>
**To** <alireza.salemi@udo.edu>
**Date** 2020-12-29 20:25

EDD LOGO

**Items Requiring Attention and Notices**

Issue Date: 12-29-2020

Dear Alireza Salemi:

You have items requiring attention or notices ready for your review. To view your messages log-in to: www.edd.ca.gov/Disability

If you have any questions, please access your account and select the "Contact Us" link or contact EDD at 1 (800) 480-3287. The EDD staff is available from 8 a.m. to 5 p.m. (PT), Monday through Friday, except on state holidays.

Sincerely,

Employment Development Department
Disability Insurance Branch

Please do not respond to this email. You may change your communication preference in your DIA user profile.

## 03/31/2022 - Admission (Discharged) in Wf Or (continued)

**Case 401639 (continued)**

| | |
|---|---|
| | limits -TW |
| Full Body Assessment (READ ONLY) | New note entered - TW |
| Wound/Incision Properties | Placement Date: 12/07/17 -JL Placement Time: 2215 -JL Type: Burn;Laceration -JL Orientation: Dorsal;Proximal -JL Location: Penis -JL Removal Date: 03/31/22 -TW Removal Time: 0636 -TW |
| Neurological(WDL) (Read Only) | Within defined limits -TW |

### Fall Screening CHAMPS Assessment Tool

| Row Name | 03/31/22 0636 |
|---|---|
| C - Change in Mental Status | No -TW |
| H - History of Falls | No -TW |
| A - Assess for Developmental Delayed | Yes -TW |
| M - Mobility Impairment | No -TW |
| P - Parental Involvement/Education | Use of call light -TW |
| S - Safety | Call light within reach of caregiver/patient - TW |

### Braden QD Scale

| Row Name | 03/31/22 0636 |
|---|---|
| Mobility | No limitation -TW |
| Sensory Perception | No impairment -TW |
| Friction and Shear | No problem -TW |
| Nutrition | Adequate -TW |
| Tissue Perfusion and Oxygenation | Adequate -TW |
| Number of Medical Devices | 0 -TW |
| Medical Devices Repositionability/ Skin Protection | No medical devices -TW |
| Total Score | 0 -TW |

### Intake & Output

| Row Name | 03/31/22 0850 |
|---|---|
| Amount PO | — -ZB |

### PACU Vital Signs/Assessment

| Row Name | 03/31/22 0849 | 03/31/22 0821 | 03/31/22 0812 | 03/31/22 0757 |
|---|---|---|---|---|
| Temp | 36 °C (96.8 °F) -CR | 36 °C (96.8 °F) -ZB | — | 36.3 °C (97.3 °F) - ZB |
| Temp src | Temporal Artery - CR | Temporal Artery - ZB | — | Temporal Artery - ZB |
| Pulse | — | 90 -ZB | 80 -ZB | 81 -ZB |

**Exhibit T**

## Patient (continued)

**Patient Level Documents(Photos Excluded) (group 1 of 6) (continued)** as of 1/1/2026

**CCP - Authorization for County Payment** as of 1/1/2026

**Scan on 6/5/2020 1:07 PM: 04-130** as of 1/1/2026

Scan (below)

Authorization for County Payment

Child's Name: **M.D.S**
DOB: **[REDACTED]** Case #:
SW Name: Jessica Arellano
SW#: 8A3R
MS#: N-189
Phone #: 760-754-3554
PSS Name: Arlene Greene
Phone #: 760-754-3500
Caregiver Name: **FS**
Caregiver Phone: 720-335-8203
Placement Type: Relative
Aid Type:

Payee Information

Name: Chadwick
SSN:
Check here if Payee is Foster Parent: ☐
Phone #:
Address: 3665 Kearny Villa Suite 500
City: San Diego
State: CA
Zip Code: 92123
Beginning Date of Service: 1/22/20
End Date: 1/22/20
Payment Amount: $719

*SW must provide an explanation, if #1 or #2 is selected* - ***Requires approval from Manager (DD if $750 or more)*** *See page 2 for instructions.*

☐ 1. Release funds from child's SSI/SSA Reserve Account

☐ 2. SCIAP Request – Must attach bills/receipts

Explanation:

CWS Funds – Select one – *Requires approval from Manager (DD if $750 or more). See page 2 for instructions.*

☐ 3. Aid prior to petition/AFDC-FC Eligibility – Must attach 07-65

☒ 4. Consultation/Evidentiary Exams Not Covered by Medi-Cal

☐ 5. Other Expense:

#6 - 11 - General Purpose Revenue Funds - Select one - *Requires approval from Manager (DD if **$750 or more**)* *See page 2 for instructions.*

*SW must provide an explanation, if selecting #9 - 11:* <select>

Explanation:

*See page 2 for approval guidelines*

Approved (DD) (Manager): [signature] Julie Herzog, Protective Services Program Manager — Signature/Print Name; Title; Date: 1-21-20

*Section completed by PAA or designee*

Supplier Number from Oracle ______

PAA Approval: ______ Date: ______

POETA AND COMMENTS SECTIONS Authorizing Code: ______

| | PROJECT (P) | TASK (T) | AWARD (A) | EXPENDITURE (E) | ORG (O) | AMOUNT |
|---|---|---|---|---|---|---|
| ☐ | 1001994 | 001 001 | 100259 | 53112 | 46214 | $ |
| ☐ | 1001985 | 002 003 | 100259 | 53112 | 46214 | $ |
| ☐ | 1001994 | 029 003 | 100259 | 53112 | 46200 | $ |

☐ Payment approved releasing SSI/SSA reserve funds and will be paid by foster care HSS via CalWIN (NSDI).

☐ Payment approved for placement cost, as checked above, and will be paid by foster care HSS via CalWIN (NSDI). Aid Code 5X

04-130 (05/18) County of San Diego/HHSA/CWS

# 01/18/2020 - ED in Rady Children's Emergency

## Reason for Visit

Chief complaint: Ear Pain
Visit diagnosis: Bruise of pinna, right, initial encounter

## Visit Information

### Admission Information

| | | | | | |
|---|---|---|---|---|---|
| Arrival Date/Time: | 01/18/2020 1143 | Admit Date/Time: | 01/18/2020 1219 | IP Adm. Date/Time: | |
| Admission Type: | Emergency | Point of Origin: | Home | Admit Category: | |
| Means of Arrival: | Car | Primary Service: | Emergency | Secondary Service: | N/A |
| Transfer Source: | | Service Area: | RADY CHILDREN'S HOSPITAL | Unit: | Rady Children's Emergency |
| Admit Provider: | | Attending Provider: | Katherine A Mandeville, MD | Referring Provider: | |

### ED Disposition

| ED Disposition | Condition | User | Date/Time | Comment |
|---|---|---|---|---|
| **Discharged** | -- | Katherine A Mandeville, MD | Sat Jan 18, 2020 1:14 PM | -- |

### Discharge Information

Date/Time: 01/18/2020 1324
Provider: Katherine A Mandeville, MD
Disposition: Home Or Self Care
Unit: Rady Children's Emergency
Destination: —

### Level of Service

| Level of Service |
|---|
| **(99282) PR EMERGENCY DEPARTMENT VISIT LOW/MODER SEVERITY** |

## Treatment Team

| Provider | Service | Role | Provider Team | Specialty | From | To |
|---|---|---|---|---|---|---|
| Haylie Lichtenberger, RN | — | Registered Nurse | — | — | 01/18/20 1227 | 01/18/20 1335 |
| Katherine A Mandeville, MD | — | Attending | — | Emergency Medicine | 01/18/20 1246 | 01/18/20 1324 |

## Events

### ED Arrival at 1/18/2020 1143

Unit: Rady Children's Emergency

### ED Transfer at 1/18/2020 1153

Unit: Rady Children's Emergency

### ED Transfer at 1/18/2020 1156

Unit: Rady Children's Emergency

### Admission at 1/18/2020 1219

Unit: Rady Children's Emergency
Room: 09-EDS
Bed: EDS-09
Patient class: Emergency

### ED Roomed at 1/18/2020 1219

Unit: Rady Children's Emergency
Room: 09-EDS
Bed: EDS-09
Patient class: Emergency

### Transfer In at 1/18/2020 1323

Unit: Rady Children's Emergency
Room: zCHECKOUT
Bed: zCHECKOUT
Patient class: Emergency

## Patient (continued)

**Patient Level Documents(Photos Excluded) (group 1 of 6) (continued)** as of 1/1/2026

**CCP - Forensic Medical OES 900** as of 1/1/2026

**Scan on 1/23/2020 10:37 AM: CAL EMA 900** as of 1/1/2026

Scan (below)

MEDICAL REPORT: SUSPECTED CHILD PHYSICAL ABUSE AND NEGLECT EXAMINATION
STATE OF CALIFORNIA EMERGENCY MANAGEMENT AGENCY

**CalEMA 2-900**

CONFIDENTIAL DOCUMENT: Restricted Release

**A. GENERAL INFORMATION**

| | | |
|---|---|---|
| 1. Name if Medical Facility Where Exam Performed: 3020 Children's Way MC 5016 San Diego, CA 92123 | 2. Date of Exam: 01/22/20 | Time of Exam: 10:02 AM |
| 3. Patient's Name: MDS | | |
| 4. Address: [REDACTED] | | |

| 5. | Age | DOB | Gender | Ethnicity |
|---|---|---|---|---|
| | 6 y.o. | 2/3/2013 | male | |

| 7.Parents/Guardians: | | | | |
|---|---|---|---|---|
| Name:Fernanda Salemi | DOB: | Sex: | Relationship:Mother | Ethnicity: |
| Address: | | Home Phone: | | Work Phone: |
| Name: | DOB: | Sex: | Relationship: | Ethnicity: |
| Address: | | Home Phone: | | Work Phone: |

8.Siblings:

| Name | Birthdate | Sex | Ethnicity | Name | Birthdate | Sex | Ethnicity |
|---|---|---|---|---|---|---|---|
| 1. | | | | 3. | | | |
| 2. | | | | 4. | | | |

**B. MANDATORY REPORTING FOR SUSPECTED CHILD ABUSE AND NEGLECT**

Mandatory Child Abuse/Neglect Report made to both Law Enforcement and CPS Agencies (Pursuant to Code 11166):

| Child Protective Services | Telephone Report | Name of Agency | Telephone | Date |
|---|---|---|---|---|
| Name of Person Taking Report: Jessica Arrellano | | cws | 858-356-9780 | 1/22/2020 |

**C. RESPONDING PERSONNEL TO MEDICAL FACILITY**

| Child Protective Service and/or Law Enforcement Officer: | Name of personnel: | ID Number: | Agency: |
|---|---|---|---|
| Child Protective Service | | | |
| Law Enforcement Officer | | | |

**D. PATIENT CONSENT AND AUTHORIZATION FOR EXAMINATION**

CPS, Parent/ Guardian consent

**E. DISTRIBUTION OF CalEMA 2-900**

Child Protective Service: Hand delivered

**FS**

M.D.S.

CSN:H151739972
ATT:Suresh, Premi T Enc:
SX:M MRN:H2248641
PCP:Natalie D Muth, MD 760-633-3640
DOB: [REDACTED] .o.
DOS:1/22/20
LOC:H_CHAD EV M

**Exhibit U.2**

**RE: FOLLOW-UP: Complete & Unredacted Medical Records –**

From: ROI Scanning Customer Service
To: alireza.salemi@udo.edu
Cc:
Sent: 1/20/2026 10:14:53 AM

Hello,

You were provided with the full legal medical records data set for your child's records for the dates you requested: 01/01/17-01/01/26.
The only records not provided were the mental health outpatient psychiatry records as patient signature is required for these records when the patient is 12 years or older, per the authorization form(pg2). If you would like additional records/dates, please update your authorization and resubmit.

Please see notes in RED below to assist you in locating records. If you have additional questions, please call us at 858-966-5904.

Thank you,
Cory Schwab, RHIT
Lead, Release of Information Specialist
She/Her/Hers

Rady Children's Health
Health Information Department
3020 Children's Way, MC 5049
San Diego, CA 92123
Ph: (858) 966-5904 Fax: (858) 966-8527
x244919
cschwab1@rchsd.org

"The mission of Rady Children's Hospital and Health Center is to restore, sustain and enhance the health and developmental potential of children through excellence in care, education, research and advocacy."

CONFIDENTIALITY NOTICE: This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify Rady Children's Hospital immediately by telephone at (858) 966-4919 and destroy all copies of this communication and any attachments.

**From:** Alireza Salemi <alireza.salemi@udo.edu>
**Sent:** Friday, January 16, 2026 8:33 PM
**To:** ROI Scanning Customer Service <releaseofinformation@rchsd.org>
**Subject:** FOLLOW-UP: Complete & Unredacted Medical Records – M.D.S. (MRN: [REDACTED]

---

**This Message Is From an External Sender**

This message came from outside your organization.

Dear Rady Children's Hospital Medical Records Department,

I am writing to follow up on my previous requests (latest dated January 14, 2026) regarding the medical records for my son, M.D.S [REDACTED] (MRN: [REDACTED] DOB: [REDACTED] and release ID 114592880.

While I received a partial release via USB and the Ambra Health portal, the records remain significantly incomplete and legally deficient. This letter serves as a formal demand for the complete, unredacted record, including all items previously excluded or truncated.

I. Critical Deficiencies in Prior Release

Review of the document reveals the following:
- Excluded Media: All clinical photographs and X-ray images remain excluded (noted as "(Photos Excluded)"), despite signed authorizations on file (e.g., Ambulatory Photo Authorization effective 12/7/2017 and general authorization scanned 3/11/2019). All photos are included. All radiology images for the dates requested were emailed to you on 1/8/26.
- Truncated Notes: Raw nursing notes, attending dictations,

**Exhibit U.2**

operative/procedure reports, and flowsheets are missing; only high-level summaries and timelines were provided. Please review records again. If they exist, these are all included.
- Missing Incident Documentation: No incident reports, mandated reporter forms, abuse screenings, or social services referrals were included for any encounter. No records found.
- Pagination Gaps: The provided records jump from early demographics (~page 12) directly to late 2017 (~page 2668), leaving significant periods of care entirely unaccounted for. Dates requested 1/1/17-1/1/26

II. Specific Encounters Requiring Complete Records

Please provide all raw notes, clinical photos/images, and incident documentation for:

- December 7, 2017 – Penis Laceration (Urgent Care Oceanside)
  Provider: Ashley M. Metcalf, DO
  Missing: All clinical photographs (per signed authorization), full nursing notes, attending dictation, and any mandated reporter/incident forms. Pages 2634-2662. Photos on pages 2637, 2652, 2653. RN notes included in ED Timeline and flowsheets. No abuse reports.

- July 2021 – Right Little Finger Open Fracture (ER/Orthopedics San Diego)
  Encounters: 7/7/2021 (ER), 7/13/2021, and 8/17/2021 (Follow-ups)
  Missing: Photos, complete ortho consult notes, and abuse screening/incident reports. No photos taken. No Ortho consult. No abuse reports.
  May 31, 2024 – Right Little Finger Open Fracture (Orthopedics Oceanside)
  Providers: Alexandra N. Santellano-Bartsch, PA-C; Trenton L. Peterson, PA-C
  Missing: All hand-exam photos, intra-op images, and full attending/PA-C notes. No photos or x-rays performed at this visit. PA note pg676.

III. Omitted Neurology Records (Hemiplegic Migraine)

The current Problem List (ICD-10-CM G43.409) confirms a diagnosis of "Hemiplegic migraine" resolved on 6/21/2023, yet all narrative records are missing. I specifically require:
- ED Records from July 9, 2022: Notes regarding stroke alert activation, facial droop, dysarthria, and the differential diagnosis favoring atypical migraine. Pages 1413-1466
- Imaging Reports: Full MRI brain and MRA head results from July 2022. Pages 1454-1456
- Neurology Clinic Notes (2022–2025): All progress notes discussing triggers, treatment (naproxen), and follow-up assessments. Neuro visit notes start at these pages: 1538, 1226, 874, 448, and 287

IV. Formal Demand for Production

Pursuant to California Health and Safety Code §123100 et seq., please provide within 10 business days:
- Complete Raw Notes: All nursing, attending, dictation, progress notes, operative reports, and care timelines.
- All Images: All clinical photographs, surgical images, X-rays, and MRI/MRA reports.
- Governance/Safety Records: Any incident reports, mandated reporter forms, or social services referrals.
- Certification: Written confirmation that no records have been withheld or redacted beyond legal requirements.

Preferred Delivery: Electronic (Secure PDF or updated Ambra Health portal share). Please notify me in advance of any copying fees.

Attached is the original the fully completed and signed Authorization for Use or Disclosure of Health Information form for my son

Thank you for your immediate attention to this matter.

Sincerely,

Alireza Salemi
Father and Legal Guardian
720-208-8755 | alireza.salemi@udo.edu

**Exhibit U.2**

2735 Palomar Airport Road
Carlsbad, CA 92009

On 2025-12-31 00:33, Alireza Salemi wrote:
> Dear Records Department,
>
> Attached is the fully completed and signed Authorization for Use or
> Disclosure of Health Information form for my son, Maximilian Salemi
> (DOB: 02/03/2013).
> I am requesting ALL medical records from birth to the present date,
> with no exceptions or redactions.
>
> Thank you for your immediate attention.
>
> Sincerely,
> Alireza Salemi
> Father of M.D.S
> Phone: 7202088755

## 08/06/2025 - Office Visit in Rady Children's Neurology Main (continued)

**Medication List (continued)**

Instructions: 1 Spray by Both nostrils route Daily.
Authorized by: Natalie D Muth, MD — Ordered on: 2/27/2025
Start date: 2/27/2025 — Quantity: 16 g
Refill: 2 refills by 2/27/2026

**cetirizine HCl (ZyrTEC ALLERGY) 10 MG CAPS**

Instructions: Take 1 Dose by mouth Daily.
Authorized by: Natalie D Muth, MD — Ordered on: 2/27/2025
Start date: 2/27/2025 — Quantity: 90 Capsule
Refill: 3 refills by 2/27/2026

**guanFACINE (INTUNIV) 3 mg Oral 24 Hr ER Tablet**

Instructions: Take 1 Tablet (3 mg) by mouth Daily.
Authorized by: Anuja Jindal V, MD — Ordered on: 8/6/2025
Start date: 8/6/2025 — Quantity: 30 Tablet
Refill: 5 refills by 8/6/2026

**Stopped in Visit**

None

**Progress Notes**

**Progress Notes**

**Anuja Jindal V, MD at 8/6/2025 1230**

M.D.S. is a 12 y.o. 6 m.o. male who presents to the Pediatric Neurology clinic today accompanied by his mother for follow-up of autism, ADHD, hemiplegic migraines.

**Summary:** Maximilian was last seen by me on 1/16/2025.
At that time my impression and recommendations included:
*Encounter Diagnoses*

| *Name* | *Primary?* |
|---|---|
| • *Hemiplegic migraine without status migrainosus, not intractable* | |
| • *Attention deficit hyperactivity disorder, combined type* | *Yes* |
| • *Autism spectrum disorder* | |
| • *Chromosomal microduplication* | |
| • *Sensory processing difficulty* | |

*Impulsivity and inattention worsening over time, impacting behaviors at school. Mother would like to try a medication. Different options discussed. Mutually agreed with starting with Intuniv 1mg daily, potential side effects reviewed. Given prior holter/EKG results, will obtain cardiology clearance before starting medication.*

*Hemiplegic migraines are rare, usually triggered by stress/heat. Naproxen prn is effective.*

**Interim History:**

Current medications:
Intuniv 2mg daily -- started 1/2025, increased 4/2025. Mother did not notice difference on attention and impulsivity with medication. When mother instructs him to do things, will not follow instructions.
Had some aggressive behaviors, which improved with medication
Mother does not want to start him on stimulant. Mother is concerned that father has schizophrenia (paranoid) and

Exhibit Z.14

**California Public Records Act Request – Records Related to Alireza Salemi and Flora Vista Elementary (2017–2026)**

| | |
|---|---|
| **From** | Alireza Salemi <alireza.salemi@udo.edu> |
| **To** | <records@eusd.net> |
| **Cc** | <andree.grey@eusd.net> |
| **Reply-To** | <alireza.salemi@udo.edu> |
| **Date** | 2026-02-03 20:40 |

Dear Records Custodian,
Pursuant to the California Public Records Act (Gov. Code § 6250 et seq.), I request the following records in electronic format from January 1, 2017 to the present:
1. Any document, email, text message, log, payroll entry, reimbursement, honorarium, stipend, or purchase order that mentions Alireza Salemi or his minor son (child with autism).
2. All playground and swing maintenance or inspection logs for Flora Vista Elementary.
3. Any record of payments, stipends, honoraria, or reimbursements to staff, contractors, volunteers, or parents for safety presence, parent monitoring, crowd control, visual presence, or special-needs supervision at Flora Vista Elementary or any district campus.
4. Any correspondence or grant-related documents referencing UASI, DHS, HSI, fusion center, or law-enforcement liaisons on district property.

Please confirm receipt and provide a tracking number. I prefer electronic delivery.
Thank you.
Sincerely,
Alireza Salemi
Carlsbad, CA 92009
720-208-8755

Exhibit Z.15

# Re: NOTICE OF LITIGATION HOLD / EVIDENCE PRESERVATION - SALEMI v. CITY OF CARLSBAD

| | |
|---|---|
| **From** | Alireza Salemi <alireza.salemi@udo.edu> |
| **To** | Christina Mihelich <cmihelich@dpmclaw.com> |
| **Cc** | Shahoya Bibiyan <sbibiyan@dpmclaw.com>, Christina Cameron <ccameron@dpmclaw.com>, Michelle Lee <mlee@dpmclaw.com> |
| **Reply-To** | <alireza.salemi@udo.edu> |
| **Date** | 2026-04-10 12:02 |

Dear Ms. Mihelich,

Please be advised that I have filed a Renewed Motion for Preservation Order in the U.S. District Court for the Southern District of California (Case No. 3:25-cv-02934-AGS-MSB).

This motion specifically addresses the "parent monitoring," "visual presence," and UASI/Fusion Center liaison records currently being processed by the Encinitas Union School District. In light of the District's April 10, 2026, production deadline, this email serves as a formal Notice of Litigation Hold.

The District is hereby required to take all necessary steps to prevent the destruction, alteration, or deletion of any records related to these requests. This includes ensuring that any "bystander reporting," "behavioral threat assessment" (BTAM) entries, or communications with law enforcement liaisons are protected from routine digital deletion cycles.

As a matter of law, the District has an affirmative duty to preserve evidence once litigation is reasonably anticipated or ongoing. Please confirm that a litigation hold has been placed on these materials.

Best regards,
Alireza Salemi

On 2026-03-26 15:56, Christina Mihelich wrote:

Exhibit Z.15

Dear Mr. Salemi,

In our previous correspondence, we estimated that we could provide an update by March 25. Please be advised that the District is still processing your request and determining the existence of any responsive records. A further update can be expected by April 10, 2026. We appreciate your patience.

Best,
Christina Mihelich

Christina C. Mihelich I Associate Attorney

www.dpmclaw.com
402 West Broadway, Ste. 1300
San Diego, CA 92101-3542
D: 619-354-5029 ~ F: 619-354-5035
This email and its attachment(s) are for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply mail and destroy all copies of the original message. To reply to our email administrator directly, send an email to info@dpmclaw.com.

-----Original Message-----
From: Shahoya Bibiyan <sbibiyan@dpmclaw.com>
Sent: Thursday, March 5, 2026 1:24 PM
To: alireza.salemi@udo.edu; Christina Mihelich <cmihelich@dpmclaw.com>
Cc: Christina Cameron <ccameron@dpmclaw.com>; Michelle Lee <mlee@dpmclaw.com>
Subject: RE: ALIREZA SALEMI v. CITY OF CARLSBAD

Dear Mr. Salemi,

In the link provided below, please find correspondence from our office in reference to the follow up on Public Records Act Request dated February 3, 2026.

https://dpmclaw.sharefile.com/public/share/web-sb42c9a084ea34b5abad6e5a461431248

Should you have any accessing the link, please let me know. Hard copy to follow via USPS mail.

Kind Regards,
Shahoya Bibiyan

Shahoya Bibiyan | Legal Secretary

O: 619-354-5030

This email and its attachment(s) are for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply mail and destroy all copies of the original message. To reply to our email administrator directly, send an email to: info@dpmclaw.com

-----Original Message-----
From: Alireza Salemi <alireza.salemi@udo.edu>
Sent: Wednesday, March 4, 2026 8:18 PM
To: Christina Mihelich <cmihelich@dpmclaw.com>
Cc: Shahoya Bibiyan <sbibiyan@dpmclaw.com>; Christina Cameron <ccameron@dpmclaw.com>; Michelle Lee <mlee@dpmclaw.com>
Subject: Re: ALIREZA SALEMI v. CITY OF CARLSBAD

[Some people who received this message don't often get email from alireza.salemi@udo.edu. Learn why this is important at https://aka.ms/LearnAboutSenderIdentification ]

Dear Ms. Mihelich,

Thank you for your update and for working on the request. I understand you are awaiting client approval and appreciate the anticipated status update this afternoon or no later than Friday, March 6, 2026.
Please provide any responsive records on a rolling basis as they become available, in accordance with Gov. Code § 7922.535. If you need any further clarification on the narrowed requests, I am happy to assist.

Best regards,
Alireza Salemi
2735 Palomar Airport Road
Carlsbad, CA 92009
(720) 208-8755
alireza.salemi@udo.edu

On 2026-03-04 14:01, Christina Mihelich wrote:
> Mr. Salemi,
>
> Thank you for your email. While we still hope to get the status update

to you this afternoon, I am still awaiting final approval from my client. We will provide the update no later than Friday, March 6. I apologize for any inconvenience.

Best,
Christina Mihelich

Christina C. Mihelich I Associate Attorney

www.dpmclaw.com
402 West Broadway, Ste. 1300
San Diego, CA 92101-3542
D: 619-354-5029 ~ F: 619-354-5035
This email and its attachment(s) are for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply mail and destroy all copies of the original message. To reply to our email administrator directly, send an email to info@dpmclaw.com.

-----Original Message-----
From: Alireza Salemi <alireza.salemi@udo.edu>
Sent: Wednesday, February 25, 2026 10:33 PM
To: Christina Mihelich <cmihelich@dpmclaw.com>
Cc: Shahoya Bibiyan <sbibiyan@dpmclaw.com>; Christina Cameron <ccameron@dpmclaw.com>; Michelle Lee <mlee@dpmclaw.com>
Subject: Re: ALIREZA SALEMI v. CITY OF CARLSBAD

Dear Ms. Mihelich and Ms. Bibiyan,
Thank you for your February 23/24, 2026 email and for confirming ongoing review for Request #2.

To facilitate production and avoid further delay or judicial intervention, I provide the following clarifications and requests:

Request #1: Pursuant to Gov. Code § 7922.525, the District must segregate and release any reasonably segregable portion of records after redaction of exempt pupil-identifying information. I am not seeking student names. Please redact all identifying information and produce the remaining incident descriptions, dates, and general supervision logs for playground/safety incidents at Flora Vista Elementary from January 1,
2020 to present.

Request #2: Thank you for confirming the ongoing search for playground/swing maintenance/inspection logs. Please produce any disclosable portions as soon as available and provide the promised status update by March 4, 2026 (or sooner).

Request #3: The narrowed request reasonably describes identifiable records (payments/stipends/reimbursements for "parent monitoring" or "visual presence"). Gov. Code § 7922.530(b) prohibits withholding based solely on burden or difficulty of search. To further narrow: please produce payroll or accounts payable records for any stipends, reimbursements, or independent contractor fees specifically for "campus security," "safety monitoring," or "supervision" to non-certified staff, parents, or third-party vendors at Flora Vista Elementary from January 1, 2020 to present. If this remains overbroad, please advise what additional specificity would allow processing.

Request #4: The law-enforcement exemption (Gov. Code § 7923.600(a)) applies only to records compiled for law enforcement purposes. General correspondence referencing UASI, DHS, HSI, fusion center, or law-enforcement liaisons is not automatically exempt. Please provide any non-exempt portions or a privilege log identifying withheld records, including date, author, recipient, and general subject matter, so the public interest balancing test (Gov. Code § 7922.000) can be evaluated.

Please continue to provide responsive records in electronic PDF format on a rolling basis. If fees are anticipated, please provide an estimate in advance.

Thank you for your assistance.
Sincerely,
Alireza Salemi
2735 Palomar Airport Road

Carlsbad, CA 92009
(720) 208-8755
alireza.salemi@udo.edu

On 2026-02-23 13:50, Christina Mihelich wrote:

Dear Mr. Salemi,

Thank you for the email. We have reviewed your modified requests and can provide the below response to each request. As a reminder, we still anticipate providing you with an update as to the status of any responsive documents by March 4, 2026.

Request No. 1 –

Any potential records related to " non-identifying records (e.g., anonymized logs or reports) related to playground incidents, safety incidents, or supervision issues at Flora Vista Elementary from January 1, 2020 to present." would mention student names and thus would not be subject to release in response to a PRA request, as shared in the District's response on February 12, 2026.

Request No. 2 –

As stated in the District's response on February 12, 2026, the District is in the process of searching for, collecting, and reviewing records relating to these requests and will provide you with a status update as to the existence and delivery of any disclosable records subject to any applicable exemptions on or about March 4, 2026. If the District can make the records available prior to this date, it will do so. Alternatively, if additional time is needed to complete the review and redaction process, the District will notify you in writing.

Request No. 3 –

As previously stated in the District's response on February 12, 2026, denied as overbroad and unduly burdensome. In your email on February 12, 2026, you attempt to narrow the request by removing "honoraria" and adjusting the search time frame to January 1, 2020 to present. In reviewing your updated information, this request could still involve a substantial volume of documents which may or may not be relevant to what you are looking for. As a reminder, nearly every District employee assigned to a school site has a role in student safety and supervision. Should you seek responsive records regarding a specific incident or area in particular, please provide additional clarification or narrowing on the records you seek in order to present a "focused and effective request that reasonably describes an identifiable record or records" as required by the PRA. The District would be pleased to undertake a search on a more narrow and focused request. This request will not be processed until more specificity is provided.

Request No. 4 –

The District appreciates your clarification and definition of the acronyms listed in your requests. Specific to the remaining agencies in this request, the District will not release correspondence, which are exempt from disclosure, if they have been compiled by any local agency for law enforcement purposes. (Gov. Code 7923.600(a).) Further, the District will not produce records, the content of which are exempt or prohibited to the extent that the public interest served by not disclosing the documents outweighs the public interest served by disclosing the documents. (Gov. Code § 7922.000.) Records are exempt from disclosure if, "it is plausible to believe that an individual intent on doing harm could use such information to . . . identify areas of particular vulnerability." (_Times Mirror Co. v. Superior Ct_., (1991) 53 Cal. 3d 1325, 1346.)

The District has received multiple versions of your California Public Records Act request emailed to various district staff members, including a similar request emailed as recently as yesterday, Sunday, February 22. For clarification, please ensure your requests are emailed directly to myself and sbibiyan@dpmclaw.com, who is managing the communications.

Please reach out to me if you have any questions regarding this response, or if you need assistance in modifying the scope of Requests identified as requiring narrowing.

Sincerely,

Christina Mihelich

Christina C. Mihelich I Associate Attorney

www.dpmclaw.com [1]

402 West Broadway, Ste. 1300

San Diego, CA 92101-3542

D: 619-354-5029 ~ F: 619-354-5035

This email and its attachment(s) are for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply mail and destroy all copies of the original message. To reply to our email administrator directly, send an email to info@dpmclaw.com.

-----Original Message-----
From: Alireza Salemi <alireza.salemi@udo.edu>
Sent: Thursday, February 12, 2026 7:22 PM
To: Shahoya Bibiyan <sbibiyan@dpmclaw.com>
Cc: Christina Cameron <ccameron@dpmclaw.com>; Christina Mihelich <cmihelich@dpmclaw.com>; Michelle Lee <mlee@dpmclaw.com>
Subject: Re: ALIREZA SALEMI v. CITY OF CARLSBAD

Dear Ms. Bibiyan and Ms. Cameron,

Thank you for your February 12, 2026 response to my CPRA request dated February 3, 2026, and for confirming that responsive records exist for some components. I appreciate the status update timeline of March 4, 2026.To narrow the scope and address your concerns:

- Request #1: I withdraw this request to the extent it seeks pupil/parent identifying information. Please produce any non-identifying records (e.g., anonymized logs or reports) related to playground incidents, safety incidents, or supervision issues at Flora Vista Elementary from January 1, 2020 to present.

- Request #2: Please produce playground and swing maintenance/inspection logs for Flora Vista Elementary from January 1,
2020 to present.

- Request #3: Narrowed to: Any records of payments, stipends, or reimbursements specifically for safety presence, parent monitoring, crowd control, or visual presence at Flora Vista Elementary or district campuses from January 1, 2020 to present (e.g., to staff, contractors, volunteers, or parents).

- Request #4: Clarification: Any correspondence or documents referencing UASI (Urban Area Security Initiative), DHS (Department of Homeland Security), HSI (Homeland Security Investigations), fusion center, or law-enforcement liaisons on district property from January 1, 2020 to present.

Please provide any responsive records as they become available, even if partial. If fees are anticipated, please provide an estimate. I continue to request electronic PDF format.Thank you for your assistance.

Sincerely,

Alireza Salemi

2735 Palomar Airport Road

Carlsbad, CA 92009

(720) 208-8755

alireza.salemi@udo.edu

Exhibit Z.15

On 2026-02-12 12:20, Shahoya Bibiyan wrote:

Dear Mr. Salemi,

Attached, please find correspondence from our office in reference to

the Public Records Act Request dated February 3, 2026.

Should you have any trouble viewing the attachment, please let me

know. Hard copy to follow via USPS mail.

Kind Regards,

Shahoya Bibiyan

_Shahoya Bibiyan _| _Legal Secretary _

O: 619-354-5030

This email and its attachment(s) are for the sole use of the intended

recipient(s) and may contain confidential and privileged information.

Any unauthorized review, use, disclosure or distribution is

prohibited. If you are not the intended recipient, please contact the

sender by reply mail and destroy all copies of the original message.

To reply to our email administrator directly, send an email to:

info@dpmclaw.com

Links:
------
[1] http://www.dpmclaw.com/

**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA**

**ALIREZA "ALI" SALEMI,**

Plaintiff,

**U.S. DEPARTMENT OF HOMELAND SECURITY; FEDERAL BUREAU OF INVESTIGATION; CITY OF CARLSBAD; CARLSBAD POLICE DEPARTMENT; CITY OF SAN DIEGO; SAN DIEGO LAW ENFORCEMENT COORDINATION CENTER (SD-LECC); ENCINITAS UNION SCHOOL DISTRICT; STAYBRIDGE SUITES CARLSBAD / IHG HOTELS & RESORTS; SMILES FOR HEALTH DDS; CALIFORNIA DENTAL BOARD; JOHN DOES 1–50,**

Defendants.

**Case No. 3:25-cv-03387-JLS-GC**

**DECLARATION OF ALIREZA SALEMI IN SUPPORT OF FIRST AMENDED COMPLAINT AND IN AUTHENTICATION OF EXHIBITS A THROUGH Z.11**

I, Alireza Salemi, declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 as follows:

1. I am the Plaintiff in this action. I am over eighteen years of age and competent to testify. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently thereto.

2. I submit this Declaration in support of my First Amended Complaint and to authenticate the exhibits attached hereto and lodged with the Court.

HOTEL SABOTAGE – STAYBRIDGE SUITES CARLSBAD

3. Exhibit A is a true and accurate copy of an audio recording I personally made on December 25, 2025, at approximately 9:49 AM, in Room 306 of Staybridge Suites Carlsbad. The recording captures maintenance personnel dismissing exposed insulation in my AC vent as "normal" and "allergies" before sealing the vent. I made this recording using my personal mobile device. The audio file has not been edited or altered.

4. Exhibit B consists of true and accurate copies of photographs I personally took on December 25, 2025, showing exposed insulation and dangling duct tape inside the AC vent in Room 306, Staybridge Suites Carlsbad. These photographs were taken with my personal mobile device immediately after maintenance opened the vent and before it was sealed.

5. Exhibit C is a true and accurate copy of a video recording I personally made on December 25, 2025, showing maintenance personnel restoring power to my kitchen electrical outlets in under 30 seconds without using any tools or performing any inspection. This recording was made with my personal mobile device. The video file has not been edited or altered.

DENTAL LASER ASSAULT – SMILES FOR HEALTH DDS

6. Exhibit D is a true and accurate copy of my formal complaint submitted to the California Dental Board on November 4, 2024, regarding the September 2, 2025 laser assault at Smiles for Health DDS. This complaint contains critical baseline and damage assessments from independent dentists: (1) Dr. Omer Aniso's September 9, 2024 examination stating "I see signs of gum laceration" following the assault, and (2) Dr. Ann Kania's October 15, 2024 assessment stating that "The lower left teeth and upper right now require GUM GRAFTING due to recession and tissue loss." I submitted this complaint to the Dental Board and retained a copy for my records.

7. Exhibit E is a true and accurate copy of dental progress notes I received from Smiles for Health DDS in response to my HIPAA-authorized records request. These notes purport to document my September 2, 2025 dental appointment but contain false statements, including that I presented with discomfort and that a dentist examined me. Neither is true.

8. Exhibit F is a true and accurate copy of the billing record for the September 2, 2025 laser procedure performed on me at Smiles for Health DDS. This document shows an out-of-pocket charge of $90 with no submission to insurance.

9. Exhibit G consists of true and accurate copies of photographs documenting the progressive dental damage I sustained following the September 2, 2025 laser assault. These photographs were taken with my personal mobile device between September 2025 and January 2026 and show razor-straight linear trenches, charred enamel, gum recession, and exposed charred dentin.

10. Exhibit H is a true and accurate copy of an undated photograph of a Biolase Epic X laser device set to 0.8 watts. This photograph was provided to me by Smiles for Health DDS in response to my records request but contains no timestamp, no patient-specific information, and no device log.

11. Exhibit I is a true and accurate copy of a periodontal chart dated January 15, 2026, that I received from Smiles for Health DDS. This was the only chart produced in response to my HIPAA request; no September 2, 2025 laser logs were provided.

CARLSBAD POLICE DEPARTMENT – REFUSAL TO INVESTIGATE

12. Exhibit J is a true and accurate copy of Carlsbad Police Department CAD Log for Incident #250094323, documenting Officer Eyestone's refusal to investigate the September 2, 2025 dental laser assault and his classification of the incident as a "civil matter." I obtained this document through a California Public Records Act request to the City of Carlsbad.

13. Exhibit K is a true and accurate copy of the Carlsbad Police Department Press Log for Incident #250094323. I obtained this document through CPRA Request R005568-121625 to the City of Carlsbad.

WORKPLACE COORDINATION – VIASAT HR SURVEILLANCE

14. Exhibit L consists of true and accurate copies of email correspondence between myself and ViaSat, Inc. Human Resources representative Sarah Poe, spanning November 26,

2025 through December 15, 2025. Most critically, Ms. Poe's December 15, 2025 email states: "I saw you did manage to get your litigation moving and named Viasat in it in regards to badge swipes." This statement proves that ViaSat, a federal contractor subject to OFCCP oversight, was actively monitoring my federal RICO litigation (Case No. 3:25-cv-02934-AGS-MSB) in real-time and coordinating workplace-based harassment in response to my court filings. These are emails from my personal email account and ViaSat's HR department.

CALIFORNIA DENTAL BOARD – CASE CLOSURE

15. Exhibit M is a true and accurate copy of the December 16, 2025 Notice of Closure from the California Dental Board, Case No. 2026-1311, signed by Consumer Services Analyst Genie Albertsen. This letter stated only that "no violation of the Dental Practice Act was found" with no explanation or independent investigation. I received this letter by U.S. Mail.

CALVICB – DENIAL CHAIN

16. Exhibit N consists of true and accurate copies of my CalVCB Application No. A25-10183473 and the denial letter I received. The denial was based directly on the Carlsbad Police Department's classification of Incident #250094323 as a "civil matter." I received these documents by U.S. Mail and electronic communication from CalVCB.

FBI – TIP SUPPRESSION AND FOIA RESPONSE

17. Exhibit O is a true and accurate copy of the November 14, 2025 FOIA response I received from the FBI stating "no responsive records" despite my documented tip submissions. I received this document electronically through the FBI's eFOIA portal.

18. Exhibit P consists of true and accurate copies of confirmation records showing my tip submissions to tips.fbi.gov on September 14, 2025, and November 7, 2025, reporting a death threat against my minor son. These are screenshots from my personal computer showing the submission confirmations.

VISUAL IMPAIRMENT – RETINA SPECIALIST RECORDS

19. Exhibit Q is a true and accurate copy of the November 25, 2020 retina specialist report from Dr. Ehsan Mozayan-Isfahani of Retina San Diego, documenting vitreous syneresis OU, lattice degeneration OS, night blindness, floaters, and halos with no medical explanation. I received this document as part of my medical records.

MEDICAL EVIDENCE – DISABILITY

20. Exhibit R consists of true and accurate copies of documentation regarding my California EDD State Disability Insurance claim filed December 3, 2020, for vision impairment that prevented me from working. These documents include the Notice from EDD, State Disability Form DE2501, and FMLA packet.

ASSAULTS ON MINOR SON – MEDICAL RECORDS

21. Exhibit U is a true and accurate copy of page 2031 from Rady Children's Hospital San Diego Emergency Room records, dated January 18, 2020, documenting an unexplained "Bruise of pinna, right" (ear bruising) with chief complaint of "Ear Pain" but no documented cause or explanation for the injury despite my minor son being in a supervised environment. This visit preceded by four days the County-funded non-consensual forensic medical examination described in Exhibit T. I obtained this document through a HIPAA-authorized medical records request to Rady Children's Hospital. My minor son's identifying information has been redacted to protect his privacy.

22. Exhibit S is a true and accurate copy of page 1622 from Rady Children's Hospital San Diego Emergency Room records, dated December 7, 2017, documenting the sharp-force genital laceration sustained by my minor son. I obtained this document through a HIPAA-authorized medical records request to Rady Children's Hospital. My minor son's identifying information has been redacted to protect his privacy.

23. Exhibit T is a true and accurate copy of page 12 from Rady Children's Hospital San Diego records, dated January 22, 2020, showing a County of San Diego payment authorization of $719.00 (CalEMA 2-900) for a forensic medical examination of my minor son. I was never notified of this examination. I obtained this document through a medical records request to Rady Children's Hospital. My minor son's identifying information has been redacted to protect his privacy.

24. Exhibit U.1 is a true and accurate copy of page 14 from Rady Children's Hospital San Diego records, dated January 22, 2020, showing the CalEMA 2-900 Suspected Child Abuse Report with Social Worker Jessica Arrellano's name. I was never informed of this report at the time it was filed. I obtained this document through a medical records request to Rady Children's Hospital. My minor son's identifying information has been redacted to protect his privacy.

25. Exhibit U.2 is a true and accurate copy of an email exchange dated January 20, 2026, between myself and Cory Schwab, RHIT, Lead Release of Information Specialist at Rady Children's Hospital. In response to my January 16, 2026 follow-up request for incident reports, mandated reporter forms, abuse screenings, and social services referrals related to my minor son (MRN: H2248641, Release ID 114592880), Ms. Schwab responded "No records found." This response is directly contradicted by the hospital's own medical records production, which contains the CalEMA 2-900 county-funded forensic examination record (Exhibit T) and the Suspected Child Abuse Report (Exhibit U.1), proving that abuse-related records do exist but are being denied to the requesting parent. I received this email through Rady Children's Hospital's secure email system (securemail.rchsd.org). My minor son's identifying information has been redacted to protect his privacy.

26. Exhibit V is a true and accurate copy of page 290 from Rady Children's Hospital San Diego Neurology Progress Notes, dated August 6, 2025, containing a false entry by Dr. Michaela Tsuha stating "Mother is concerned that father has schizophrenia (paranoid)." This entry was inserted immediately before my federal filings. I obtained this document through a medical records request to Rady Children's Hospital. My minor son's identifying information has been redacted to protect his privacy.

UASI GOAL 5 – SURVEILLANCE INFRASTRUCTURE

27. Exhibit W is a true and accurate copy of the City of Carlsbad CERT Unit 8 "Terrorism Awareness" Training Manual. I obtained this document through CPRA Request R005766-022326 to the City of Carlsbad on March 3, 2026.

28. Exhibit X is a true and accurate copy of City of Carlsbad Resolution No. 2025-182, dated July 29, 2025, authorizing the City Manager to execute FY 2024 Homeland Security Grant Program assurances and PATRIOT Act compliance. I obtained this document through a CPRA request to the City of Carlsbad.

29. Exhibit Y is a true and accurate copy of the FY23 UASI Agreement between the City of San Diego (Fiscal Agent) and the City of Carlsbad, establishing the legal framework for regional Goal 5 information sharing. I obtained this document through a CPRA request to the City of Carlsbad.

30. Exhibit Z is a true and accurate copy of excerpts from the FY25 UASI Portfolio documenting the Carlsbad BearCat Armored Vehicle ($448,389.21) funded under Goal 5 Critical Infrastructure Protection. I obtained this document through CPRA Request 26-186 to the County of San Diego Office of Emergency Services, released January 29, 2026.

31. Exhibit Z.1 is a true and accurate copy of excerpts from the FY24 UASI Project Vetting Documents showing the U-MERV Aerial Surveillance system ($619,528) and Dejero DTS Live Video system ($159,085) for real-time drone video streaming to regional command posts. I obtained this document through CPRA Request 26-186 to the County of San Diego Office of Emergency Services.

32. Exhibit Z.2 is a true and accurate copy of UAWG Meeting Minutes dated December 7, 2023, showing City of Carlsbad representative Kimberly Young as a voting member of the Urban Area Working Group. I obtained this document through CPRA Request 26-186 to the County of San Diego Office of Emergency Services.

33. Exhibit Z.3 is a true and accurate copy of the email chain with SD-LECC Deputy Director Kristi Laughlin, showing an initial January 13, 2026 denial followed by a January 15, 2026 partial production, admitting that SD-LECC provides "Power of Hello" guides and SAR reporting templates to local partners. I received this email in response to my CPRA request to SD-LECC.

34. Exhibit Z.4 consists of true and accurate copies of City of Carlsbad CPRA responses for Request R005830-031626. These responses show an internal contradiction: the City first invoked a statutory 14-day extension under Gov. Code Section 7922.535(b), citing the need to search "voluminous amounts of records," then reversed course and declared "no responsive documents" for identical categories. I received these responses by email from the City of Carlsbad.

SAN DIEGO COUNTY DISTRICT ATTORNEY – NON-RESPONSE

35. Exhibit Z.5 consists of true and accurate copies of emails I sent to the San Diego County District Attorney's Office on June 8, 2020, October 4, 2025, and November 20, 2025,

reporting serious crimes and child endangerment. Despite these three separate notifications over five years, I received no investigation, victim services, or referral to law enforcement. These are emails from my personal email account.

WORKPLACE COORDINATION AND FEDERAL CONTRACTOR HARASSMENT

36. Exhibit Z.7 is a true and accurate copy of documentation regarding the formal complaint opened by U.S. Department of Labor OFCCP Investigator Owens on December 1, 2025, regarding workplace harassment at ViaSat, Inc. and Avaya, both federal contractors. I received this documentation from the OFCCP.

POISONING – MEDICAL AND LABORATORY EVIDENCE

37. Exhibit Z.8 consists of true and accurate copies of laboratory results from September-October 2020 showing elevated arsenic levels in my blood and urine with no identified dietary or environmental source. These reports are from LabCorp. I obtained these records through my medical records.

RELATED CASE RECORD – CASE NO. 3:25-CV-02934-AGS-MSB

38. Exhibit Z.10 is a true and accurate copy of the Court's Order Denying Renewed Motion for Preservation Order (ECF No. 54), dated April 3, 2026, in Case No. 3:25-cv-02934-AGS-MSB. I obtained this document from the Court's PACER system.

39. Exhibit Z.11 is a true and accurate copy of the San Diego County District Attorney's Notice of Joinder (ECF No. 38) opposing the preservation order in Case No. 3:25-cv-02934-AGS-MSB. This document demonstrates institutional coordination among defendants to suppress evidence. I obtained this document from the Court's PACER system.

VERIFICATION

ENTERPRISE COORDINATION – CPRA ADMISSIONS (MARCH-APRIL 2026)

40. Exhibit Z.12 is a true and accurate copy of the City of Carlsbad's CPRA response to Request R005875-033026, dated April 8, 2026, regarding night vision device deployment logs and incident reports at 2735 Palomar Airport Road. The City responded that (a) no responsive records exist for night vision deployment within one mile of my address, but (b) incident reports and field interview cards mentioning "Salemi," "2735 Palomar Airport Road," "laundry room," "breakfast area," or my name DO EXIST but are exempt from disclosure under California Evidence Code Section 1040 (official information privilege), Government Code Sections 7923.600 and 7927.705 (peace officer personnel records). This admission proves that City of Carlsbad and/or Carlsbad Police Department maintain active surveillance records mentioning me by name and specific hotel locations, but classify such records as "official information" whose disclosure would harm the public interest. I obtained this document via email from the City of Carlsbad Public Records Request Center.

41. Exhibit Z.13 is a true and accurate copy of the San Diego Law Enforcement Coordination Center (SD-LECC) response dated April 8, 2026, from Deputy Director Kristi Laughlin

regarding UASI Goal 5 policies and funding (Referral: San Diego NextRequest 26-2616). This response contains critical admissions: (a) SD-LECC maintains a Guardian/eSAR surveillance database and Kaseware portal containing searches and queries for "Salemi" and "2735 Palomar Airport Road," but classifies all such records as "investigative/security records" exempt under Government Code Section 7923.600; (b) SD-LECC provides policies, directives, guidance, and standard operating procedures to local agencies (including Carlsbad Police Department) and private entities (hotels, businesses) regarding "community-based monitoring," "persistent monitoring," "soft target protection," and "visual presence" under UASI Goal 5; (c) SD-LECC provides instructions, alerts, and electronic templates to Carlsbad Police Department and private entities for reporting suspicious activity in the Carlsbad/Encinitas area; (d) Suspicious Activity Reports (SARs), field interview entries, and tips/leads submitted by Carlsbad Police Department, Encinitas Union School District staff, CERT volunteers, and other local partners using "See Something, Say Something" templates and "Power of Hello" guides are maintained by SD-LECC but are exempt from disclosure; and (e) SD-LECC states it is "not a public agency" but rather a "work location staffed with personnel from multiple local, state, and federal agencies working towards common operating goals, akin to a law enforcement task force." This document proves the existence and operation of the SD-LECC hub coordinating "Community Partner" surveillance activities against Plaintiff. I obtained this document via email from SD-LECC Privacy Officer.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief, and that all exhibits referenced above are true and accurate copies of the original documents or recordings.

Executed on April13, 2026, at Carlsbad, California.

SCHOOL DISTRICT OBSTRUCTION – ENCINITAS UNION SCHOOL DISTRICT

Exhibit Z.14 is a true and accurate copy of my California Public Records Act request submitted to Encinitas Union School District on February 3, 2026, requesting: (1) any document mentioning myself or my minor son; (2) playground maintenance logs for Flora Vista Elementary; (3) records of payments for "safety presence," "monitoring," or "crowd control" activities; and (4) correspondence regarding UASI, DHS, HSI, fusion centers, or law-enforcement liaisons on school district property. I sent this request via email to records@eusd.net.

Exhibit Z.15 is a true and accurate copy of the email correspondence with Christina Mihelich, Esq., of DPM&C Law, the school district's attorney, dated March 26, 2026 through April 10, 2026. This correspondence includes: (a) the district attorney's acknowledgment on March 26, 2026, that the request was "still processing" with a promised update by April 10, 2026; and (b) my litigation hold notice dated April 10, 2026, documenting the 66-day delay and statutory violation under California Government Code § 7922.535. As of April 10, 2026, items 1, 3, and 4 remain unproduced, demonstrating obstruction consistent with the pattern described in FAC ¶57A.

Alireza "Ali" Salemi Pro Se Plaintiff 2735 Palomar Airport Road Carlsbad, California 92009
Telephone: (720) 208-8755 Email: alireza.salemi@udo.edu