Alireza Salemi
2735 Palomar Airport Road, Carlsbad, CA 92009
(720) 208-8755 | alireza.salemi@udo.edu
Plaintiff, Pro Se

FILED
JUL 16 2026
CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY OOE DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ALIREZA SALEMI,

Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,

Defendants.

Case No. 3:25-cv-03387-LL-GC

**PLAINTIFF'S OPPOSITION TO DEFENDANT CITY OF SAN DIEGO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT [ECF 47]**

Judge: Hon. Linda Lopez
Mag.: Hon. Guillermo Cabrera

## I. INTRODUCTION

The City of San Diego moves to dismiss all claims against it with prejudice. Its motion misreads both the First Amended Complaint (FAC) and the law in several critical respects.

First, the City insists it appears in the FAC only as a passive grant administrator. In fact, the FAC alleges that the City formally adopted — through a binding intergovernmental grant agreement — a surveillance program that funded the specific equipment later

deployed to surveil, monitor, and harm Plaintiff and his minor son. A formally adopted municipal policy is the heartland of Monell liability.

Second, the City's Government Claims Act argument sweeps too broadly. The California Claims Act applies exclusively to state tort claims; it has no bearing on Plaintiff's federal claims under RICO (18 U.S.C. §§ 1962-1964), 42 U.S.C. §§ 1983 and 1985, or the Rehabilitation Act.

Third, the City's statute-of-limitations argument ignores the separate-accrual doctrine: regardless of what Plaintiff knew in 2020, independent predicate acts occurring in 2024 and 2025 — the dental battery (September 2, 2025), the hotel sabotage incidents (December 2025), and the fracture of Plaintiff's minor son's right index finger at school (May 24, 2024) — are timely under every applicable limitations period.

Fourth, the City's claim-splitting argument fails because a RICO claim and a Section 1983 claim are different federal causes of action with different elements and different remedies; the same operative facts may support both without claim splitting.

Finally, Plaintiff has a pending motion for leave to file a Second Amended Complaint (ECF 25, filed May 4, 2026). That motion has been pending for over three months. The proposed amended complaint addresses every arguable deficiency the City raises. Dismissal with prejudice is not warranted where a pending amendment motion already exists and amendment is plainly not futile.

Plaintiff respectfully requests that the Court deny the motion to dismiss in its entirety, or in the alternative, dismiss without prejudice with leave to file the amended complaint described in ECF 25.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion is granted only where a complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A pro se complaint is held to a "less stringent standard[] than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). The Court must liberally construe a pro se pleading. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Leave to amend must be freely granted when justice requires. Fed. R. Civ. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182 (1962). A pro se plaintiff must be given leave to amend unless amendment would be clearly and absolutely futile. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc).

## III. ARGUMENT

### A. THE FAC PLEADS A MONELL CLAIM: THE CITY'S BINDING UASI AGREEMENT

WAS AN OFFICIALLY ADOPTED POLICY THAT FUNDED THE SURVEILLANCE HARM.

The City argues the FAC names it only as a passive grant administrator and identifies no City policy or custom. That framing does not survive a careful reading of the FAC.

1. A binding intergovernmental grant agreement is an official policy.

A municipality is liable under Section 1983 where a challenged action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted" by the

municipality. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). An "officially adopted" decision includes formal agreements entered into by the municipality's authorized officers. Id.; City of Canton v. Harris, 489 U.S. 378, 385 (1989).

The FAC alleges that the City of San Diego — acting through its Office of Emergency Services — executed the FY23 UASI Agreement with the City of Carlsbad. FAC ¶ 11. The agreement was signed by SD OES Program Manager Megan Beall on behalf of the City of San Diego and by City Manager Scott Chadwick on behalf of Carlsbad. CPRA Production R005682-012826 (produced Feb. 17, 2026) (attached hereto as Exhibit A). That binding intergovernmental agreement designated City of San Diego as the Administrative Agent for the San Diego Urban Area Security Initiative (UASI) and established the Hub-and-Spoke funding and coordination structure through which federal surveillance grants flow from the City of San Diego to sub-recipients including the City of Carlsbad and SD-LECC. FAC ¶¶ 8(d), 11, 18A, 20.

This agreement is the textbook Monell predicate: a decision "officially adopted" by the municipality's authorized representative. Monell, 436 U.S. at 690. Where a municipal officer executes an agreement pursuant to authority delegated by the City's governing body, the agreement reflects official municipal policy regardless of the signatory's title. Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986). Here, SD OES Program Manager Megan Beall executed the FY23 UASI Agreement on behalf of the City of San Diego pursuant to the City's established designation as UASI Administrative Agent — a designation reflecting a City-level policy decision, as confirmed by the City Council's prior authorization of the City's UASI administrative role — satisfying Pembaur's final-policymaking- authority requirement.

Moreover, the City's voluntary acceptance of the UASI Grant Administrator designation was itself the governing policy decision. A municipality cannot accept federal

homeland-security grant funds, designate itself the administrative hub for an entire urban area surveillance program, and then disclaim the policymaking nature of that acceptance because a program manager signed the implementing agreement. The policymaking act was the City's decision to participate — not Beall's signature. Whether Beall independently holds final policymaking authority is a factual question of state law and local practice not resolvable at 12(b)(6). AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 636 (9th Cir. 2012).

2. The City affirmatively approved specific surveillance equipment.

The FAC does not merely allege that the City received and passed through funds. It alleges that the City of San Diego, as UASI Administrative Agent, "approves project vetting, equipment procurement, and surveillance infrastructure deployment under UASI Goal 5" — and specifically authorized the reimbursement of the $448,389.21 BearCat armored vehicle (Exhibit Z), the $619,528 U-MERV aerial surveillance platform with $159,085 Dejero live video streaming (Exhibit Z.1), and $30,443 in night vision and thermal imaging devices deployed in the Palomar Airport Road area where Plaintiff resides. FAC ¶¶ 11, 18A.

This approval role is not a FAC allegation alone — it is written into the FY23 UASI Agreement itself. The agreement executed by SD OES Program Manager Megan Beall expressly provides: "All non-RFP/ competitive procurements will require a pre-procurement review by SD OES to ensure compliance." Exhibit A, p. 22. The City contractually reserved the right to review and approve every equipment purchase before reimbursement. Exercising that pre-approval authority over specific surveillance hardware is an affirmative act of municipal policy — not passive ministerial administration. The City's characterization of itself as a mere conduit does not square with the pre-approval authority it expressly retained in the agreement.

The City cannot formally adopt a grant program, designate itself as UASI Grant Administrator, contractually require pre-approval of all procurements, and then disavow responsibility for how that program's funded equipment was deployed. The directed nature of SD-LECC operations is confirmed by a County Board letter in the public record of this Court. See Section IV, infra (judicial notice request).

3. The City's act was the moving force.

The FAC connects the City's formally executed grant agreement and specific equipment approvals to a specific constitutional injury — warrantless surveillance of a private individual. FAC ¶¶ 18A, 20, 59-64. That is the "moving force" connection Monell requires. City of Canton v. Harris, 489 U.S. 378, 389 (1989). Brown requires the policy itself to be the moving force behind the constitutional injury. Board of Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997). The City's UASI grant administration — embodied in the executed FY23 Agreement — was the governmental predicate that authorized and funded the surveillance apparatus deployed against Plaintiff. FAC ¶¶ 18A, 59-70.

The moving force nexus is not abstract. The equipment City SD approved and reimbursed included night vision and thermal imaging devices deployed specifically in the Palomar Airport Road corridor where Plaintiff resides, and the U-MERV aerial surveillance platform with live video streaming capability. FAC ¶ 18A. These are not general law enforcement resources distributed across the urban area — they are the specific instruments alleged to have been deployed in coordinated surveillance of Plaintiff at his specific residential location. The geographic and instrumental specificity satisfies the moving force causation requirement at the pleading stage. At minimum, whether that causal chain is sufficient is a factual question not appropriate for resolution on a 12(b)(6) motion.

4. Section 1985 — The UASI Agreement Satisfies All Griffin Elements.

The § 1985(3) claim against the City survives for the same reasons as § 1983. Griffin v. Breckenridge, 403 U.S. 88, 102 (1971), requires class-based, invidiously discriminatory animus, an agreement, and an act in furtherance. All three are alleged. The FY23 UASI Agreement is the City's "agreement." The City's contractual pre-approval of all surveillance equipment procurements is the "act in furtherance." And the animus is pleaded: FAC ¶ 73(e) alleges the conspiracy was "motivated by invidious discrimination against Plaintiff as a perceived 'soft target' / 'terrorist threat' under UASI Goal 5, depriving him of equal protection under law." Plaintiff was born in Iran. Labeling an Iranian-born immigrant a "terrorist threat" to justify UASI-funded surveillance raises a plausible inference of national-origin animus — national origin is a recognized § 1985(3) protected class. The conspiracy also targeted Plaintiff's autistic son, whose disability is a second recognized protected class. FAC ¶¶ 72A–72B, 73(e). Unlike RICO, § 1985 carries no Lancaster bar on governmental entity defendants; the City is a proper § 1985 defendant.

5. Fourth Amendment — City SD Need Not Have Conducted the Search.

The City argues it "conducted no search or seizure" because Carlsbad PD procured and deployed the surveillance equipment. That argument misunderstands Monell. Under the moving force doctrine, the municipality need not personally conduct the constitutional violation — it need only have adopted the policy that caused it. Brown, 520 U.S. at 404. City SD's UASI pre-approval authority over all procurements, exercised through the FY23 Agreement, was the necessary governmental predicate without which the surveillance equipment could not have been procured or deployed. That is the constitutionally significant act. The Fourth Amendment claim survives. The same logic

applies to the First Amendment retaliation theory (FAC ¶¶ 73A–73D): City SD's UASI approval of the surveillance equipment deployed against Plaintiff — who had filed federal complaints, CPRA requests, and FBI tips — constitutes an adverse governmental act for purposes of that claim.

6. Procedural Due Process — Co-Conspirator Liability.

The City argues that FAC ¶¶ 79A–79C target the Dental Board, not the City. But under § 1985 co-conspirator liability, a participant in a conspiracy is liable for all acts committed in furtherance of the conspiracy by any co-conspirator — including acts by a different government entity. The FAC alleges a conspiracy among all Defendants — including the Dental Board — to deprive Plaintiff of constitutional rights through coordinated action. FAC ¶ 73. City SD's participation in that conspiracy makes it co-liable under § 1985 for all acts in furtherance, including the Dental Board's closure of Plaintiff's licensing complaint without a hearing. If the conspiracy is adequately pleaded — and for the reasons in Section A.4 above, it is — City SD bears § 1985 liability for the procedural due process deprivation as a co-conspirator regardless of which entity physically closed the file.

7. Rehabilitation Act § 504 — City SD's UASI Coordination Diverted Disability-Support Resources.

The § 504 claim is not limited to EUSD. City SD, as UASI Grant Administrator, funded EUSD's participation in the SD-LECC surveillance network. FAC ¶ 72C alleges that EUSD staff received UASI-funded compensation for "safety presence" and "monitoring" activities disguised as special-needs support — while simultaneously failing to provide mandated 1:1 supervision for Plaintiff's autistic son, resulting in two finger fractures. 29 U.S.C. § 794(a) prohibits exclusion from the benefits of a federally funded program by

reason of disability. City SD's UASI coordination policy diverted disability-support resources into surveillance activities; that diversion was City SD's act and was the moving force behind the § 504 deprivation of Plaintiff's minor son. The claim is not limited to whichever entity physically withheld the supervision.

**B. THE GOVERNMENT CLAIMS ACT DOES NOT BAR PLAINTIFF'S FEDERAL CLAIMS.**

The Government Claims Act, Cal. Gov't Code §§ 911.2, 945.4, applies only to claims arising under California law — not to federal civil rights claims. Felder v. Casey, 487 U.S. 131, 138-39 (1988) (state notice-of-claim statutes cannot condition, restrict, or toll federal § 1983 claims; Supremacy Clause bars state procedural prerequisites to federal civil rights actions). Plaintiff's claims under RICO, 42 U.S.C. §§ 1983 and 1985, and Section 504 are federal; the Act does not apply and the City's argument on those claims should be rejected outright.

The Claims Act argument reaches only the Eighth Claim (state-law torts: battery, fraud, Bane Act, IIED, and related state theories). Plaintiff acknowledges that the Eighth Claim requires compliance with the Claims Act and respectfully requests dismissal of those sub-claims without prejudice, so that they may be repleaded once the claim presentation and rejection (or deemed rejection) process is complete. Dismissal with prejudice of the state tort claims is unwarranted where Plaintiff has initiated the claim process and the claims are not substantively deficient.

**C. TIMELY PREDICATE ACTS SURVIVE THE STATUTE OF LIMITATIONS UNDER THE**

SEPARATE-ACCRUAL DOCTRINE.

The City's limitations argument depends on a single premise: that FAC ¶ 8's reference to Plaintiff's 2020 suspicion of government involvement accrued every claim in 2020. That is not the law.

Accrual requires that a plaintiff know both the injury and its cause. Lukovsky v. City & County of San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008). A vague suspicion does not suffice — the clock starts when plaintiff has sufficient facts to identify the responsible actor.

Plaintiff knew he was being harassed. He did not accept — and a reasonable person would not accept — one private investigator's unverified opinion as confirmed fact establishing government responsibility. Plaintiff, an immigrant and academic professional, could not conceive that his own government would participate in criminal conduct targeting a private citizen and his minor child. That is not willful ignorance — under Lukovsky, accrual requires facts sufficient to identify the responsible actor, not merely to suspect a possibility. A single unverified conclusion from a private investigator, without corroborating official records, institutional confirmation, or any identified defendant, does not satisfy that threshold. And defendants actively worked to prevent Plaintiff from gathering those facts: reclassifying criminal reports, refusing records, and returning a death threat against a child as "no responsive records" — all designed to ensure Plaintiff could not confirm what he feared was true. FAC ¶ 8 (PI "could not identify specific defendants, funding sources, or the institutional framework"). Plaintiff reported to every available official channel: Carlsbad PD reclassified his report without investigation; the District Attorney took no action; the Dental Board refused records; the FBI returned a death-threat report about his minor son as "no records" — twice.

Plaintiff's complaints to the District Attorney and FBI underscore, rather than undermine,

this point. A person who suspects government is targeting him does not file formal complaints with government agencies asking for their protection. Plaintiff reported to official channels because he did not know who the actor was — he was seeking help, not avoiding a limitations period. Accrual does not begin when a plaintiff turns to government for help; it begins when a plaintiff has sufficient facts to sue government. Those facts — the existence of UASI, SD-LECC, and City SD's specific role as Grant Administrator funding the surveillance apparatus — did not exist in Plaintiff's knowledge until the CPRA production in February 2026. FAC ¶ 8.

That confirmation came November 14, 2025, when the FBI responded to Plaintiff's tip submissions (September 14 and November 7, 2025) reporting a death threat against his minor son with a "no responsive records" letter. FAC ¶ 22. Plaintiff filed this action within weeks: the RICO complaint on December 1, 2025. Every government-directed claim accrued no earlier than November 14, 2025 and is timely.

1. Each predicate act accrues separately.

A federal claim accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the action." Wallace v. Kato, 549 U.S. 384, 388 (2007). Accrual is injury-specific: each distinct injury starts its own clock. For §§ 1983 and 1985, each independent constitutional violation accrues its own two-year period from the date of that violation — not from the date plaintiff first suspected any related misconduct. Id.

The RICO separate-accrual rule independently confirms this for RICO claims: a plaintiff "may recover for each new and independent injury caused by a new predicate act within its own four-year window," provided the act is new and independent — not a mere reaffirmation of prior conduct — even if the underlying pattern of racketeering predates the limitations period. Grimmett v. Brown, 75 F.3d 506, 510-11 (9th Cir. 1996).

2. The most recent predicate acts are timely under every applicable period.

The City's "2020 accrual" theory fails against the following predicate acts, all of which are well within both the two-year (§§ 1983, 1985) and four-year (RICO) windows:

a. September 2, 2025 — dental battery: Defendant Allison Schulz operated a Class IV dental laser on Plaintiff, exceeding the scope of the $90 bacterial-decontamination consent he gave. The injury occurred September 2, 2025. FAC ¶¶ 34-39.

b. 2025 hotel incidents — Staybridge Suites: The sabotage of Plaintiff's hotel room HVAC system and related events at the Staybridge Suites Carlsbad occurred during 2025. FAC ¶¶ 45-49. These are new predicate acts independent of any 2020 conduct.

**c. May 24, 2024 — son's right index finger fracture: The injury** occurred May 24, 2024 at his school. This falls within the two- year §1983 window from a December 2025 filing date.

Even if every pre-2022 claim were time-barred — a proposition Plaintiff contests — the post-2022 predicate acts above provide an independent, timely basis for recovery under both RICO (four-year separate accrual) and §§ 1983/1985 (two-year per injury).

3. The City's reading of Rotella does not foreclose Plaintiff's theory.

The City invokes Rotella v. Wood, 528 U.S. 549 (2000), to argue that RICO accrual turns on injury discovery, not pattern discovery. Plaintiff agrees. But Rotella does not eliminate the separate-accrual doctrine for new predicate acts; it confirms that each injury has its own accrual date. Id. at 554-58. The December 2025 and September 2025

predicate acts are new injuries that accrued within four years of this filing — they are timely under Rotella's own framework.

4. Fraudulent concealment independently tolls accrual for early predicate acts.

Even as to pre-2022 predicate acts, fraudulent concealment tolling applies where defendants' affirmative acts of concealment prevented Plaintiff from discovering the claims. Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002). Fraudulent concealment requires an affirmative act by the defendant — not mere silence. Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1060 (9th Cir. 2012).

The FAC alleges such affirmative acts: Carlsbad Police Department affirmatively reclassified Plaintiff's criminal report from a felony to a lower category and closed it without investigation — an affirmative institutional act that destroyed the evidentiary trail Plaintiff needed to identify the actors (FAC ¶ 8). The FBI affirmatively responded to Plaintiff's tip submissions reporting a death threat against his minor son by characterizing the submissions as a records request and issuing a "no responsive records" FOIA letter — an affirmative misdirection that confirmed to Plaintiff he had no records claim, not that his safety report had been evaluated and rejected (FAC ¶ 22; Exhibit O). The statute of limitations does not run in favor of a defendant whose own affirmative conduct directed the plaintiff away from the injury.

## D. THE FAC IS NOT AN IMPERMISSIBLE SHOTGUN PLEADING.

The Ninth Circuit has distinguished between "incomprehensible" pleadings that constitute improper shotgun pleadings and complex pleadings that allege multiple claims against multiple defendants in detail. Hearns v. San Bernardino Police Dep't, 530 F.3d

1124, 1132 (9th Cir. 2008). The Hearns court upheld a multi-defendant, multi-claim complaint as adequate where it "adequately describes the events and activities giving rise to the claims." Id.

The FAC here is lengthy because the facts are complex. It spans nine years, involves twelve defendants, and alleges a coordinated multi-actor scheme. That complexity is not a defect — it is the subject matter. The FAC identifies specific acts by specific actors: dental laser by Schulz (FAC ¶ 34), hotel HVAC by Staybridge employees (FAC ¶¶ 45-49), forensic exam by county social worker (FAC ¶¶ 40, 69), surveillance equipment funded by City (FAC ¶¶ 59-64).

To the extent the Court finds the FAC's claim-to-defendant mapping insufficient, the appropriate remedy is leave to amend, not dismissal with prejudice. The proposed amended complaint described in ECF 25 further particularizes the defendant-specific allegations already present in the FAC.

**E. RICO AND SECTION 1983 ARE DIFFERENT CAUSES OF ACTION; NO CLAIM**

SPLITTING OCCURS.

The claim-splitting doctrine bars a plaintiff from pursuing "two separate actions involving the same subject matter at the same time in the same court and against the same defendant." Adams v. Cal. Dep't of Health Servs., 487 F.3d 684, 688 (9th Cir. 2007). The doctrine's "same subject matter" test is the transactional test for claim preclusion: it bars re-litigation of claims arising from the same transaction that could have been brought in the first action.

That test is not satisfied here. RICO under 18 U.S.C. §§ 1962(c), (d), and 1964(c) and

Section 1983 under 42 U.S.C. § 1983 are different causes of action:

- Different elements: RICO requires enterprise + pattern of racketeering (18 U.S.C. § 1961(1)); §1983 requires deprivation of a federal right under color of state law.

- Different remedies: RICO provides treble damages and attorney fees; §1983 provides compensatory damages and injunctive relief.

- Different theories: RICO reaches private actors; §1983 is limited to state actors.

The City has not shown — because it cannot — that the RICO cause of action was or could have been brought in Case No. 3:25-cv-02934-AGS-MSB. The AGS-MSB case is a civil rights case under §§ 1983 and 1985. RICO was not and could not be consolidated into it without leave, and the two cases were filed weeks apart.

The City's own Request for Judicial Notice further undermines this argument. Exhibit 1 to the RJN — the PACER docket for AGS-MSB as of July 10, 2026 — lists "City of San Diego of Emergency Services" as a defendant. But the docket also shows that no attorney has appeared on behalf of that entity, no motion to dismiss has been filed by it, and no proof of service has been filed showing it was served with the Second Amended Complaint. City Attorney's counsel filed this RJN (ECF 47-2) — meaning counsel reviewed the AGS-MSB docket and is aware that its own client entity has no attorney appearance, no motion to dismiss, and no proof of service in that case.

The City's own footnote 1 confirms why: "City of San Diego Office of Emergency Services" is "a department that is not a separate suable entity. The City's position is that it does not concede that it is properly named in the first-filed action." A municipal department that is not a separate suable entity cannot be the "same defendant" for

purposes of the claim-splitting doctrine. Vance v. County of Santa Clara, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996) (municipal department not a separate suable entity from the municipality itself).

The City's argument thus presents an irresolvable contradiction: if "City of San Diego OES" is not a suable entity, it is not a defendant in AGS-MSB, and there is no duplicate defendant. If, on the other hand, naming OES is legally equivalent to naming the City of San Diego itself (as Vance holds), then the comparison is: AGS-MSB asserts §1983 claims only; this case asserts RICO under 18 U.S.C. §§ 1962-1964 — a different federal statute with different elements and different remedies. Those are not the same "cause of action" under any claim-preclusion analysis. Either way, the claim-splitting doctrine is not satisfied.

The appropriate remedy if the Court finds any overlap is consolidation — not dismissal. Adams, 487 F.3d at 688 (court has discretion to dismiss, stay, enjoin, or consolidate).

**F. THE SERVICE DEFECT IS CURABLE; DISMISSAL WITH PREJUDICE IS IMPROPER.**

The City argues that Plaintiff served a 32-page document rather than the complete 109-page First Amended Complaint (including 77 pages of exhibits). Plaintiff acknowledges that the complete pleading should have been served.

However, dismissal with prejudice — or even with prejudice as to service — is not the remedy. First, the remedy for a service defect is quashal and re-service, not dismissal with prejudice. Crowley v. Bannister, 734 F.3d 967, 975 (9th Cir. 2013). Dismissal with prejudice for a curable service defect requires a showing of prejudice to the defendant. No such prejudice exists here.

Second, the City's own Memorandum of Points and Authorities (ECF 47-1) references and engages with the exhibits by name and content — demonstrating that the City reviewed every exhibit before filing its motion. A party that reads, analyzes, and argues from the exhibits it claims it never received cannot show prejudice from their omission in the service package. The exhibits were also docketed on PACER as ECF 17 (Notice of Lodgment, April 13, 2026), accessible to the City through the court's electronic filing system on the day of service.

Third, if the Court grants leave to file the amended complaint (ECF 25), Plaintiff will re-serve the City with the complete operative pleading, mooting the service defect.

## G. LEAVE TO AMEND MUST BE GRANTED; AMENDMENT IS NOT FUTILE.

The City's "no leave to amend" argument rests on two claims: (1) several bars are status-based, not pleading-based; and (2) the FAC's verified allegations lock Plaintiff into contradictions.

Neither is correct as to the claims that can survive amendment.

The city-entity-cannot-be-a-RICO-defendant rule (Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 404 (9th Cir. 1991); Pedrina v. Chun, 97 F.3d 1296, 1300 (9th Cir. 1996)) is a bar on suing the entity — because a government entity cannot form the malicious intent required for RICO predicate acts — not a bar on suing individual City employees who participated in those predicate acts. The amended complaint will plead RICO against individual Does (City employees who approved specific grant applications and supervised surveillance operations), not against the City entity.

The verified-pleading argument also fails. The amended complaint adds that individual City employees approved the UASI grants funding the surveillance equipment pursuant to the FY23 UASI Agreement (FAC Exhibit Y; attached to this opposition as Exhibit A) — an addition, not a contradiction of the FAC's existing attributions. Reddy v. Litton Indus., Inc., 912 F.2d 291, 296-97 (9th Cir. 1990) (bars contradictions, not additions).

Under Lopez v. Smith, 203 F.3d at 1130, a district court abuses its discretion by refusing leave to amend where amendment is not clearly futile. Here, Plaintiff already filed a motion for leave to amend (ECF 25) three months ago. The proposed amended complaint addresses each specific deficiency the City identifies. Denying leave here — particularly with prejudice — would be error under Lopez and Foman v. Davis, 371 U.S. 178, 182 (1962).

## IV. REQUEST FOR JUDICIAL NOTICE

Plaintiff requests that the Court take judicial notice of Exhibit 2 to ECF 74-2 filed in Case No. 3:25-cv-02934-AGS-MSB (the Salemi v. City of Carlsbad action pending in this District). That exhibit is a County Board letter that is a matter of public record in a proceeding before this Court. Fed. R. Evid. 201(b)(2). It states that the Sheriff's Department was authorized to "accept and administer UASI grant funds on behalf of the SD-LECC" per City of San Diego authorization, and that SD-LECC "will be comprised of representatives from the federal, state and local law enforcement agencies." This document is relevant to Plaintiff's Monell and § 1985 claims and requires no factual dispute to be noticed.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. DENY the City's motion to dismiss in its entirety; or
2. In the alternative, DISMISS WITHOUT PREJUDICE any deficient claims and grant Plaintiff leave to file the amended complaint described in ECF 25, which addresses each deficiency the City identifies; and
3. To the extent the Court finds the service deficient, QUASH service and ORDER re-service of the complete operative pleading rather than dismissing the action.

The City of San Diego played a concrete, formally authorized role in funding the surveillance apparatus at the heart of this case. That role — embodied in the officially adopted FY23 UASI Agreement (Exhibit A) — is a valid basis for Monell liability. The remaining deficiencies, to the extent any exist, are curable through the pending amended complaint. Dismissal with prejudice would foreclose meritorious federal civil rights and RICO claims that have never received a merits ruling.

Respectfully submitted,

Dated: July 16, 2026

ALIREZA SALEMI
Plaintiff Pro Se
2735 Palomar Airport Road
Carlsbad, California 92009
(720) 208-8755

alireza.salemi@udo.edu

CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2026, I filed the foregoing document with the Clerk of the United States District Court for the Southern District of California by delivering a true and correct copy to the Clerk's Office, 333 West Broadway, San Diego, California 92101.

I further certify that on the same date, I served a copy of the foregoing document on counsel for the City of San Diego by depositing a true and correct copy in the United States Mail, first-class postage prepaid, addressed as follows:

Jennifer M. Martin, Deputy City Attorney
Office of the City Attorney
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100

Glen Dorgan
Assistant United States Attorney
Office of the United States Attorney
880 Front Street, Room 6293
San Diego, California 92101

ALIREZA SALEMI