Alireza Salemi
2735 Palomar Airport Road, Carlsbad, CA 92009
(720) 208-8755 | alireza.salemi@udo.edu
Plaintiff, Pro Se

FILED
JUL 29 2026
CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY GSW DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ALIREZA SALEMI,

Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,

Defendants.

Case No. 3:25-cv-03387-LL-GC

**PLAINTIFF'S OPPOSITION TO DEFENDANT CITY OF CARLSBAD'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 48]**

Date: August 17, 2026
Ctrm: 14B
Judge: Hon. Linda Lopez
Mag.: Hon. Guillermo Cabrera

## I. INTRODUCTION

This is a civil RICO action. It alleges an association-in-fact enterprise -- funded by federal DHS grants, coordinated through the SD-LECC fusion center, and executed by municipal, state, and private actors -- that has conducted a nine-year pattern of racketeering against Plaintiff and his minor autistic son. Carlsbad is a spoke in that enterprise: it adopted the UASI Goal 5 surveillance policy, deployed federally funded tactical equipment, trained over 220

civilian CERT operatives, and simultaneously operated through Kimberly Young -- the City's own Assistant Director of Emergency Services -- who served as President of InfraGard San Diego -- which her own professional profile describes as an FBI-affiliated network of nearly 3,000 members -- in which role she delivered twice-monthly briefings and trainings "in coordination with FBI San Diego, the Department of Homeland Security, and the San Diego Law Enforcement Coordination Center (hereinafter 'SD-LECC,' administered by the County of San Diego Sheriff on SD-LECC's behalf)" -- and who appears on the same board distribution lists as those agencies. The City's police department also reclassified Plaintiff's felony assault reports as "civil matters" to shield the Enterprise from investigation.

Carlsbad moves to dismiss on three grounds only -- the Section 1983 claim, the Government Claims Act, and duplication of the related Section 1983 case. It does not challenge the RICO claims. Each of the three grounds fails, and the RICO claims proceed regardless. Plaintiff respectfully requests that the Motion be denied.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A pro se complaint is held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007). Leave to amend is "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2), and a court abuses its discretion by denying leave unless amendment is "clearly futile." Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); Foman v. Davis, 371 U.S. 178, 182 (1962). A municipality may not assert qualified immunity, Owen v. City of Independence, 445 U.S. 622, 638 (1980), and Monell liability turns on a policy or custom, not on personal participation by a named officer. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978).

**III. ARGUMENT**

Carlsbad's Motion challenges only the Section 1983 claim, the state-law claims under the Government Claims Act, and the assertion that this action duplicates the Section 1983 case. It offers no argument addressed to the RICO claims -- 18 U.S.C. Sections 1962(c), 1962(d), and 1964(c) -- the association-in-fact enterprise, the pattern of racketeering, the predicate acts, or RICO standing. Those claims are the heart of this action. They are unchallenged and proceed regardless of how the Court resolves the Motion. A defendant may not raise new grounds for dismissal for the first time in reply. Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).

**A. THE FAC STATES A SECTION 1983 CLAIM AGAINST CARLSBAD UNDER MONELL.**

The FAC alleges deprivation of Plaintiff's Fourth Amendment right against warrantless surveillance, his First Amendment right to petition the government for redress of grievances, and his Fourteenth Amendment substantive due process rights under the state-created danger doctrine.

1. Entity Monell Liability Requires a Policy, Not Personal Participation.

Carlsbad argues the FAC "fails to allege any specific policy, custom, or practice" and that "no individual participation" is alleged. Motion at 4:5-7. Both points are legally irrelevant to an entity Monell claim. A municipality is liable under Section 1983 when the challenged action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. This includes formal agreements entered by authorized officers, City of Canton v. Harris, 489 U.S. 378, 385 (1989), and an officer executing an agreement under delegated authority reflects official policy, Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986). Entity liability does not require

naming an individual; it requires a policy. Monell, 436 U.S. at 694.

The FAC alleges Carlsbad officially adopted these policies:

(a) Resolution 2025-182, unanimously adopted by the City Council on July 29, 2025, accepting $52,774 in FY2024 DHS Homeland Security Grant Program funds and authorizing the City Manager to execute Standard Assurances with the County of San Diego Office of Emergency Services. FAC paragraph 71.

(b) The UASI Goal 5 surveillance framework, including CERT Unit 8 "Terrorism Awareness" training for over 220 civilian volunteers, instructing them to conduct "surveillance" and identify "people who don't belong." FAC paragraphs 9-11, 71.

(c) The FY23 UASI Agreement between the City of San Diego and Carlsbad, binding Carlsbad as a UASI subrecipient under UAWG governance. FAC paragraph 59.

(d) Procurement and deployment of federally funded tactical surveillance equipment: a $448,389.21 BearCat armored vehicle, a U-MERV aerial surveillance platform, and night vision and thermal imaging devices. FAC paragraph 60.

(e) Voting membership in the Urban Area Working Group through representative Kimberly Young, who identifies herself in her own professional profile as the City's "lead representative" to the UAWG, which approves and directs these surveillance assets. FAC paragraphs 9-11.

These are formally adopted policies -- resolutions, executed agreements, authorized procurements -- not informal customs. This is the heartland of Monell. For Section 1983 purposes, the policy in item (a) is contemporaneous with the most recent predicate acts at issue -- the September 2025 dental laser assault and the December 2025 HVAC sabotage, both of

which postdate the City Council vote; the CERT Unit 8 curriculum in item (b), on information and belief, has been operative throughout the period of alleged harm. The earlier conduct supports the RICO enterprise and predicate-act allegations, which require no Monell analysis. Plaintiff alleges Does 11-20 -- identified in the FAC as CERT volunteers or off-duty law enforcement personnel -- executed precisely the directive the curriculum teaches: to conduct "surveillance" and identify "people who don't belong." FAC paragraphs 10-11, 23, 25-26. The curriculum is the moving force: it supplies the operational instructions the civilian operatives followed. Board of Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997). Whether Young or the officials who execute the City's UASI agreements hold final policymaking authority is a question of California law not resolvable on a motion to dismiss. AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 636 (9th Cir. 2012). Los Angeles County v. Humphries, 562 U.S. 29, 36 (2010), which Carlsbad cites, confirms only that the policy-or-custom requirement applies to all Section 1983 claims against municipalities; it says nothing about the sufficiency of the FAC's policy allegations, which is met.

2. The FAC Alleges Affirmative Conduct, Not Mere Failure to Investigate.

The City created the very danger it refused to remedy: Carlsbad Police Department affirmatively reclassified Plaintiff's felony assault reports as "civil matters" -- stripping him of crime-victim status and police protection -- while maintaining the federally funded surveillance apparatus it created through its UASI participation.

Carlsbad did not merely stand by. It funded and trained the civilian corps that executed the conduct at issue: UASI grant funds, formally accepted by City Council vote, financed the Terrorism Liaison Officer training curriculum through which civilian operatives were trained to surveil and report on community members, and the City's own CERT program deployed over 220 such operatives into the community. That conduct -- warrantless surveillance, coordinated harassment, and deliberate suppression of Plaintiff's police reports -- violated his

Fourth Amendment right against unreasonable surveillance, his First Amendment right to petition the government for redress of grievances, and his Fourteenth Amendment right to be free from state-created danger.

Carlsbad invokes Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir. 1985), and Huffman v. County of Los Angeles, 147 F.3d 1054, 1059-61 (9th Cir. 1998), for the rule that there is no constitutional right to a police investigation. Those cases addressed pure nonfeasance -- inaction with no parallel affirmative program. The FAC does not allege that Carlsbad merely failed to investigate. It alleges the City created and funded the system that caused the harm and then concealed it:

First, CPD's reclassification of Plaintiff's felony assault reports as "civil matters" was "not a good-faith legal determination but an affirmative act of cover-up in furtherance of the Enterprise." FAC paragraph 55. It stripped Plaintiff of crime-victim status, denied him access to state crime-victim compensation, and destroyed the evidentiary trail -- while the Enterprise continued operating against him. FAC paragraph 55. This is the core of the state-created danger doctrine: the state took an affirmative act directed at a specific individual that placed him in greater peril than he would otherwise have faced. Kennedy v. City of Ridgefield, 439 F.3d 1055, 1061-62 (9th Cir. 2006); Wood v. Ostrander, 879 F.2d 583, 589-90 (9th Cir. 1989); DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989). CPD did not merely decline to investigate; it affirmatively closed cases, reclassified felony conduct as civil, and thereby ensured Plaintiff had no recourse while the targeting continued. The deliberate, multi-year nature of that conduct -- institutionally funded, trained, and concealed -- satisfies the "shocks the conscience" standard under the deliberate indifference tier. Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008).

Second, the reclassification did not occur in a vacuum. The City had already funded, procured, and deployed the surveillance apparatus operating against Plaintiff -- the UASI-funded

equipment, the CERT operatives trained to identify "people who don't belong," the SD-LECC integration. FAC paragraphs 59, 60, 71. The City built the targeting system and then used its police power to close off Plaintiff's only avenue of relief from it. That combination -- affirmative deployment of the apparatus and affirmative suppression of the remedy -- is precisely the misfeasance DeShaney distinguished from ordinary government inaction. DeShaney, 489 U.S. at 195 (distinguishing "governmental inaction" from affirmative state conduct that "creates or exposes" danger).

Third, the City deepened that danger by contributing to and utilizing SD-LECC's surveillance database -- feeding Plaintiff's information into the regional fusion center network while denying him police protection -- creating the "one-way monitoring regime where Plaintiff is tracked but receives no protection from the tracking entities." FAC paragraph 67(c). Plaintiff was surveilled by the apparatus the City built, denied protection by the police the City controls, and fed into a federal network he could not challenge or even identify. That is not the passive nonfeasance of Gomez and Huffman. Those authorities address a state actor standing by while harm occurs. They have no application where the state is the architect of the harm. The City cannot invoke cases about bystander governments to escape liability for the conduct it built and directed.

## B. THE GOVERNMENT CLAIMS ACT DOES NOT BAR PLAINTIFF'S CLAIMS.

### 1. Federal Claims Are Exempt, and the Act Does Not Reach Private Defendants.

The Government Claims Act, Cal. Gov't Code Sections 911.2, 945.4, reaches only California-law claims against public entities. It does not reach federal civil-rights claims. Felder v. Casey, 487 U.S. 131, 138-39 (1988) (Supremacy Clause bars state procedural prerequisites to federal civil-rights actions). Plaintiff's claims under RICO, Section 1983, Section 1985, and Section 504 of the Rehabilitation Act are federal and unaffected. This

disposes of the bulk of the claims Carlsbad seeks to dismiss.

Separately, the Act has no application whatsoever to the state-law tort claims asserted against private defendants -- Staybridge Suites / IHG, Smiles for Health DDS, Dr. Zorros, and Allison Schulz. The Government Claims Act applies only to claims against public entities. Cal. Gov't Code Section 905. Carlsbad's motion cannot bar claims against parties who are not public entities and who are not Carlsbad.

2. A Government Claim Was Presented; the Correct Remedy Is Leave to Amend, Not Dismissal With Prejudice.

A written government claim was presented to Carlsbad -- to both the City Clerk and City Attorney -- by certified mail postmarked July 3, 2026, in the amount of $25,000,000, covering personal injury and property damage, including claims under the Bane Act (Cal. Civ. Code Section 52.1), negligence, and intentional infliction of emotional distress. See Declaration of Alireza Salemi, Exhibits A and B. Carlsbad's premise -- that no claim was ever presented -- is factually wrong.

The claim-presentation requirement is a condition precedent, not a jurisdictional bar that permanently extinguishes the claim. City of San Jose v. Superior Court, 12 Cal.3d 447, 454 (1974). Carlsbad's lead authority establishes the correct remedy: State v. Superior Court (Bodde), 32 Cal.4th 1234, 1243-45 (2004), holds that a complaint not alleging compliance is subject to a general demurrer with leave to amend -- the ordinary remedy is amendment, not dismissal with prejudice. The Bodde complaint was itself remanded, not dismissed. Id. at 1245.

The claim is timely. The FAC alleges that the enterprise's harassment of Plaintiff and his minor son has continued "from 2016 to the present." FAC paragraphs 25-26. The September 2025 dental assault, CPD's reclassification of Plaintiff's assault reports as civil matters, and the

December 2025 HVAC sabotage are among the documented acts within this continuous campaign; each constitutes a fresh accrual under the continuing violation doctrine. The enterprise's conduct, funded and coordinated by Carlsbad through its UASI grants and CERT program, has never ceased -- with acts attributable to Carlsbad occurring within six months of the July 3, 2026 presentment. Cal. Gov't Code Section 911.2. Under the continuing violation doctrine, each new act of the ongoing enterprise constitutes a fresh accrual, and the claim is timely as to the entire pattern. Aryeh v. Canon Business Solutions, Inc., 55 Cal.4th 1185, 1198 (2013). The March 2026 CPRA obstruction -- a 14-day extension claiming "voluminous records" followed by a reversal declaring "no responsive documents" for the same categories (FAC paragraph 58) -- is the most recent documented Carlsbad-specific act, accruing approximately four months before presentment, and independently supports the Bane Act, negligence, and intentional infliction of emotional distress claims against the City -- each arising from a pattern of felony assault, deliberate property destruction, and the City's affirmative suppression of criminal reports to shield the Enterprise. CPD's reclassification of Plaintiff's assault reports as "civil matters" constitutes a Bane Act violation: it coercively interfered with Plaintiff's right to petition for redress of grievances and access state crime-victim services. The September 2025 dental assault and December 2025 HVAC sabotage are attributable to Carlsbad because they were committed by agents acting in concert with the same enterprise Carlsbad funds and coordinates -- the Bane Act reaches private actors operating in conspiracy with state actors. Venegas v. County of Los Angeles, 32 Cal.4th 820 (2004). This Court need not resolve the outer reach of the continuing violation doctrine under the GCA: acts within the six-month window exist, the March 2026 obstruction independently satisfies the condition, and all federal claims proceed without regard to the GCA. Felder, 487 U.S. at 138-39.

The statutory process renders the state-law claims fully ripe by the hearing date. Under Government Code Section 912.4, the City must act within 45 days of presentment; if it does not, the claim is deemed rejected by operation of law on or about August 17, 2026 -- the date

of the hearing itself. Cal. Gov't Code Section 912.4(c). Once deemed rejected, Plaintiff may pursue the state torts within the period under Section 945.6. The claim will be deemed rejected on or about August 17, 2026 -- the hearing date itself -- at which point compliance is complete. Amendment is not futile; it is precisely the course Bodde prescribes.

Carlsbad's remaining authorities address total non-presentation: Creighton v. City of Livingston, 628 F. Supp. 2d 1199 (E.D. Cal. 2009); Rezaipour v. County of Los Angeles, 2014 WL 12674923 (C.D. Cal. 2014). Those plaintiffs never presented any claim. Here a claim exists, is pending, and becomes ripe by the hearing date. Those cases do not govern.

The motion should be denied outright. A claim was presented on July 3, 2026, is pending, and will be deemed rejected by operation of law on or about the hearing date -- at which point GCA compliance is complete. At minimum, the correct remedy is a stay of the state-law claims pending that deemed rejection, not dismissal. Dismissal with prejudice -- the most extreme sanction -- is error where a claim has been presented and amendment will supply full compliance. Lopez v. Smith, 203 F.3d at 1130. Pro se pleadings are construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972).

3. The Minor Son's Claims Survive.

The son's federal claims -- RICO, Sections 1983 and 1985, Section 504 -- are not subject to the Act and require no presentation. Felder, 487 U.S. 131. As to any state-law claim on his behalf, California law preserves a minor's right to seek late-claim relief under Gov't Code Section 911.4; where the claimant was a minor throughout the entire presentment period, the board shall grant the application. Cal. Gov't Code Section 911.6(b)(2). The son was born February 3, 2013 and was a minor throughout the Section 911.2 presentment period; mandatory relief under Section 911.6(b)(2) applies. The July 3, 2026 claim documents the son's injuries and his minority status. California does not permit a minor's claims to be extinguished with prejudice

on claim-presentation grounds without affording the mandatory relief the Legislature provides for minors. At most, leave to amend is warranted.

4. Futility Is Not Established.

Carlsbad's futility argument rests on the premise that "no claim was ever presented." That premise is factually wrong: a claim was presented, is pending, and covers the state torts at issue. Amendment to address any timing defect is the ordinary course, not futile.

**C. THIS ACTION IS NOT DUPLICATIVE OF CASE NO. 3:25-CV-02934-AGS-MSB.**

Carlsbad argues this RICO action should be dismissed because Plaintiff also filed a Section 1983 action in this District. As a threshold matter, Carlsbad's brief misidentifies Case No. 02934 as a "Central District" action. Motion at 7. It is not. Case No. 3:25-cv-02934-AGS-MSB is pending in this Court -- the Southern District of California -- before the Honorable Andrew G. Schopler. Both cases are in the same district. This Court has inherent authority to coordinate them. Coordination, not dismissal, is the appropriate remedy.

The claim-splitting doctrine bars "two separate actions involving the same subject matter at the same time in the same court and against the same defendant," Adams v. Cal. Dep't of Health Servs., 487 F.3d 684, 688 (9th Cir. 2007) (overruled on other grounds by Taylor v. Sturgell, 553 U.S. 880 (2008), which did not affect the duplicativeness holding), applying the transactional test. That test is not met, for four reasons.

1. Different Causes of Action and Different Defendants. Civil RICO and Section 1983 have different elements (RICO requires an enterprise and a pattern of predicate acts under 18 U.S.C. Sections 1341, 1343, 1503, 1519, 1951; Section 1983 requires deprivation of a federal right under color of state law), different remedies (RICO

provides treble damages and fees under Section 1964(c)), and different reach (RICO captures private actors with no state-action requirement). This case names private-actor defendants absent from the 02934 action -- Staybridge Suites Carlsbad / IHG, Smiles for Health DDS, Dr. Zorros, Allison Schulz, the California Dental Board, Encinitas Union School District, and John Does 1-70. They can be reached only through RICO and could not have been litigated in a Section 1983 case that requires state action.

2. Carlsbad Is Not Peripheral. Carlsbad is the spoke connecting the federal funding (DHS to City of San Diego to Carlsbad) to the civilian operatives (CERT volunteers, Does 11-20) who execute the daily harassment. FAC paragraphs 9-11, 59, 71. Removing Carlsbad severs the link between the funding and the people carrying out the racketeering; the enterprise theory cannot be proven without the spoke.

3. New and Independent Predicate Acts. This case alleges predicate acts that do not appear in 02934: (a) the September 2, 2025 Class IV dental laser assault by Allison Schulz -- assault with a deadly weapon (Cal. Penal Code Section 245(a)(1)), constituting a violent crime in aid of racketeering, 18 U.S.C. Section 1959, without consent or dentist supervision, with falsified records (FAC paragraphs 34-39, 52, 55); (b) the December 24-25, 2025 HVAC/vent sabotage at Staybridge Suites Carlsbad (FAC paragraphs 45-49); and (c) the City's CPRA obstruction -- a 14-day extension for "voluminous" records, then a reversal declaring "no responsive documents" for the same categories (FAC paragraph 58).

4. "Related" Is Not "Duplicative," and Carlsbad's Authorities Do Not Support With-Prejudice Dismissal. FAC paragraph 8A is a related-case disclosure required by Civil Local Rule 40.1; relatedness is a basis for coordination, not dismissal. Each case Carlsbad cites is distinguishable. Costantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir. 1982), is a post-judgment res judicata case; no final judgment exists

in either case here. Adams, 487 F.3d at 689, involved a plaintiff who voluntarily dismissed claims in the first action and then reasserted them in a new suit; Single Chip Systems Corp. v. Intermec IP Corp., 495 F. Supp. 2d 1052, 1058 (S.D. Cal. 2007), involved a plaintiff denied leave to amend in the first case who then filed a new action as an end-run; here Plaintiff's motion for leave to amend (ECF No. 25) has been pending since May 4, 2026. Clements v. Airport Auth. of Washoe County, 69 F.3d 321, 328-29 (9th Cir. 1995), holds claim preclusion waivable when a defendant acquiesces in parallel proceedings. Alltrade Inc. v. Uniweld Products Inc., 946 F.2d 622, 627-28 (9th Cir. 1991), applied the first-to-file rule and held a stay, not dismissal, is proper. And Adams itself lists four remedies -- dismiss, stay, enjoin, or allow to proceed, 487 F.3d at 688 -- of which with-prejudice dismissal is the most extreme and is unwarranted where the cases involve different statutes, different defendants, and new predicate acts, and where dismissal would foreclose the only discovery path to identifying the civilian operatives (Does 11-20).

**D. LEAVE TO AMEND MUST BE GRANTED.**

A court abuses its discretion by denying leave where amendment is not clearly futile. Lopez, 203 F.3d at 1130; Foman, 371 U.S. at 182. Plaintiff's motion for leave to amend (ECF No. 25) has been pending since May 4, 2026; the amended complaint will map each claim to each named defendant, allege full GCA compliance upon deemed rejection of the presented claim, and identify Doe defendants to the extent permitted by discovery obtained prior to filing. Amendment is further supported by newly obtained municipal records: the City's own CPRA production (R005580_Emails, at Pages 1 and 32-33) establishes that Kimberly Young -- the City's Assistant Director of Emergency Services (FAC paragraph 11) -- served as an officer of InfraGard San Diego -- the FBI's private-sector partnership -- and appeared on the same board distribution lists as representatives of the FBI, the SD-LECC fusion center, DHS Headquarters, and DHS/CISA. Young's own professional profile further identifies her as President of

InfraGard San Diego from March 2021 through February 2024, a period that overlaps with her City role. Young also serves as the City's CERT Program Manager (FAC paragraph 11), overseeing the City's 220-member civilian corps trained under the UASI Goal 5 curriculum; she identifies herself in her own professional profile as the City's "lead representative" to the UAWG and as overseeing the City's FEMA HSGP and UASI grant participation. The same CPRA production includes correspondence from the CISA Protective Security Advisor for San Diego, who appears on the same correspondence alongside SD-LECC representatives -- confirming the DHS/CISA ↔ SD-LECC connection from Carlsbad's own records. A further Carlsbad CPRA production (R005682) establishes Resolution 2024-206, adopted August 27, 2024, accepting $83,545 in FY2023 UASI funds and authorizing execution of the FY23 UASI Agreement with the City of San Diego Office of Emergency Services -- the City Council vote formally binding Carlsbad to UAWG governance and PATRIOT Act compliance obligations, which will be added in the amended complaint. A separate Carlsbad CPRA production (R005682, UASI_LE_Proposals, October 2023) further establishes that UASI Goal 5 is defined as "Protect Critical Infrastructure, soft targets, and crowded places from all threats and hazards," that UASI funds a Terrorism Liaison Officer (TLO) curriculum through SD-LECC creating a network of civilian observers who report Suspicious Activity Reports (SARs), and that SD-LECC funnels those SARs directly to the FBI Joint Terrorism Task Forces -- the full pipeline from UASI-funded civilian training to FBI action, documented in Carlsbad's own records. These facts deepen rather than defeat the Monell and enterprise allegations. Amendment is not futile.

## IV. THE DECLARATION AND EXHIBITS ARE PROPERLY BEFORE THE COURT

Plaintiff submits the Declaration of Alireza Salemi and Exhibits A and B to establish that a written government claim was presented to the City of Carlsbad on July 3, 2026. Three independent grounds support the Court's consideration of these materials.

First, courts in this Circuit may consider documents not attached to a complaint when they are necessarily relied upon in it. Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other grounds by Galbraith v. Cty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). The FAC necessarily relies on government claim presentment to establish the GCA condition precedent; the declaration and exhibits authenticate that presentment. The Court may consider them on this motion.

Second, if the Court concludes the materials fall outside the four corners of the complaint, the proper remedy is leave to amend so the amended complaint may allege full GCA compliance upon deemed rejection of the presented claim. The claim will be deemed rejected by operation of law on or about the hearing date (Cal. Gov't Code Section 912.4(c)); the state torts will then be fully ripe and the amended complaint will reflect complete compliance. Amendment is not futile. Lopez v. Smith, 203 F.3d at 1130.

Exhibit A: Government Tort Claim presented to the City of Carlsbad, dated July 3, 2026 (attached to the Declaration of Alireza Salemi).

Exhibit B: USPS Certified Mail receipts, postmarked July 3, 2026, addressed to the City Clerk and City Attorney of the City of Carlsbad (attached to the Declaration of Alireza Salemi).

**V. CONCLUSION**

For these reasons, Plaintiff respectfully requests that the Court:

(1) Deny the Motion to Dismiss in its entirety;

(2) In the alternative, stay any state-law tort claims pending completion of the government

claim process, while preserving all federal claims (RICO, Sections 1983, 1985, and 504);

(3) Grant leave to amend pursuant to ECF No. 25; and

(4) Deny dismissal with prejudice on all grounds.

Respectfully submitted,

Dated: July 29, 2026

ALIREZA SALEMI

Plaintiff, Pro Se

**CERTIFICATE OF SERVICE**

I, Alireza Salemi, certify that on July 29, 2026, I served the foregoing on all counsel of record by electronic mail with return receipt requested, in accordance with Section 5 of the Court's Civil Chambers Rules, and by U.S. Mail:

Glen F. Dorgan
Assistant United States Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Counsel for Defendants U.S. DHS and FBI

Jennifer Marie Martin
Office of the San Diego City Attorney
1200 Third Avenue, Suite 1100
San Diego, CA 92101
Counsel for Defendant City of San Diego

Nathan Andrew Oyster, Caylin W. Jones, Sydney M. Gronroos
Burke, Williams & Sorensen, LLP
444 South Flower Street, 40th Floor, Los Angeles, CA 90071-2942
Counsel for Defendant City of Carlsbad

ALIREZA SALEMI
Plaintiff, Pro Se