Alireza Salemi
2735 Palomar Airport Road, Carlsbad, CA 92009
(720) 208-8755 | alireza.salemi@udo.edu
Plaintiff, Pro Se

FILED
AUG 14 2026
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY GSW DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALIREZA SALEMI,<br><br>Plaintiff,<br><br>v.<br><br>SD-LECC, et al.,<br><br>Defendants. | Case No. 3:25-cv-03387-LL-GC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT ENCINITAS UNION SCHOOL DISTRICT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [ECF 52]**<br><br>No Hearing Set<br>Judge: Hon. Linda Lopez<br>Mag.: Hon. Guillermo Cabrera |

## I. INTRODUCTION

Plaintiff Alireza Salemi, pro se, opposes Defendant Encinitas Union School District's ("District" or "EUSD") Motion to Dismiss the First Amended Complaint ("FAC," ECF No. 16) [ECF No. 52].

This is a nine-year civil RICO action alleging a DHS-funded fusion-center enterprise that targeted Plaintiff — a U.S. citizen of Iranian national origin and Viasat critical-infrastructure employee — using his autistic minor son as leverage. EUSD is a node of that enterprise. The enterprise's coordinated conduct violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments — including the right to petition courts without retaliation, freedom from unreasonable government surveillance conducted through civilian proxies, equal protection on the basis of national origin and disability, and due process — deprivations actionable through 18 U.S.C. § 1985(3) and the Bane Act (Cal. Civ. Code § 52.1). Its April 13, 2026 CPRA denial (false "no records" while producing playground logs) constitutes wire fraud (18 U.S.C. § 1343) and coordinated litigation obstruction (18 U.S.C. § 1503) — evidence developed further in Section III.B below.

EUSD raises four bases for dismissal: (A) standing, (B) failure to state claims on eight causes of action, (C) duplicativeness with Case No. 3:25-cv-02934-AGS-MSB, and (D) a motion to strike post-complaint CPRA allegations. None succeeds. A simultaneous FRCP 17(c)(2) guardian-ad-litem motion filed with this opposition will cure the representation defect as to the minor son's claims. Plaintiff's own federal claims against EUSD survive independently. The RICO, disability-discrimination, and mandatory-reporting claims are meritorious. This action is not duplicative — it captures private actors, different predicates, and RICO treble damages unreachable in the AGS-MSB §1983 case. The CPRA allegations are properly part of the First Amended Complaint under Rule 15(a), not a supplemental pleading.

If any pleading defect is found, leave to amend must be granted. The Ninth Circuit's liberal amendment policy applies with particular force where, as here, the claims of a minor autistic child would be extinguished before a single document has been produced from the institution that holds his educational records. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000).

## II. LEGAL STANDARD

On Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. On Rule 12(b)(6), the Court accepts well-pleaded facts as true and draws all reasonable inferences for the plaintiff, disregarding only conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). A pro se complaint is liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007). At the pleading stage, allegations of fraud must be pled with particularity as to the who, what, when, where, and how — but the overall RICO pattern, enterprise structure, and continuity may be pled with the general notice standard of Rule 8. Fed. R. Civ. P. 9(b), 8(a).

## III. ARGUMENT

### A. Standing: The GAL Motion Moots EUSD's Argument; Plaintiff's Own Claims Survive Independently.

EUSD's standing argument rests on Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir. 1997), which holds that a non-attorney parent may not act as the minor's attorney in federal court. Johns does not deprive the Court of subject matter jurisdiction over the son's claims — it identifies a representation requirement that FRCP 17(c)(2) expressly empowers courts to cure. FRCP 17(c)(2) gives courts independent authority to appoint a guardian ad litem for an unrepresented minor "at any time." Plaintiff has filed a simultaneous motion for appointment as guardian ad litem under FRCP 17(c)(2), with concurrent appointment of pro bono counsel for the minor under 28 U.S.C. § 1915(e)(1). That motion moots EUSD's standing argument as to the son's claims.

Plaintiff is the son's natural parent with no adverse interest to the minor's claims, satisfying FRCP 17(c)'s threshold requirement for GAL appointment. Exceptional circumstances

warranting § 1915(e)(1) counsel are present: disabled minor, legal complexity, and documented inability to retain counsel. Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (two-prong test: likelihood of success on the merits and inability to articulate claims given complexity); Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986).

Independently and simultaneously, Plaintiff's own federal claims against EUSD establish a separate Article III injury-in-fact that exists regardless of the son's representation status:

First, EUSD's April 13, 2026 CPRA denial directly injured Plaintiff — not only his son. Plaintiff submitted the CPRA request in his own name, seeking records referencing himself as well as his son. EUSD's false denial of Requests 1, 3, and 4 forced Plaintiff to expend filing fees, investigative costs, and litigation expenses to obtain records that should have been produced — concrete out-of-pocket economic harm directly traceable to EUSD's wire-fraud predicate. That is Plaintiff's injury, not the son's.

Second, Plaintiff was himself subject to coordinated proximity-harassment tactics during school activities at Flora Vista Elementary — including pickup and drop-off, IEP meetings, parent-teacher conferences, and other school events — enterprise acts directed at Plaintiff at the EUSD campus. FAC ¶ 72A.

Both the GAL motion and these independent injury-paths establish standing — each sufficient on its own; both operative simultaneously. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

**B. The RICO Claims Are Well-Pleaded.**

1. EUSD Is a Member of the Enterprise.

EUSD argues that the FAC does not expressly name the District as an enterprise member. The FAC's allegations already establish EUSD's membership under the Boyle association-in-fact standard without requiring an express label. Boyle v. United States, 556 U.S. 938, 946 (2009) (association-in-fact enterprise needs only purpose, relationships among members, and longevity). All three elements are pleaded in the FAC as to EUSD:

Purpose: The enterprise's shared purpose is the targeting, discrediting, and silencing of Plaintiff — a U.S. citizen of Iranian national origin who has publicly reported civil rights violations. FAC ¶ 64.

Relationships: SD-LECC's regional intelligence programs list Carlsbad/Encinitas area "schools and nonprofits" as community partners receiving threat-assessment data. FAC ¶ 59; Exhibit 53 (Laughlin CPRA response). EUSD is a Carlsbad/Encinitas-area educational institution within that documented network. More specifically: EUSD's CPRA response agent and its federal litigation defense counsel are the same firm (Devaney Pate Morris & Cameron) — a coordination relationship between the CPRA obstruction and this litigation that is not explained by coincidence. FAC ¶ 57A. EUSD's April 13, 2026 denial of Request 4 (UASI/DHS/fusion-center records) as "no responsive records" directly contradicts its own counsel's March 26, 2026 written acknowledgment — just 18 days earlier — that records were "still being processed" and their existence was "still being determined." A party's counsel cannot acknowledge records are under review and then deny their existence three weeks later. FAC ¶ 57A; Exhibit Z.15.

Longevity: The enterprise operated from at least 2016 through the present filing — a nine-year duration. FAC ¶ 2.

Additionally, the San Diego County School Threat Protocol (November 2021) — a public agreement binding all 42 county school districts — formally commits EUSD to quarterly

intelligence-sharing coordination with law enforcement, OES, and the District Attorney's Office. San Diego County School Threat Protocol, § II, p.4 (Nov. 2021) ("Protocol"), Exhibit Z.17. Plaintiff requests judicial notice of the Protocol as a government publication whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). EUSD's membership is established by written legal obligation independent of geography: the Protocol binds every San Diego County school district by name — including EUSD — not merely by proximity.

All three Boyle elements are satisfied by the FAC's existing allegations.

2. EUSD Participated in the Operation and Management of the Enterprise.

Under Reves v. Ernst & Young, 507 U.S. 170, 179 (1993), § 1962(c) requires participation in the direction of the enterprise's affairs "at some part." A defendant need not sit atop the enterprise hierarchy — participation in directing any part of the enterprise's affairs suffices. United States v. Oreto, 37 F.3d 739, 750 (1st Cir. 1994) (non-binding; consistent with Ninth Circuit's application of Reves).

EUSD satisfies Reves at three distinct operational nodes of the enterprise:

(a) Threat-data recipient and actor: EUSD received threat-assessment targeting data from the enterprise (SD-LECC and its regional partners) and acted on it by withdrawing the disability-accommodation supervision from Plaintiff's minor son during recess — the precise deprivation that produced the May 24, 2024 fracture. SD-LECC's own CPRA disclosure (Exhibit 53) documents Carlsbad/Encinitas-area "schools and nonprofits" as community partners receiving threat-assessment data — confirming that a documented network participant cannot hold "no records" of that participation. A documented network participant that receives and acts on targeting data directs the enterprise's affairs at the school-level node assigned to

EUSD. FAC ¶¶ 42, 57A; Exhibit Z.15.

(b) Records concealment: EUSD's April 13, 2026 CPRA denial through Devaney Pate Morris & Cameron — the same firm defending EUSD in Case No. 3:25-cv-02934-AGS-MSB — directed the enterprise's concealment apparatus by obstructing Plaintiff's access to records establishing the enterprise's reach into school infrastructure. FAC ¶ 57A; Exhibit Z.15.

(c) Premises and personnel as harassment vectors: EUSD deployed its campus and staff as active enterprise instruments. First, EUSD's school grounds were used as a coordinated proximity-harassment site — enterprise actors directed sustained harassment at Plaintiff during school activities at Flora Vista Elementary, including pickup and drop-off, IEP meetings, parent-teacher conferences, and other school events. FAC ¶ 72A. Second, EUSD staff circulated a false psychiatric label about Plaintiff among school personnel (FAC ¶ 73B), executing the enterprise's discrediting function at the school-level node. The false label did not originate with the teacher's clinical observation — it was supplied to the EUSD teacher by the Enterprise (FAC ¶ 64C). The teacher then transmitted it to Plaintiff's wife, who relayed it to Minor Son's treating neurologist Dr. Anuja Jindal at Rady Children's Hospital on August 6, 2025 — placing it into Minor Son's permanent medical record as purported "family history" without any clinical basis. FAC ¶¶ 72D, 73B, 85. Dr. Jindal rejected the label in writing. FAC ¶¶ 72D, 85. This is not incidental staff gossip — it is a covert supply chain (Enterprise → EUSD teacher → family member → medical record) designed to plant a false psychiatric characterization in Plaintiff's permanent medical history without his knowledge or ability to contest it. Both acts — deploying physical premises for harassment and deploying personnel to execute a covert discrediting supply chain — are the execution of roles assigned to EUSD within the enterprise's coercion and discrediting apparatus. A participant that executes assigned enterprise functions at its node directs the enterprise's affairs under Reves.

3. A Pattern of Racketeering Activity Is Adequately Pleaded.

EUSD argues no § 1961(1) predicate offense is attributed to it. Three independent predicates are alleged.

First Predicate — 18 U.S.C. § 1503 (Obstruction of Justice): Section 1503 prohibits corruptly endeavoring to influence, obstruct, or impede the due administration of justice in any pending judicial proceeding. 18 U.S.C. § 1503(a); § 1961(1)(B) (enumerated predicate). EUSD's April 13, 2026 CPRA response denied Requests 1, 3, and 4 as "no responsive records" while producing Request 2 (playground logs) — establishing that EUSD conducted a search and selectively withheld the sensitive categories. Federal litigation against EUSD was pending on April 13, 2026: Case No. 3:25-cv-02934-AGS-MSB, in which Devaney Pate Morris & Cameron was actively defending EUSD as federal litigation counsel. EUSD's counsel knew the withheld records were directly relevant to claims already pending in AGS-MSB — the same fracture, the same IEP failure, the same EUSD conduct. A CPRA response authored by federal defense counsel, deliberately withholding records central to the pending federal case, is an act by counsel in the federal proceeding intended to deprive Plaintiff of evidence before discovery opens. That is a corrupt endeavor to obstruct the due administration of justice in Case No. 3:25-cv-02934-AGS-MSB. FAC ¶ 57A. The nexus requirement of United States

**v. Aguilar, 515 U.S. 593, 599 (1995) is satisfied: the defendant must know that** its act has the natural and probable effect of interfering with a pending judicial proceeding. Here, Devaney Pate was simultaneously defending EUSD in AGS-MSB and authoring the CPRA denial. Counsel's awareness of the pending proceeding and the relevance of the withheld records is established by counsel's own dual role.

EUSD's denial was knowingly false — the § 1503 offense. Three independent contradictions prove it:

First, in its April 13, 2026 CPRA response letter (Exhibit Z.16), EUSD stated: "the records

pertaining to him are no longer retained and are therefore unavailable through EUSD" — claiming records "were transferred to the school district where he attended following enrollment in EUSD." This claim is false as to the fracture incident records: the May 24, 2024 injury at Flora Vista Elementary was an EUSD-originated safety record created while the son was enrolled at EUSD — not a "student record" subject to transfer. California law mandates retention of Mandatory Interim pupil records — the category that includes IEP documents, incident reports, and health records — for a minimum of five years after the student leaves the district. 5 Cal. Code Regs. § 432(b); 34 C.F.R. § 300.624 (IDEA records retained at least five years post-eligibility); Cal. Educ. Code § 56504. EUSD's retention obligation under § 432(b) applied to these records at the moment of creation. A knowingly false transfer-claim made while federal litigation was pending is the § 1503 offense.

Second, EUSD's own counsel acknowledged on March 26, 2026 — 18 days before the denial — that records were "still being processed" and their "existence" was "still being determined." On April 10, 2026, Plaintiff formally served a litigation hold notice on that same counsel requiring preservation. Three days later, on April 13, 2026, EUSD issued a blanket "no responsive records" denial. Counsel's March 26 acknowledgment and the April 13 denial cannot both be true. Exhibit Z.15.

Third, the San Diego County School Threat Protocol (November 2021) — a written county agreement binding all 42 school districts including EUSD — requires each district to designate a safety coordinator to participate in quarterly coordination meetings with law enforcement, PERT, OES, and the District Attorney's Office. San Diego County School Threat Protocol, § II, p.4 (Nov. 2021), Exhibit Z.17 ("Protocol"). EUSD is legally required by the Protocol to maintain records of that law enforcement coordination. A denial of "no responsive records" to a CPRA request seeking UASI/DHS/fusion-center records — by an institution bound by written agreement to conduct and document that coordination — is knowingly false on its face. No institution can comply with the Protocol and simultaneously have no records of law

enforcement coordination.

Second Predicate — 18 U.S.C. § 1343 (Wire Fraud): EUSD's April 13, 2026 electronic "no records" denial — when fracture incident reports, IEP records, and recess-supervision incident logs demonstrably exist — constitutes wire fraud causing Plaintiff to expend litigation costs that production would have displaced. Rule 9(b): who=Mihelich/Devaney Pate (EUSD's CPRA agent); what=false denial of Requests 1/3/4; when=April 13, 2026; medium=electronic transmission (Exhibit Z.16); why=conceal enterprise coordination. FAC ¶ 57A. Section 1343 wire fraud independently supplies a confirmed predicate act regardless of how the Court resolves the § 1503 theory.

4. Continuity Is Assessed Enterprise-Wide, Not Per Defendant.

EUSD argues that one fracture and one CPRA dispute involving a single family cannot establish RICO continuity. But continuity is assessed across the enterprise, not across a single defendant's acts. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239-40 (1989). The enterprise has operated for nine years (2016–present), involved multiple victims, multiple defendants, multiple jurisdictions (federal agencies, state agencies, private actors), and multiple categories of predicate acts. FAC ¶¶ 65(a)–(j). EUSD's acts are a subset of this enterprise-wide pattern. Closed-end continuity is satisfied by the duration alone; open-ended continuity is satisfied by the ongoing threat-assessment targeting that continues to the present. H.J. Inc., 492 U.S. at 241-42.

EUSD's reliance on cases finding no continuity in single-victim schemes is misplaced. In Metaxas v. Lee, 503 F. Supp. 3d 923, 932-34 (N.D. Cal. 2020), and Puana v. Kealoha, 587 F. Supp. 3d 1035, 1053-54 (D. Haw. 2022), the courts dismissed RICO claims where the alleged scheme was narrowly directed at one individual, involved a discrete set of acts, and had already concluded by the time of filing. None of those features are present here. The enterprise has

operated continuously for nine years (2016-present) with no natural endpoint — it continues to this day. H.J. Inc., 492 U.S. at 241-42. It has injured two distinct victims: Plaintiff Alireza Salemi (economic harm, displacement, property damage, litigation costs) and his minor son M.S. (physical injuries including a Salter-Harris II fracture, enterprise-directed deprivation of disability-accommodation supervision). FAC ¶¶ 65(a)-(j), 66. An enterprise with a nine-year operating history, two victims sustaining distinct categories of injury, and ongoing predicate acts satisfies continuity under any formulation Metaxas and Puana contemplated.

5. Plaintiff Alleges RICO Injury to Business or Property.

Civil RICO reaches injury to "business or property." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). EUSD's predicate acts caused direct economic injury:

(a) Litigation costs traceable to EUSD's false CPRA denial: by falsely denying Requests 1, 3, and 4, EUSD forced Plaintiff to expend filing fees, investigative costs, and litigation expenses to obtain records that should have been produced. Out-of-pocket expenditures caused by a predicate wire-fraud act are injury to property under § 1964(c). Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (§ 1964(c) reaches any injury to business or property flowing from a predicate act); Diaz v. Gates, 420 F.3d 897, 900 (9th Cir. 2005) (economic loss, including costs caused by racketeering acts, constitutes cognizable RICO property injury).

The proximate causation requirement of Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268 (1992), and Hemi Group, LLC v. City of New York, 559 U.S. 1, 9 (2010), is satisfied. Those cases reject RICO standing only where the causal chain runs through multiple independent actors and intervening decisions. Here the chain is a single step: EUSD's April 13, 2026 false denial (the predicate wire-fraud act) directly forced Plaintiff to incur litigation costs to obtain records that production would have displaced. No intervening actor, no independent decision, no attenuated link — the denial is the cause. Hemi Group and Holmes are not

implicated.

**C. The § 1985(3) Conspiracy Claim Is Well-Pleaded.**

EUSD argues no class-based discriminatory animus is alleged. Two protected classes are expressly pleaded. First, Plaintiff is a U.S. citizen of Iranian national origin — a class cognizable under § 1985(3)'s "class-based, invidiously discriminatory animus" requirement. Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). National origin is an established basis for class-based animus under § 1985(3). Padway v. Palches, 665 F.2d 965, 968 (9th Cir. 1982). The enterprise's targeting of Plaintiff for surveillance, harassment, and discrediting is motivated by his identity as an Iranian-American who publicly reported civil rights violations. Second, Plaintiff's minor son is autistic — the enterprise's deprivation of his disability-accommodation supervision is disability-motivated: a child without his diagnosed need for aide assistance would not have been exposed to the same danger.

The agreement element is satisfied by the InfraGard/UAWG/CERT coordination chain alleged at FAC ¶¶ 64AA, 64C, which documents an express coordination agreement among SD-LECC, Carlsbad, and regional community partners — including educational institutions — to share intelligence about surveillance subjects and coordinate "interventions." EUSD is a Carlsbad/Encinitas-area institution within this documented network. Independently, the coordination between EUSD's CPRA response agent and its federal litigation defense counsel — the same firm (Devaney Pate Morris & Cameron) — confirms EUSD's specific participation in the enterprise's concealment agreement. FAC ¶ 57A. The San Diego County School Threat Protocol corroborates the mechanism of that coordination — it documents how intelligence on surveillance subjects moves from SD-LECC through all 42 county school districts, including EUSD. Protocol, § II, p.4, Exhibit Z.17. The agreement element is the InfraGard/UAWG/CERT chain; the Protocol establishes how EUSD received and acted on that enterprise's targeting data. An enterprise-wide pattern of coordinated parallel action by

nominally independent actors toward the same target — Plaintiff and his son — is itself circumstantial evidence of an agreement sufficient to survive a Rule 12(b)(6) motion.

**D. The Disability-Discrimination Claims (§ 504 and ADA Title II) Are Cognizable.**

EUSD does not dispute the son's disability (autism) or that EUSD receives federal financial assistance (§ 504) and is a public entity (ADA Title II). EUSD contests the discrimination and deliberate-indifference elements. Both are adequately pleaded.

Deliberate Indifference: EUSD had actual knowledge of all facts making violation substantially likely:

A threshold note on IEP documentation: Minor Son's IEP records are in EUSD's exclusive custody. EUSD denied Plaintiff's April 13, 2026 CPRA request for those records. Plaintiff therefore pleads the IEP's supervision accommodations on information and belief as to their precise written terms, based on: (1) personal observation of aide assistance provided to Minor Son during the school year; and (2) IDEA's legal mandate that every autistic child receiving special education services have an IEP addressing disability-related needs. 20 U.S.C. § 1414(d). A defendant cannot obstruct production of the records that would prove its own violation and then challenge the sufficiency of the pleading. The precise terms of the IEP will be established in discovery.

An institution that documents a supervision accommodation and then fails to provide it is deliberately indifferent — no prior injury or external threat notice is required when the documented risk is the accommodation itself. Duvall v. County of Kitsap, 260 F.3d 1124, 1138-39 (9th Cir. 2001).

Named Officials With Authority: Duvall requires that an official with authority to remedy the

violation had actual knowledge of the discrimination and failed to act. 260 F.3d at 1138. Three categories of EUSD officials each independently satisfy this requirement:

(a) The son's IEP Case Manager — the EUSD official designated under EUSD's own IEP documentation as responsible for implementing and monitoring the son's IEP, including disability-accommodation supervision. Under IDEA, the local educational agency bears the non-delegable duty to implement each IEP provision. 20 U.S.C. § 1412(a)(4). The IEP Case Manager possessed the IEP document, had legal authority to enforce compliance, and is the named official through whom EUSD discharged — or failed to discharge — that statutory duty. Failure to ensure the May 24, 2024 supervision accommodation was in place is within this official's statutory authority and knowledge.

(b) The Principal of Flora Vista Elementary — the site administrator with authority over recess supervision staffing and enforcement of school-site safety protocols. Cal. Educ. Code § 44807. As site leader, the principal had authority to deploy supervision staff and enforce IEP accommodations on school grounds.

(c) EUSD's Director of Special Education — the district-level official with authority to ensure district-wide compliance with federal disability law obligations (§ 504 and IDEA), including the obligation to implement IEP-mandated accommodations. This official possessed actual knowledge of the son's documented IEP requirements through mandatory district-level IEP review processes.

Each of these officials held authority to remedy the accommodation failure before and after the May 24, 2024 fracture; each failed to act despite actual or constructive knowledge of the need. Discovery will identify each by name; Rule 12(b)(6) requires only that Plaintiff allege an official with authority and knowledge existed — which the IEP records establish.

These allegations are not "mere negligence" — withdrawing a documented disability accommodation is deliberate indifference under Duvall, not negligence.

EUSD argues the failure sounds in negligence rather than disability discrimination and therefore does not satisfy § 504's "solely by reason of" requirement. 29 U.S.C. § 794(a). That argument fails on the facts. The supervision accommodation existed solely because of M.S.'s autism — it was created by the IEP process triggered by his disability diagnosis. A non-disabled student has no IEP, no accommodation, and nothing that can be withdrawn. EUSD cannot withdraw a disability-specific safeguard and then characterize that withdrawal as neutral negligence. The act of failing to implement an accommodation that exists only by reason of disability is, by definition, discriminatory "solely by reason of" that disability. No comparator is required when the deprivation is the accommodation itself.

EUSD's brief mischaracterizes the injury record. EUSD states there were "finger fractures in 2023 and again on June 28, 2024." (MTD at p. 7.) That is incorrect. The FAC alleges one school-site injury: a Salter-Harris II right index finger fracture on May 24, 2024. The June 28, 2024 visit was a follow-up appointment for that same injury — not a second fracture. There was one incident, one injury, one day of missing supervision.

The circumstances of the May 24, 2024 injury corroborate that the supervision failure was not inadvertent. Rady Children's Hospital emergency department records document the chief complaint as "Possibly twisted chain in swing, R index finger injury" — entered by triage nurse Courtney Poletti, RN at 13:36:30 and confirmed in ED provider notes by Trenton L. Peterson, PA-C at 15:09. MRN H2248641, pp. 706, 711 (Adm. 5/24/2024). Rady's own note further states: "History limited by: Developmental delay" — acknowledging that Minor Son's autism impaired his ability to explain the mechanism of injury. The disability-accommodation supervision — including aide assistance Plaintiff personally observed during the school year — the precise safeguard that would have detected and corrected an abnormal equipment condition

before injury — was absent. The mandated supervision was absent and the documented condition caused injury.

As to Plaintiff's own § 504 and ADA claims: EUSD's false CPRA denial constitutes association discrimination under 28 C.F.R. § 35.130(g): a public entity may not deny equal access to an individual because of the known disability of a person with whom that individual is associated. EUSD denied Plaintiff equal access to records about his son's school injury and disability accommodations (Request 1) — records a similarly situated parent of a non-disabled child would have received — because of his son's disability. This is Plaintiff's independent ADA Title II and § 504 claim, regardless of the son's GAL status. To the extent this claim requires more specific pleading, Plaintiff will add it expressly in the TAC; leave to amend is appropriate.

**E. IDEA Exhaustion Is Not Required Under the Fry Futility Exception.**

EUSD invokes Fry v. Napoleon Community Schools, 580 U.S. 154 (2017), arguing IDEA administrative exhaustion is required before this suit. Exhaustion is not required here on three independent grounds.

First — relief unavailable through IDEA: The Supreme Court held in Perez v. Sturgis Public Schools, 598 U.S. 142, 147-51 (2023), that a plaintiff need not exhaust IDEA administrative procedures before seeking relief that IDEA itself cannot provide. The relief Plaintiff seeks against EUSD is RICO treble damages under 18 U.S.C. § 1964(c), enterprise-wide injunctive relief, and compensatory damages for physical injury. IDEA hearing officers cannot award treble damages, issue injunctions against a multi-defendant enterprise, or adjudicate RICO or constitutional violations. Because the relief sought is categorically unavailable through IDEA, exhaustion is not required. Perez, 598 U.S. at 149.

Second — gravamen is not FAPE: Under Fry, exhaustion is required only when the gravamen of the complaint concerns the adequacy of special-education services. Fry, 580 U.S. at 163-65. The gravamen here is not FAPE adequacy — it is (a) physical injury from enterprise-directed deprivation of a safety accommodation; (b) coordinated harassment of Plaintiff at the school campus; and (c) § 1503 records obstruction through a false CPRA response. None of these claims turns on whether the son received an appropriate education; all arise from enterprise-directed physical endangerment and records concealment.

Third — futility of neutral forum: EUSD is a named co-defendant in the enterprise alleged to have directed the targeting of Plaintiff's son. An OAH administrative forum can order IEP compliance from EUSD — but cannot reach the other enterprise defendants (SD-LECC, Carlsbad, DHS, private actors) whose coordinated conduct caused the harm. No administrative order against EUSD alone can stop the enterprise. The forum lacks jurisdiction over the enterprise; exhaustion through it is futile. Fry, 580 U.S. at 166 n.6.

### F. The State-Law Claims Are Properly Pleaded.

1. Bane Act (Cal. Civ. Code § 52.1) To be clear: the Bane Act claim against EUSD does not rest on the threats made at Staybridge Suites, which are attributed to other enterprise members. EUSD's Bane Act liability rests on its own acts: EUSD staff circulating a false psychiatric label (FAC ¶ 73B) and EUSD premises and personnel deployed as harassment vectors during school activities including pickup and drop-off, IEP meetings, and parent-teacher conferences (FAC ¶ 64A).

The Bane Act reaches threats or commission of violent acts to interfere with a person's constitutional or statutory rights. Cal. Civ. Code § 52.1(b). The enterprise's coordinated threat-assessment targeting of Plaintiff — using EUSD premises as a harassment site (proximity-harassment during school activities including pickup and drop-off, IEP meetings,

and parent-teacher conferences) and deploying EUSD staff to circulate a false psychiatric label (FAC ¶ 73B) — constitutes interference with Plaintiff's First Amendment right to petition and Fourteenth Amendment equal protection rights through concerted acts of intimidation and coercion. EUSD's participation in the SD-LECC School Threat Protocol — receiving and acting on surveillance intelligence about Plaintiff without judicial authorization — additionally violates Plaintiff's Fourth Amendment right to be free from unreasonable government surveillance conducted through civilian proxies.

EUSD participated as an active node in the enterprise's coercion infrastructure — deploying its premises and personnel as harassment vectors directed at Plaintiff. Section 52.1 requires specific intent to interfere with a constitutional right by threats, intimidation, or coercion. Cal. Civ. Code § 52.1(b); Reese v. County of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018). That intent is established by the enterprise's documented threat-assessment targeting of Plaintiff at EUSD premises. EUSD's CPRA concealment separately interferes with Plaintiff's litigation rights under the Bane Act.

2. Child Endangerment (Cal. Penal Code § 273a — Negligence Per Se) Plaintiff pleads Cal. Penal Code § 273a not as a standalone private right of action but as the predicate for a negligence-per-se theory under California Evidence Code § 669(a).

Negligence per se under Cal. Evid. Code § 669 requires: statutory violation; proximate causation of the harm the statute was designed to prevent; plaintiff within the protected class. Quiroz v. Seventh Ave. Ctr., 140 Cal. App. 4th 1256, 1285 (2006). All three elements are met: EUSD withdrew the disability-accommodation supervision on May 24, 2024 (§ 273a violation); the resulting Salter-Harris II fracture is precisely the harm § 273a prevents; the minor autistic son is within the protected class.

The standard of § 273a(a) is willfulness (direct infliction) or criminal negligence (indirect harm

via circumstances likely to cause injury). People v. Valdez, 27 Cal. 4th 778, 783 (2002). Criminal negligence is "aggravated, culpable, gross, or reckless" conduct — a departure from the conduct of an ordinarily careful person under the circumstances. Id. Withdrawing a documented supervision accommodation from an autistic child — as alleged in FAC ¶ 42 — is not mere inattention. EUSD possessed actual knowledge of the son's autism diagnosis and his documented supervision requirement; the IEP-conferencing process placed that knowledge in the hands of district officials with authority to act. Those officials chose not to implement the accommodation on May 24, 2024. Conscious disregard of a known, documented risk to a disabled child's physical safety — evidenced by the resulting Salter-Harris II fracture — is "aggravated, culpable" conduct satisfying the criminal-negligence standard under § 273a(a). Valdez, 27 Cal. 4th at 783.

3. IIED — Individual Officer Liability Under § 820 and Entity Liability Under § 815.6; Government Claims Act Compliance EUSD argues (a) Cal. Gov. Code § 815 bars common-law IIED against a public entity and (b) no tort claim was presented to EUSD before suit. Both arguments fail.

Threshold — Ultra Vires Acts and Constitutional Violations Strip § 815 Immunity: California governmental immunity attaches only to acts within a public entity's lawful authority. Immunity does not extend to ultra vires acts — acts outside the scope of the entity's statutory mandate. EUSD's statutory mandate is education. Participating in a DHS-funded fusion-center enterprise to surveil, harass, and discredit a parent; deploying school premises and personnel as enterprise harassment infrastructure; executing a covert psychiatric-label supply chain to plant false mental-health characterizations in a parent's permanent medical history; withdrawing disability accommodations from an autistic child as part of that campaign; and coordinating litigation obstruction through CPRA wire fraud — none of these acts falls within EUSD's lawful educational authority. Acts taken in furtherance of a criminal RICO enterprise are per se ultra vires: a governmental entity that creates or participates in an extrajudicial system

designed to deprive citizens of constitutional rights without lawful authority does not act as a government at all. Moreover, California sovereign immunity cannot defeat Plaintiff's federal claims: the Government Claims Act and § 815 are preempted by federal law as to claims arising under RICO (18 U.S.C. § 1964(c)), § 1985(3), § 504, and ADA Title II. Felder v. Casey, 487 U.S. 131, 138 (1988). § 815 immunity is therefore unavailable as to any of those claims as a matter of federal supremacy, independent of ultra vires analysis.

Track One — Individual Officer Liability Under Cal. Gov. Code § 820: Section 815 public-entity immunity does not apply to individual public employees. Cal. Gov. Code § 820(a): "Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person." Section 815's immunity is entity-only; EUSD's individual officials bear personal IIED liability independent of any § 815 defense.

EUSD officials who (1) withdrew disability-accommodation supervision from an autistic child on May 24, 2024; and (2) failed to report the resulting Salter-Harris II fracture under CANRA — acted with reckless disregard of probable severe emotional distress. Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009). Withdrawing supervision from a disabled child and then concealing the resulting injury is conduct no reasonable person would dispute as outrageous.

Track Two — Entity Liability Under Cal. Gov. Code § 815.6: Where a statute imposes a mandatory duty on a public entity for the protection of a particular class of persons, the entity is liable for injury proximately caused by failure to discharge that duty. Cal. Gov. Code § 815.6. Two independent § 815.6 bases apply here, each with a direct causal chain to Plaintiff's and the son's distress:

(i) Cal. Educ. Code § 44807 — mandatory supervision of students on school grounds during recess. EUSD's failure to enforce the son's disability-accommodation supervision on May 24,

2024 directly caused the Salter-Harris II fracture of his right index finger. The fracture, the son's pain, and Plaintiff's discovery of an unreported injury to his autistic child while facing a documented enterprise harassment campaign caused severe and documented emotional distress. The causal chain from § 44807 breach to distress is direct and foreseeable. Alejo v. City of Alhambra, 75 Cal. App. 4th 1180 (1999).

(ii) CANRA (Cal. Penal Code §§ 11165.7, 11166) + federal disability law (ADA Title II; § 504): EUSD personnel are mandatory reporters; their ministerial reporting duty is non-discretionary. Concealment of the fracture — no police report, no CPS referral — prolonged Plaintiff's distress by eliminating any official inquiry. Cal. Gov. Code § 815.6; Alejo, 75 Cal. App. 4th at 1180.

As to the Government Claims Act: The GCA does not bar any claim here on three independent grounds.

First, Felder v. Casey, 487 U.S. 131, 138 (1988): the GCA is preempted by federal law as to federal civil-rights claims — RICO (18 U.S.C. § 1964(c)), ADA Title II, § 504, and § 1985. No GCA compliance is required for those claims.

Second, Plaintiff presented a written Government Tort Claim to EUSD by U.S. Certified Mail on July 3, 2026. As to Plaintiff's own claims: the CPRA denial of April 13, 2026 — a separately-accruing enterprise act — falls squarely within the six-month window. Cal. Gov. Code § 911.2(a). As to claims arising from the May 24, 2024 fracture: Plaintiff did not discover EUSD's concealment of the fracture records — and therefore could not know of his claims against EUSD as an enterprise actor — until the April 13, 2026 CPRA denial revealed the systematic suppression. Under the delayed-discovery rule, accrual runs from the date Plaintiff discovered, or reasonably should have discovered, the concealed facts. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005). The July 3, 2026 claim was filed within six

months of that discovery. Aryeh v. Canon Business Solutions, Inc., 55 Cal. 4th 1185, 1198 (2013) (each new enterprise act constitutes fresh accrual). The claim will be deemed rejected by operation of law on August 17, 2026 (Cal. Gov. Code § 912.4(c)) — before this Court rules on EUSD's motion — making GCA compliance complete before any ruling on this opposition. To the extent the TAC requires more specific GCA compliance allegations, the correct remedy is leave to amend, not dismissal with prejudice. State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1243-45 (2004); Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000). The TAC will allege full GCA compliance. EUSD cites D.V. v. City of Sunnyvale, 65 F. Supp. 3d 782, 786 (N.D. Cal. 2014), for the proposition that the complaint must plead GCA compliance. D.V. does not require dismissal with prejudice where compliance occurred post-filing — it requires leave to amend to add the allegation, which is precisely the remedy Bodde mandates and Plaintiff requests here.

Third, as to the minor son's claims: his federal claims (RICO, ADA, § 504, § 1985) are not subject to the GCA under Felder. As to state-law claims, the Legislature provides mandatory late-claim relief for minor claimants. Cal. Gov. Code § 911.6(b)(2). The son's claims cannot be barred by any GCA deadline.

**G. This Action Is Not Duplicative of Case No. 3:25-cv-02934-AGS-MSB.**

EUSD argues this action should be dismissed or stayed as duplicative of the pending §1983 case before Judge Schopler. The two cases are not duplicative as to EUSD. The AGS-MSB case asserts §1983 claims (color-of-law theory; state action required). This case asserts RICO claims under 18 U.S.C. § 1964(c) (criminal enterprise theory; no state-action requirement) — a legally distinct cause of action unavailable in AGS-MSB. The specific EUSD predicate acts alleged here — the April 13, 2026 CPRA wire fraud (§ 1343) and coordinated litigation obstruction (§ 1503) — are not claims in the AGS-MSB SAC. The relief sought — RICO treble damages under § 1964(c) — is categorically unavailable in the §1983 action. Adams v.

Cal. Dep't of Health Servs., 487 F.3d 684, 689 (9th Cir. 2007) (duplicativeness requires same parties, same claims, same relief). EUSD's own authority confirms this result: Serlin v. Arthur Andersen & Co., 3 F.3d 221, 223 (7th Cir. 1993), holds that dismissal for duplicativeness requires the two actions to "involve the same parties and the same issues" — RICO treble damages alone, unavailable in the §1983 action, defeats that test.

In any event, to the extent any residual overlap is found, the Third Amended Complaint will eliminate it — the correct remedy is leave to amend, not dismissal.

**H. EUSD's Motion to Strike CPRA Allegations Fails — The FAC Is a Rule 15(a)** Amendment, Not a Rule 15(d) Supplement.

EUSD moves to strike the CPRA allegations (FAC ¶ 57A) as post-complaint events that required leave of court under FRCP 15(d). This argument rests on a fundamental procedural mischaracterization.

The First Amended Complaint is not a supplemental pleading governed by Rule 15(d) — it is an amendment under Rule 15(a). Leave to file the FAC was previously granted by this Court. An amendment under Rule 15(a) is a complete superseding pleading that incorporates all facts known as of the filing date, including facts that arose after the original complaint. A plaintiff has no obligation to segregate pre-complaint facts from post-complaint facts in an amended complaint. The CPRA request was filed February 3, 2026; EUSD's response was received April 13, 2026; the FAC post-dates both events. These are not "supplemental" matters — they are part of the amended pleading's factual record as of its filing date.

Rule 15(d) applies only to supplements added to an existing complaint — not to allegations incorporated into a superseding amended complaint. FRCP 15(d). Because the FAC is an amendment and not a supplement, no Rule 15(d) leave was required, and the motion to strike

has no procedural basis.

The CPRA allegations are also substantively integral to the RICO claims — they establish a predicate wire-fraud act, corroborate the enterprise's obstruction pattern, and provide independent documentary evidence of EUSD's coordinated role. Striking them would prejudice Plaintiff by eliminating independently-cognizable predicate acts from the pleadings.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. DENY the motion to dismiss as to all RICO claims, § 1985, § 504, ADA Title II, Bane Act, negligence per se (Cal. Penal Code § 273a / Cal. Evid. Code § 669(a)), and IIED claims; DENY any argument that IDEA exhaustion bars the § 504 and ADA claims;

2. DENY the motion to strike EUSD's CPRA allegations;

3. DENY the motion to dismiss based on duplicativeness; if any overlap is found, the Third Amended Complaint will eliminate it — the correct remedy is leave to amend, not dismissal;

4. As to the minor son's claims, GRANT appointment of Plaintiff as guardian ad litem under FRCP 17(c)(2) and, concurrently, appoint pro bono counsel for the minor under 28 U.S.C. § 1915(e)(1);

5. If any pleading defect is found, DISMISS WITHOUT PREJUDICE with leave to file a Third Amended Complaint; and
6. In no event DISMISS WITH PREJUDICE any claim of a minor autistic child who has

sustained documented physical injuries in EUSD's care, before a single document has been produced from the institution holding his educational records.

Dismissal with prejudice would permanently extinguish the civil-rights and safety claims of a minor autistic child — a U.S. citizen with documented physical injuries sustained while in the District's care — before any counsel has appeared on his behalf and before a single piece of evidence has been produced. The law requires that leave to amend be freely given; the equities compel it.

Respectfully submitted,

Dated: August 14, 2026

______________________________

ALIREZA SALEMI
Plaintiff, Pro Se
2735 Palomar Airport Road
Carlsbad, CA 92009
(720) 208-8755
alireza.salemi@udo.edu

**CERTIFICATE OF SERVICE**

I certify that on August 14, 2026, I served the foregoing Opposition and the simultaneously filed Motion for Appointment of Guardian Ad Litem on all counsel of record by the Court's CM/ECF system and/or by U.S. Mail:

William C. Pate / Devaney Pate Morris & Cameron, LLP
402 W. Broadway, Suite 1300, San Diego, CA 92101
Counsel for Encinitas Union School District

Nathan A. Oyster / Sydney M. Gronroos / Burke Williams & Sorensen LLP
444 South Flower Street, Suite 2400, Los Angeles, CA 90071
Counsel for City of Carlsbad

Jennifer M. Martin / Michael Reiter / San Diego City Attorney
1200 Third Avenue, Suite 1100, San Diego, CA 92101
Counsel for City of San Diego

Glen Dorgan / U.S. Attorney's Office, Civil Division
880 Front Street, Room 6293, San Diego, CA 92101
Counsel for DHS and FBI



ALIREZA SALEMI
Plaintiff, Pro Se

Christina C. Mihelich
Direct: (619) 354-5029
cmihelich@dpmclaw.com

DPMC | Devaney Pate Morris & Cameron LLP

April 13, 2026

*VIA EMAIL & USPS*
Alireza Salemi
2735 Palomar Airport Rd.
Carlsbad, CA 92009
720-208-8755
Alireza.salemi@udo.edu

Re: Public Records Act Request Dated February 3, 2026

Dear Mr. Salemi:

This is a follow-up to the response dated March 5, 2026, on behalf of the Encinitas Union School District ("EUSD" or "District") to the above-referenced request under the California Public Records Act ("CPRA") (Gov. Code § 7920.000 et seq.).

Attached, please find additional documents responsive to Request No. 2. These represent all documents identified by the District as being within the scope of these requests at this time. If additional records become available, we will provide them as soon as practicable.

With respect to Request No. 1, the District has determined it does not possess any responsive records. Because your son no longer attends a school within the District, the records pertaining to him are no longer retained and are therefore unavailable through EUSD. All student records pertaining to your son were transferred to the school district where he attended following enrollment in EUSD.

The District has also determined no responsive records exist with respect to Request No. 4. The District is not aware of and does not have correspondence or documents referencing UASI (Urban Area Security Initiative), DHS (Department of Homeland Security), HSI (Homeland Security Investigations), fusion center, or law-enforcement liaisons "on District property" from January 1, 2020 to present.

Finally, with respect to request No. 3, the District is neither aware of nor possesses any record of "stipends, reimbursements, or independent contractor fees" specifically for "campus security," "safety monitoring," or "supervision" to non-certified staff, parents, or third-party vendors at Flora Vista Elementary from January 1, 2020 to present.

///
///

Please do not hesitate to contact me if you have any questions regarding the foregoing information.

Very truly yours,

DEVANEY PATE MORRIS & CAMERON, LLP

Christina C. Mihelich
Associate Attorney

CCM/sb

## II. SCHOOL RESPONSE

Include the following prevention, mitigation, response, and recovery strategies in Comprehensive School Safety Plans.

**Prevention Strategies**

1. Designate a district safety coordinator or designee to participate in quarterly coordination meetings with county stakeholders including but not limited to San Diego County Office of Education (SDCOE), law enforcement representatives, Psychiatric Emergency Response Team (PERT), Office of Emergency Services, and the San Diego County District Attorney's Office.

2. To facilitate access to student information and designated emergency contacts in the event of targeted school violence, utilize the *school emergency contact application* which consists of three major interfaces:

   - **District users** (namely the designee responsible for managing system and/or emergency contacts for the district) access the first interface which allows the district to provide three after-hours emergency contacts for each school within the district, as well as the district itself. These contacts should only be used in the event of an emergency when school is not in session.
     - Each district should define the responsibilities of the after-hours contacts.
   - **Law enforcement agencies and other emergency personnel** (i.e., PERT) access the second interface which provides emergency contact information during critical after-hours, weekends, and holidays.
   - **Individual school users** access the third interface that enables schools to provide law enforcement the ability to contact individual school officials during critical after-hour emergency situations.

3. Adopt an anonymous student reporting system and application and implement the following steps:

   - Include the anonymous reporting website and phone number on the back of all student ID cards.
   - Feature a link to the anonymous reporting site prominently on the school districts website's homepage and on each school website's homepage.
   - Install the anonymous reporting app on all school-issued devices.
   - Promote the use of anonymous reporting applications on an ongoing basis and in all communications related to school safety.

4. Establish procedures to document events that could aid a threat assessment team in identifying potential warning signs: