Alireza Salemi
2735 Palomar Airport Road, Carlsbad, CA 92009
(720) 208-8755 | alireza.salemi@udo.edu
Plaintiff, Pro Se

FILED
AUG 24 2026
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DDF DEPUTY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

ALIREZA SALEMI,

Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,

Defendants.

Case No. 3:25-cv-03387-LL-GC

**PLAINTIFF'S OPPOSITION TO DEFENDANTS CARLSBAD HOSPITALITY LLC / PACIFICA HOSTS, INC.'S MOTION TO** DISMISS (ECF No. 58)

Judge Linda Lopez
Magistrate Judge Cabrera
Courtroom: 14B

## I. INTRODUCTION

Defendant Carlsbad Hospitality LLC ("Hotel") moves to dismiss under Rule 12(b)(6), framing Plaintiff's claims as resting on nothing more than a mishandled air-conditioning vent. That framing inverts the FAC.

The FAC alleges that Hotel management and staff, acting as operational nodes of a coordinated

enterprise, subjected Plaintiff to a continuous series of environmental assaults at his only available residence while he was displaced from his home — assaults that were documented by audio recording, photographs, and video; that repeated across multiple rooms and multiple months; that were systematically minimized by management with scripted false responses transmitted through IHG's interstate communications network; and that were accompanied by face-to-face death threats delivered in the hotel lobby. The General Manager's directive — "Do whatever makes him happy" — issued after management had already relocated Plaintiff once without investigating the cause, is not the behavior of a hotel addressing a guest complaint. It is the behavior of a participant that knows what is occurring and seeks to contain disclosure.

Beyond these environmental assaults, Hotel coordinated and directed daily enterprise-consistent harassment techniques — including but not limited to timed intercepts, pre-positioning, and relay patterns — throughout both of Plaintiff's stays, using its staff and premises in the same coordinated manner documented at Plaintiff's residence, workplace, and other locations.

Hotel argues that the FAC engages in impermissible collective pleading by attributing conduct to "Defendants" without differentiation. That argument fails on the facts. The FAC specifically attributes to Hotel: its staff's daily execution of enterprise-consistent harassment techniques — including pre-positioning, timed intercepts, and relay patterns — throughout the premises (¶¶45–49); General Manager Geoff's suppression directive — "do whatever makes him happy" — issued upon receiving Plaintiff's escalation report (¶47); and management's transmission of false deflection scripts through IHG's named complaint file (¶¶45–49, IHG Case No. 10580522173). Named actors, named platform, named dates. This is not "everyone did everything" pleading.

Hotel's motion presents nineteen separate arguments for dismissal. None of them, separately or together, justify dismissal of a pro se civil RICO complaint that pleads documented assaults,

multiple incidents, a documented enterprise, valid predicates, and concrete economic injury.

Hotel's motion asserts Plaintiff "erroneously sued" the wrong entity. It does not survive its own motion: Hotel's counsel requested the extension "on behalf of Staybridge Suites Carlsbad"; the motion uses three different entity names (caption, counsel ID, conclusion); Hotel management corresponded with Plaintiff from @pacificahost.com under "Pacifica Host Hotels" signatures (Ex. Z.14); and Pacifica Hosts' in-house counsel negotiated on behalf of Carlsbad Hospitality LLC — confirming unified control. California Secretary of State records confirm Carlsbad Hospitality LLC shares the identical address, registered agent, and personnel as Pacifica Hosts, Inc. Plaintiff sued the entity that housed him, harassed him, and corresponded with him. Any misnomer is not a basis for dismissal.

## II. LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court accepts all well-pleaded allegations as true and construes them in the light most favorable to Plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint need only plead sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers" and must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). A court must "construe the pleadings liberally and afford [plaintiff] the benefit of any doubt." Karim-Panahi v. LAPD, 839 F.2d 621, 623 (9th Cir. 1988). Dismissal of a pro se complaint without leave to amend is proper only when "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Schucker v. Rockwood, 846 F.2d 1202, 1203–04 (9th Cir. 1988).

## III. ARGUMENT

### A. PLAINTIFF HAS ADEQUATELY PLED RICO STANDING — HOTEL'S ACTS

CAUSED CONCRETE INJURY TO BUSINESS OR PROPERTY 18 U.S.C. § 1964(c) requires injury to "business or property." Hotel argues Plaintiff's injuries are purely personal. Hotel is wrong on the facts and the law.

1. Displacement Costs Are Injury to "Business or Property" The Supreme Court clarified the scope of § 1964(c) in Medical Marijuana, Inc. v. Horn, 604 U.S. 593 (2025). Horn held that there is no categorical personal-injury bar to civil RICO standing — "a plaintiff can seek damages for business or property loss regardless of whether the loss resulted from a personal injury." Id. at 598.

Plaintiff's FAC alleges he has been displaced from his home at 2744 Levante Street, Carlsbad, and is compelled to reside at Staybridge Suites Carlsbad at his own expense — a direct, quantifiable out-of- pocket economic loss. FAC ¶66 (property damage and loss of earning capacity). Hotel's enterprise conduct extended and worsened that displacement: the environmental assaults described in FAC ¶¶45–49 prevented Plaintiff from inhabiting his hotel rooms safely, requiring repeated relocations and causing the displacement to persist.

The cost of forced displacement to a hotel, at Plaintiff's own expense, is not personal injury — it is economic harm to Plaintiff's financial position. It is recoverable under RICO. See Diaz v. Gates, 420 F.3d 897 (9th Cir. 2005) (en banc) (lost wages and out-of-pocket costs = RICO property injury). The $119/night confirmed rate spans Plaintiff's current displacement (November 2024 through present); the enterprise's hotel conduct also extended across Plaintiff's first displacement (April–September 2020), representing quantifiable economic harm across both periods — not speculative, not personal.

2. Property Damage Is Pled FAC ¶66 separately alleges property damage arising from the enterprise's conduct. Hotel's motion ignores this allegation. At the pleading stage, a claim of property damage tied to documented predicate acts satisfies § 1964(c). Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1527 (9th Cir. 1995).

3. Dental and Medical Costs Flowing from Hotel Assault Are Recoverable FAC ¶66 alleges permanent dental and gum damage requiring surgical tissue grafts, and ongoing medical expenses. To the extent Hotel's chemical exposure acts caused or worsened documented physical injuries, the out-of-pocket medical costs are concrete economic losses, not "personal injuries" in the § 1964(c) sense. Horn, 604 U.S. at 598 (no categorical personal-injury bar to § 1964(c) standing).

**B. THE FAC PLEADS VALID RICO PREDICATES ATTRIBUTABLE TO THE HOTEL**

Hotel argues FAC assigns it only two predicates — Cal. PC § 245(a)(1) and 18 U.S.C. § 1503 — and that neither qualifies. Hotel is wrong.

1. 18 U.S.C. § 1503 — Obstruction of Justice § 1503 prohibits corruptly endeavoring to influence, obstruct, or impede the due administration of justice. FAC ¶49 alleges Hotel staff engaged in a coordinated pattern of minimization — attributing documented physical symptoms to "allergies," relocating Plaintiff without investigation, and transmitting false deflection scripts — in response to Plaintiff's reports of predicate criminal conduct at the hotel.

Hotel argues calling a vent "normal" cannot obstruct a "judicial proceeding." But the § 1503 predicate is Hotel's ongoing obstruction — not the underlying environmental assaults. Hotel's coordinated evidence-suppression campaign — transmitting false deflection scripts through IHG Case No. 10580522173 (November 23, 2025), denying Plaintiff's documented reports, and

failing to preserve maintenance logs, key-card records, and IHG complaint records — constituted an ongoing course of obstructive conduct. That campaign continued after Plaintiff's civil rights action (3:25-cv-02934-AGS-MSB) was filed October 27, 2025, and after this RICO action was filed December 1, 2025. Hotel's deflection scripts divide into two temporal categories, each covered by a separate predicate. Pre-filing scripts (June through October 26, 2025) — transmitted before any federal proceeding existed — constitute wire fraud under 18 U.S.C. § 1343 as set forth below. Post-filing scripts (October 27, 2025 onward) — transmitted after Plaintiff's civil rights action (3:25-cv-02934) was filed and during the pendency of two federal proceedings in this District — constitute obstruction under § 1503. Both temporal periods are covered by valid RICO predicates. The underlying environmental assaults are separately covered by Cal. PC § 245(a)(1).

2. 18 U.S.C. § 1343 — Wire Fraud Pro se complaints must be construed to identify any plausible legal theory supported by the facts, even if not cited by name. Bernhardt v. Los Angeles Cty., 339 F.3d 920, 925 (9th Cir. 2003). FAC ¶¶16, 45–49 allege that Hotel management transmitted variant deflection scripts ("allergies"; "not an issue"; "normal") through IHG's interstate electronic complaint and communications system — a centralized platform processing complaints across 6,000+ hotels in 100+ countries. FAC ¶16.

IHG's complaint system operates as a centralized electronic case management platform: complaints are routed through IHG's interstate servers, assigned tracking numbers (here, Case No. 10580522173), and hotel management responses are logged and transmitted back through the same interstate infrastructure. Hotel's deflection scripts were not merely face-to-face statements — they were Hotel management's responses entered into an active IHG case file and transmitted through IHG's interstate electronic network. Each such response is a wire transmission under 18 U.S.C. § 1343.

Each transmission of a false representation across state lines through IHG's system constitutes

wire fraud under 18 U.S.C. § 1343: (1) a scheme to defraud — Hotel's deflection scripts concealed material habitability and safety hazards from Plaintiff, prolonging his paid stay and generating continued room revenue while suppressing reports that would have prompted Plaintiff to seek alternative housing or demand remediation; (2) use of wire communications in interstate commerce (IHG's centralized system); (3) for the purpose of executing the scheme. Wire fraud IS enumerated in 18 U.S.C. § 1961(1)(B). Hotel's deflection scripts via IHG's network are a valid predicate.

Rule 9(b)'s particularity requirement is satisfied. FAC ¶¶16, 45–49 identify: the time (June through December 2025, across multiple IHG complaint interactions); the place (IHG's centralized interstate electronic communications system, FAC ¶16); the specific content (variant deflection scripts: "allergies," "not an issue," "normal," FAC ¶¶45–49); and the parties (Hotel management and maintenance staff, acting through IHG Case No. 10580522173, FAC ¶¶45–49). Hotel's assertion that "the FAC attributes no fraudulent statement of any kind to the Hotel" is contradicted by its own recitation of those facts at pages 2–3 of its motion. Rule 9(b) demands no more specificity than that which the FAC already provides.

3. Cal. PC § 245(a)(1) — State Felony Predicate 18 U.S.C. § 1961(1)(A) includes "any act or threat involving ... extortion ... which is chargeable under State law and punishable by imprisonment for more than one year." Cal. PC § 245(a)(1) (assault with a deadly weapon or by means likely to produce great bodily injury) is punishable by up to 4 years in state prison. Cal. PC §§ 245(a)(1), 1170(h). It is therefore a § 1961(1)(A) state-law predicate.

Hotel claims § 245(a)(1) is not on the § 1961(1) list. But Hotel reads only § 1961(1)(B) (federal offenses). § 1961(1)(A) separately enumerates state-law offenses punishable by more than one year. Cal. PC § 245(a)(1) qualifies. FAC ¶49 ("predicate acts of assault and obstruction").

**C. THE ENTERPRISE AND PATTERN ARE ADEQUATELY PLED**

Hotel argues FAC fails to plead a plausible enterprise or RICO pattern involving Hotel. This misreads the pleading standard.

1. Enterprise An association-in-fact enterprise requires (a) a common purpose, (b) relationships among associates, and (c) sufficient longevity. Boyle v. United States, 556 U.S. 938, 946 (2009). No formal structure, membership list, or written agreement is required. Id. at 948.

FAC ¶¶11–14, 59–64 allege the enterprise in detail: SD-LECC fusion center, DHS UASI funding, City of Carlsbad CERT program, civilian Community Partners — a documented regional network. Hotel's alleged role as an enterprise node is not a bare conclusion. FAC ¶¶16, 45–50, 60–62 and as further detailed herein allege:

(a) Hotel coordinated and directed daily enterprise-consistent harassment techniques — including but not limited to timed intercepts, pre-positioning, path narrowing, multi-stage breakfast sequences, and relay patterns — using its staff and premises in the same coordinated manner documented at Plaintiff's residence and workplace;

(b) Hotel workers and hotel actors executed enterprise non-verbal signals (index-finger-down, hands-on-hips, circle gestures) identical to signals documented at other enterprise-directed locations, with some retreating to hotel-only areas;

(c) The same hotel actors reappeared sequentially at multiple locations within single mornings in a relay pattern, frequently after periods of empty/quiet contrast followed by exact timed activations and adaptive clearing only after Plaintiff waited;

(d) General Manager Geoff responded to Plaintiff's escalation with "do whatever makes him

happy" — containing, not investigating.

These are specific factual allegations, not labels. They satisfy Boyle's requirements at the pleading stage.

2. Pattern A RICO pattern requires at least two predicate acts with "continuity plus relationship." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989). "Relationship" is established when acts have the same or similar purposes, results, participants, victims, or methods. Id.

FAC alleges at least five hotel-specific incidents across multiple months: (i) Summer through November 23, 2025 towel/bedding irritant (IHG Case No. 10580522173); (ii) October–December 2025 fiberglass/HVAC assault (Rooms 206 and 306); (iii) December 25, 2025 — kitchen appliances (refrigerator and oven) deliberately disabled; maintenance returned alone after Plaintiff left and restored power in under thirty seconds without tools or inspection, demonstrating pre-planned sabotage timed for Christmas Day with minimal hotel staffing (FAC ¶48); (iv) October 16, 2025 — whole-body burning after eating lunch in Plaintiff's hotel room while Plaintiff's recording device had been turned off (FAC ¶33); (v) December 2, 2025 — sudden onset of dark discoloration of veins in both arms, severe joint burning, and pins-and-needles sensations after time in the Staybridge Suites lobby (FAC ¶36). Each incident targeted Plaintiff at his sole displacement residence.

Hotel management implemented a blanket suppression policy across the entire displacement period: every report Plaintiff made — verbal, through IHG Case No. 10580522173, and through CPD — was met with the same enterprise-directed response: minimize, deflect, deny. The variant deflection scripts ("allergies"; "not an issue"; "normal") were not improvised responses to individual incidents. They were the enterprise's coordinated operational security function, executed through Hotel management. All five incidents were covered by that policy.

Five documented incidents, spanning multiple months, by the same actors, against the same victim, using the same methods (environmental exposure + physical sabotage + denial), constitute "continuity plus relationship." H.J. Inc., 492 U.S. at 242.

Hotel staff's daily participation in the Enterprise's harassment pattern extends far beyond the five environmental incidents. As alleged in FAC ¶¶45–49 and further detailed herein, hotel workers and hotel actors regularly pre-positioned with cleaning carts or as stationary individuals at Plaintiff's room door, elevator corridor, and hallway turns, timed precisely to Plaintiff's exits and corner turns; executed multi-stage elevator, hallway, and breakfast-room intercepts involving timed pop-ups, path narrowing and tunnel formations, parallel walking with speed matching, aborted walks when Plaintiff paused, and layered exit pressure; formed repeated triangle and group blocks at the front desk and lobby in otherwise empty spaces; and employed Enterprise non-verbal signals, occasional verbal cues, and phone props while the same actors reappeared sequentially at multiple locations within single mornings in a relay pattern. These were not isolated acts — they were daily, observed, and consistent with the Enterprise's documented techniques at Plaintiff's residence, workplace, and other locations. The precision of the positioning (pre-positioning before Plaintiff's door opened or before Plaintiff turned a corner, adaptive clearing only after Plaintiff waited, and consistent empty/quiet contrast followed by exact timed activations) is inconsistent with coincidence and reflects, on information and belief, coordinated advance notice of Plaintiff's movements through a mechanism to be established in discovery.

3. Hotel Participated in Operation or Management of the Enterprise Under Reves v. Ernst & Young, 507 U.S. 170, 179 (1993), a defendant must have participated "in the operation or management of the enterprise itself." The Ninth Circuit reads this standard broadly: participation "at some part in the direction of the affairs of the enterprise" suffices. Walter v. Drayson, 538 F.3d 1244, 1248 (9th Cir. 2008). A defendant need not be at the top of the enterprise hierarchy — participation in directing even a component of the enterprise's affairs

satisfies Reves. Id.

Hotel meets the Reves standard. FAC ¶¶45–49 allege that hotel workers and hotel actors executed enterprise-consistent harassment techniques daily throughout the premises — the same convergence-staging and choke-point techniques documented at Plaintiff's residence, workplace, and other locations. FAC ¶47 further alleges that General Manager Geoff, upon receiving Plaintiff's escalation report, issued the directive "Do whatever makes him happy." On information and belief, this was a management-level decision to contain the complaint rather than investigate the coordinated conduct occurring on hotel property. Hotel did not merely provide a venue or transact business with enterprise members; its management directed subordinates in the continued execution of the enterprise's harassment pattern at the hotel location. That constitutes participation in the operation of the enterprise's affairs under Reves.

Moreover, when Plaintiff reported to hotel Manager Jeff that hotel towels were burning his body upon use, Jeff brushed off the complaint without investigation. On information and belief, this was a management-level decision to contain rather than investigate evidence of possible environmental assault occurring on hotel property, consistent with the Enterprise's documented deflection pattern.

The documentary evidence set forth in Section G independently confirms Hotel's enterprise participation under Reves: Hotel's General Manager serves on a City-contracted governance board administering hotel assessment funds (Ex. 11–12); the City Attorney invoked law enforcement privilege under Evidence Code §1040 to shield records generated at the hotel (Ex. Z.12) — a privilege reserved for official government information; and the City first claimed "voluminous" records responsive to a hotel-vendor CPRA request, then declared zero five days later (Ex. Z.4a–b). A hotel whose own records are shielded by the City Attorney as law enforcement material is not a passive venue — it is an operational node whose management directed enterprise affairs within its premises. Reves, 507 U.S. at 179.

## D. PROXIMATE CAUSATION IS ADEQUATELY PLED

Hotel argues its conduct is too remote to satisfy § 1964(c)'s "by reason of" requirement. Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268 (1992). But Holmes requires a "direct relation between the injury asserted and the injurious conduct alleged." Id. at 268.

The causal chain here is direct: (1) Hotel's enterprise conduct (environmental assaults) made Plaintiff's displacement residence unsafe and uninhabitable; (2) Plaintiff, unable to return home due to the enterprise's campaign, and unable to inhabit his hotel room safely due to Hotel's assaults, incurred extended displacement costs; (3) Hotel's management, acting in concert with enterprise members, transmitted false deflection scripts concealing the assaults, causing Plaintiff to remain in a compromised environment longer than he would have otherwise.

Hotel's causal contribution to Plaintiff's extended displacement costs is direct and non-speculative: Hotel received Plaintiff's documented reports of unsafe conditions at his sole displacement residence, denied those reports, relocated Plaintiff to an adjacent room without investigating the cause, and the identical conditions recurred. That specific sequence — actual notice, denial, inadequate response, recurrence — directly prolonged Plaintiff's exposure and the duration of displacement costs. Hotel was not a passive bystander. It was the enterprise's operational node at Plaintiff's displacement address, executing the enterprise's suppression function against the person it was housing.

This is not a remote causal chain requiring speculation about intervening actors. Hotel is alleged to have directly conducted the assaults. Displacement costs flow directly from those assaults.

## E. THE RICO CONSPIRACY CLAIM (§ 1962(d)) SURVIVES

Hotel argues the § 1962(d) conspiracy claim fails with the substantive claim. Because the substantive § 1962(c) claim survives as set forth above, the conspiracy claim survives as well. Even independently: an enterprise "agreement" under § 1962(d) may be inferred from the defendants' acts. Oki Semiconductor v. Wells Fargo Bank, 298 F.3d 768, 775 (9th Cir. 2002). IHG's documented "Information Sharing" mandate integrating hotels into the "Whole Community" homeland-security network (FAC ¶60A), combined with the coordinated conduct described above, plausibly alleges Hotel's agreement to participate in the enterprise.

**F. § 1985(3) — PLAINTIFF IS A MEMBER OF A PROTECTED CLASS**

Hotel argues "soft target" is not a § 1985(3) protected class. Hotel misreads the FAC, which pleads national-origin targeting of Plaintiff. FAC ¶¶4, 25, 50. National origin is a recognized protected class under § 1985(3). Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993); Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (protected class must be suspect or quasi-suspect classification, or congressionally protected). National origin is a suspect classification under the Equal Protection Clause and is protected by Title VII.

The "soft target" language in FAC ¶4 describes the Enterprise's operational framing of Plaintiff — it is the pretext the enterprise uses, not the protected characteristic the Court must assess. The enterprise targeted Plaintiff as an Iranian-American perceived as a "threat" under UASI Goal 5 profiling. The class-based animus is Iranian national origin. Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).

The death threats delivered at the hotel reflect precisely the national- origin animus § 1985(3) was designed to address. One individual delivered a direct death threat against Plaintiff's minor son; a second stated, "We don't kill terrorists — we just torture them." FAC ¶50. That "terrorist" framing is national-origin-coded on its face, and read with the enterprise's profiling

of Plaintiff as a "soft target" threat (FAC ¶4), it supplies the class-based animus Griffin and Bray require. Both speakers acted as members of the enterprise in which Hotel participates, and their threats were delivered on Hotel premises during the enterprise's ongoing harassment of Plaintiff. FAC ¶¶50, 64A.

Hotel separately argues that §1985(3) requires a plausible agreement. Two separate individuals delivered national-origin-coded death threats on Hotel's premises, invoking "terrorists" and threatening the killing of Plaintiff's minor son. FAC ¶50. Their shared script and timing support an inference of agreement. These individuals are alleged members of the same enterprise in which Hotel participates. That enterprise members executed class-based threats at Hotel's premises — where Hotel staff were also executing the enterprise's daily harassment pattern — plausibly alleges Hotel's participation in a §1985(3) conspiracy. Whether that participation rises to an agreement is a factual question for discovery.

### G. § 1983 — STATE ACTION IS ADEQUATELY PLED

Hotel argues it is a private business incapable of § 1983 liability. A private actor may be liable under § 1983 when it acts jointly with state officials through an agreement or meeting of minds to violate constitutional rights, plus substantial cooperation. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Franklin v. Fox, 312 F.3d 423, 445 (9th Cir. 2002).

FAC ¶¶59–62 allege Hotel's integration into the SD-LECC/UASI network as a "Whole Community" partner. FAC ¶60A alleges the City confirmed no official off-duty police contracts exist between CPD and the hotel, yet CPD generated law enforcement records at the hotel premises — indicating coordination through informal channels. FAC ¶50 alleges two individuals delivered scripted death threats in the hotel lobby — a direct death threat against Plaintiff's minor son and the statement "We don't kill terrorists — we just torture them" — made on Hotel premises during the enterprise's daily harassment pattern. Whether the specific

degree of coordination constitutes joint action under § 1983 is a factual question for discovery, not resolution on a Rule 12(b)(6) motion. Mendocino Envtl. Ctr. v. Mendocino Cty., 192 F.3d 1283, 1301 (9th Cir. 1999).

Three additional facts, now of record, independently establish the City-hotel nexus Hotel's motion ignores:

First, Hotel's General Manager, Geoffrey Parkford, serves as a Director of Visit Carlsbad — the City of Carlsbad's contracted administrator of the mandatory Tourism Business Improvement District. Visit Carlsbad collects and administers hotel assessment funds under direct City of Carlsbad City Council oversight and submits annual reports to the City Council. Parkford's simultaneous role as Hotel operator and City- appointed district director is not a coincidence of civic volunteerism — it is the structural mechanism through which Carlsbad hotel operators are embedded in City governance. (Ex. 11 [Visit Carlsbad Board of Directors]; Ex. 12 [Visit Carlsbad Board Meeting Materials, Apr. 24, 2026]; judicially noticeable as public government records. Fed. R. Evid. 201.) Second, and most directly: on March 30, 2026, Plaintiff served a CPRA request on the City of Carlsbad seeking incident reports and field interview cards at 2735 Palomar Airport Road (Staybridge Suites) mentioning "laundry room," "breakfast area," or "Salemi." On April 7, 2026, the City responded — through Senior Assistant City Attorney Jennifer True — that, "to the extent records exist," such records are "exempt from disclosure pursuant to Government Code §7923.600 and §7927.705, and California Evidence Code §1040." (Ex. Z.12.) Section 1040 is a law enforcement privilege for official information whose disclosure would harm the public interest. The laundry room and breakfast area are among the locations where Hotel staff directed coordinated harassment of Plaintiff during his displacement stay; Plaintiff's CPRA request was limited to those specific areas to facilitate production. The City's §1040 invocation is a party admission that CPD generated official law enforcement records about Plaintiff at those hotel locations — records it is now withholding, not records that do not exist. Critically, Jennifer True is not a neutral

records clerk: she is CPD's primary legal advisor — the Senior Assistant City Attorney designated as primary counsel for the Fire, Police, and Human Resources Departments — and the founder of a countywide law-enforcement legal advisors network spanning multiple San Diego County agencies. Her personal invocation of law enforcement privilege over hotel surveillance records means CPD's own lawyer decided these records must be shielded. That is not the conduct of a city with no operational nexus to the hotel.

Third, a separate CPRA request confirms the City's selective withholding. On March 16, 2026, Plaintiff requested all contracts, purchase orders, invoices, or payment records reflecting any City of Carlsbad or CPD payments to hotels or security firms for security, guest monitoring, or similar services. (Ex. Z.4a.) On March 26, 2026, the City responded that the request required an extension because it implicated "voluminous amounts" of records requiring unusual search time. (Ex. Z.4a.) Five days later — on March 31, 2026 — the City reversed course and declared "no responsive documents," closing the request. (Ex. Z.4b.) A city that requires an extension to search "voluminous amounts" of records cannot locate zero responsive records five days later absent selective withholding or deliberate mischaracterization of scope.

Taken together: Hotel's GM sits on a City-contracted governance board; CPD generated law enforcement records inside the hotel about Plaintiff, which the City Attorney is now shielding under law enforcement privilege; and the City first claimed voluminous records exist responsive to a vendor-payment CPRA request, then declared none five days later. This is not a bare "community partner" label. It is documented structural integration between Hotel and the City of Carlsbad — exactly the nexus § 1983 joint-action doctrine requires to reach a nominally private actor. The question of whether this coordination constitutes a "meeting of minds" to deprive Plaintiff of constitutional rights is a factual question for discovery. Adickes, 398 U.S. at 152.

### H. STATE LAW CLAIMS SURVIVE

1. Bane Act (Cal. Civ. Code § 52.1) The Bane Act requires interference or attempted interference, by threats, intimidation, or coercion, with a person's exercise of constitutional or statutory rights. § 52.1(b). Critically, the Bane Act does not require that the coercion be independent of the constitutional violation itself. Reese v. County of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018). Here: repeated environmental assaults on Plaintiff's only residence, plus face-to-face death threats against his minor son, constitute exactly such coercive interference with Plaintiff's right to freedom from assault, right to petition, and due process rights.

2. IIED Hotel's maintenance technician telling Plaintiff that his documented physical symptoms are "normal" and "allergies" — while Exhibit A audio captures those representations — while Plaintiff knew his son's life had been threatened in the same lobby, satisfies the pleading threshold for extreme and outrageous conduct. Whether the conduct exceeded all bounds tolerable in a civilized society is a question of fact, not resolved on a motion to dismiss.

3. Invasion of Privacy Hotel argues the invasion of privacy claim is "directed at the Enterprise's alleged aerial and thermal surveillance the FAC attributes to government-funded assets, not to the Hotel." Hotel misreads the FAC. Plaintiff's invasion of privacy claims attributable to Hotel are Hotel- specific: FAC ¶35 alleges Hotel's key-card access system enabled unauthorized entry into Plaintiff's room; FAC ¶¶45–49 allege Hotel coordinated and directed daily observation, tracking, and interception of Plaintiff throughout its premises during both displacement stays (April–September 2020 and November 2024 through the present), using its own staff, facilities, and operational resources to execute the Enterprise's harassment pattern. Those are not government-funded assets — they are Hotel's own access-control infrastructure and Hotel-employed staff. The invasion of privacy claim survives as to Hotel-specific conduct pending discovery into key-card access logs and maintenance records.

4. Negligence / Premises Liability Hotel received documented written notice of unsafe conditions through IHG's complaint system (Case No. 10580522173) and Plaintiff's direct escalation reports, relocated Plaintiff once without investigating the cause, and allowed the conditions to recur across multiple rooms and multiple months. That is a textbook breach of the duty to maintain safe premises after actual notice. The claim survives on the merits.

5. Supplemental Jurisdiction Because Plaintiff's federal claims survive, this Court retains supplemental jurisdiction over the state claims. 28 U.S.C. § 1367(a). Dismissal of supplemental claims would be inappropriate at this stage.

## I. RULE 12(f) MOTION TO STRIKE SHOULD BE DENIED

Rule 12(f) is a drastic remedy sparingly granted. Whittlestone, Inc. **v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010). Matter is** "scandalous" only if it "unnecessarily reflects on the moral character of an individual" or uses "repulsive language." Cobell v. Norton, 224 F.R.D. 266, 282 (D.D.C. 2004).

Hotel objects to the FAC's descriptions of its conduct: environmental assaults, death threats, and coordinated harassment at Plaintiff's displacement residence. These descriptions are not gratuitous — they are the predicate acts. Each is supported by audio recording (Exhibit A), photographs (Exhibit B), video (Exhibit C), or IHG's own documented case number (Case No. 10580522173). Matter supported by documentary exhibits cannot be "immaterial" or "scandalous" — it is the evidence. Hotel's motion to strike is an attempt to shield documented conduct from the pleadings, not to protect itself from irrelevant material.

## J. INJUNCTIVE RELIEF IS PROPERLY SOUGHT

Hotel argues Plaintiff lacks standing for injunctive relief because symptoms "immediately

ceased" after the vent was sealed. Hotel misreads the FAC. The vent-sealing on December 25, 2025 eliminated one specific incident's symptoms by dechallenge — it confirmed fiberglass as the cause. FAC ¶47. It did not end the enterprise's campaign at the hotel. The FAC alleges a continuous pattern across the entirety of Plaintiff's displacement stay (¶¶45–49), including death threats in the hotel lobby in July 2025 (¶50). The enterprise's campaign at the hotel has continued to the present.

The "cessation" Hotel invokes is the dechallenge that proves causation — not evidence that Hotel's enterprise participation ended. Plaintiff remains displaced at Hotel's property. The FAC itself establishes this: FAC ¶12 identifies Plaintiff as "an individual residing at 2735 Palomar Airport Road, Carlsbad" — the address of Staybridge Suites Carlsbad - San Diego, 2735 Palomar Airport Road, Carlsbad, CA 92009. Hotel's assertion that the FAC does not allege Plaintiff "presently occupies the property" (Mot. at 13) is contradicted by the FAC's own allegations. Hotel's own staff confirmed in writing that Plaintiff's reservation extends through December 31, 2026. (Ex. Z.14.) Standing for prospective relief is established. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 190 (2000) (defendant bears heavy burden to establish voluntary cessation moots injunctive relief).

The campaign is continuous. Plaintiff has documented daily hotel staff and hotel actor harassment continuing at the same hotel premises — the same techniques (cart pre-positioning, hallway intercepts, breakfast- room sequences, relay patterns) including complete hallway blockage and multi-actor tunnel formations. The threat is ongoing: daily coordinated harassment — including timed intercepts, pre-positioning, relay patterns, and hallway blockage — continues at the hotel premises to the present. Plaintiff's forthcoming amended complaint incorporates this conduct in detail. The hotel's voluntary cessation defense is untenable.

Hotel further argues that the specific relief requested — key-card access logs, maintenance records, and IHG complaint records — is "untethered" judicial administration rather than

injunctive relief; that injunctive relief cannot substitute for discovery; and that a special master has no independent basis. None of these arguments justifies dismissal.

Key-card logs, maintenance records, and IHG complaint records are not "judicial administration" — they are the evidence of Hotel's predicate acts. Injunctive preservation of evidence directly relevant to pending federal civil RICO claims is within this Court's equitable power and is independently supported by 18 U.S.C. § 1512(c)(1) (obstruction by evidence destruction). A hotel actively minimizing documented incidents while this litigation is pending has no equitable claim against a preservation order.

Plaintiff does not seek to obtain evidence through injunction in lieu of discovery — Rule 34 and injunctive preservation serve different functions. A court may order preservation of specific categories of evidence as equitable relief ancillary to a civil RICO claim without displacing the discovery process. See Fed. R. Civ. P. 65(a); 18 U.S.C. § 1964(a) (district courts may "order ... to prevent and restrain" RICO violations).

The request for a special master under Fed. R. Civ. P. 53 is premature for resolution on a 12(b)(6) motion. Rule 53 appointment is a matter for the Court's discretion at an appropriate stage. Hotel's argument that no "independent basis" exists conflates the Rule 53 standard with a pleading requirement — there is none. The request survives dismissal for adjudication at the appropriate procedural moment.

## K. DECLARATORY RELIEF IS PROPERLY SOUGHT

Hotel argues Plaintiff's request for declaratory relief must be denied for lack of an "actual controversy" under 28 U.S.C. § 2201 and Article III. That argument fails.

An "actual controversy" exists where there is "a substantial controversy, between parties

having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).

The declaratory relief Plaintiff seeks is Hotel-specific and triply concrete. First, Plaintiff seeks a declaration of Hotel's legal status: whether Hotel, through its coordinator's direction of uniformed staff, GM Geoff's suppression directive, and repeated transmission of false deflection scripts through IHG's interstate system, is a participant in a RICO enterprise. That is a live legal question as to this defendant specifically. Hotel disputes it; Plaintiff alleges it. That is a controversy. Second, Plaintiff seeks a declaration of Hotel's evidence- preservation obligations: whether Hotel must preserve key-card access logs, maintenance records, and IHG complaint records — evidence that is in Hotel's exclusive custody, that Hotel has an incentive to allow to expire or overwrite, and that Hotel's own motion characterizes as outside the scope of any legitimate relief. Hotel's active resistance to preservation is itself the ongoing dispute that §2201 addresses. Third, Plaintiff presently resides at the Hotel, under a displacement that Hotel's own systems continue to administer. Hotel's management of Plaintiff's physical location is not a historical event — it is occurring now. Hotel and Plaintiff are adverse parties in a live, ongoing landlord-enterprise relationship whose legal character is directly disputed.

These are not abstract or advisory questions about hypothetical future conduct. They are concrete, Hotel-specific, present disputes about this defendant's legal obligations today. Declaratory relief is properly sought as to this defendant.

## IV. CONCLUSION

Hotel's motion should be denied in its entirety. The FAC adequately pleads RICO standing, valid predicates, a plausible enterprise and pattern, proximate causation, and civil rights claims. Hotel's characterization of the pleaded facts as "mundane" ignores audio, photographic, and video evidence attached to the complaint, IHG's own documented case file, and the General

Manager's own statement.

If the Court finds any deficiency, Plaintiff respectfully requests leave to amend. Dismissal with prejudice is inappropriate where Plaintiff is proceeding pro se and the factual basis for the claims is extensively documented. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Respectfully submitted,

Date: 08/24/2026

Alireza Salemi
Plaintiff, Pro Se
2735 Palomar Airport Road
Carlsbad, CA 92009

EXHIBIT INDEX

Exhibit 11 Visit Carlsbad Board of Directors — Geoff Parkford Listed as Board Member

Exhibit 12 Visit Carlsbad Board Meeting Materials, April 24, 2026

Exhibit Z.4a CPRA Response — City of Carlsbad "Voluminous" Extension (March 26, 2026)

Exhibit Z.4b CPRA Response — City of Carlsbad "No Responsive Documents" (March 31, 2026)

Exhibit Z.12 CPRA Response — Jennifer True, Evidence Code §1040 Privilege Invocation Over Hotel Records (April 7, 2026)

Exhibit Z.14 Jimenez Email — Pacifica Host Hotels Reservation Extended Through December 31, 2026 (April 6, 2026)

## CERTIFICATE OF SERVICE

I certify that on August 24, 2026, I served the foregoing Opposition on all counsel of record by the Court's CM/ECF system and/or by U.S. Mail:

Rebecca M. Gabroy / Courtney M. Sherman
Wood, Smith, Henning & Berman LLP
6A Liberty Street, Suite 200, Aliso Viejo, CA 92656
Counsel for Defendant Carlsbad Hospitality LLC

Nathan A. Oyster / Sydney M. Gronroos
Burke Williams & Sorensen LLP
444 South Flower Street, Suite 2400, Los Angeles, CA 90071
Counsel for City of Carlsbad

William C. Pate / Devaney Pate Morris & Cameron, LLP
402 W. Broadway, Suite 1300, San Diego, CA 92101
Counsel for Encinitas Union School District

Jennifer M. Martin / San Diego City Attorney
1200 Third Avenue, Suite 1100, San Diego, CA 92101
Counsel for City of San Diego

Glen F. Dorgan / U.S. Attorney's Office, Civil Division
880 Front Street, Room 6293, San Diego, CA 92101
Counsel for DHS and FBI

ALIREZA SALEMI

Plaintiff, Pro Se

Exhibit 11

CARLSBAD
CALIFORNIA

# Board of Directors

Visit Carlsbad Board of Directors

Tim Stripe, Chair
Grand Pacific Resorts

Kurt Stocks, Vice Chair
LEGOLAND® California Resort

Craig Martin, Secretary/Treasurer
Omni La Costa Resort & Spa

Randal Chapin, Director
Carlsbad Inn Beach Resort

Chad Eding, Director
Park Hyatt Aviara Resort, Golf Club & Spa

Thomas Lee, Director
Cape Rey Carlsbad Beach and Hilton Garden Inn Carlsbad Beach

Geoffrey Parkford, Director
Holiday Inn Carlsbad and Staybridge Suites Carlsbad

## FIND A ROOM

Search for rates & availability to find the best deals on hotel and resort rooms in Carlsbad, California

Check-in → Check-out | Guests 1 | SEARCH

Cookies Policy

This site uses cookies to give you the best possible experience. Learn More (https://visitcarlsbad.com/privacy-policy/)

Exhibit 12

VISIT CARLSBAD CA

# Board of Directors Meeting

Friday, April 24, 2026
2:00 p.m.
Visit Carlsbad Office: 3088 State Street #103, Carlsbad 92008

## Agenda

| | |
|---|---|
| **Welcome & Call to Order** | **Stripe** |
| **Self-Introductions** | **Stripe** |
| **Public Comment**<br>*Members of the public are welcome to make comments on items on the agenda and not on the agenda.* | **Stripe** |
| **Informational Items** | |
| **CEO Report January – March 2026** | **Sidoriak** |
| **Financial Update** | **Sidoriak** |
| **Easy Board Platform Introduction** | **Sidoriak** |

**Action Items**

1. **Approval of January 22, 2026 Meeting Minutes** — **Stripe**
   *Board members will review and consider for approval the minutes of a prior meeting.*

2. **Approval of March 2, 2026 Meeting Minutes** — **Stripe**
   *Board members will review and consider for approval the minutes of the prior meeting.*

3. **Approval of Group Incentive Program Offer** — **Sidoriak**
   *Board members will discuss and consider approval of the Group Incentive Program offer for fiscal year 2027.*

4. **Approval of Fiscal Year 2027 Budget** — **Sidoriak**
   *Board members will discuss and consider for approval the budget for fiscal year 2027.*

5. **Approval of 2026-2027 Annual Report** — **Sidoriak**
   *Board members will discuss and consider for approval the Carlsbad Tourism Business District Annual Report for fiscal year 2026/2027 to be submitted to the City of Carlsbad.*

Exhibit 12

FY 2026/2027



# CARLSBAD TOURISM BUSINESS IMPROVEMENT DISTRICT

## ANNUAL REPORT FOR FISCAL YEAR 26/27

Submitted to the City of Carlsbad pursuant to Streets and Highways Code section 36650, for the period from July 1, 2026 through June 30, 2027.

Exhibit 12

# IMPROVEMENTS AND ACTIVITIES

Carlsbad Convention and Visitors Bureau, dba Visit Carlsbad, is entering the third year of its current five-year contract with City of Carlsbad and the second year of its current 3-year Strategic Plan. This Strategic Plan offers a roadmap to position the City as a uniquely vibrant, sustainable, and multifaceted destination while fostering alignment between tourism, community values, and economic growth. The Strategic Plan calls for prioritization of the following five focus areas:

1. Enhance marketing impact
2. Optimize group sales efforts
3. Improve destination experience and culture
4. Develop new leisure and group markets
5. Sustain high performance operations

The improvements and activities to be provided for FY 2026/2027 are consistent with the Management District Plan (Plan) and continue to be executed by Visit Carlsbad as the CTBID Owners' Association.

**Sales & Marketing**

A sales and marketing program will continue to promote assessed businesses as tourist, meeting, and event destinations. The sales and marketing program will continue to have a central theme of promoting Carlsbad as a desirable place to visit overnight. The program will continue to have the goal of increasing demand for overnight visitation and room night sales at assessed businesses, and may include the following activities:

- Targeted leisure marketing campaigns designed to drive overnight visitation from key regional and emerging markets through digital media, content development, and strategic partnerships;
- Internet marketing efforts to increase awareness and optimize internet presence;
- Print and digital ads in magazines and newspapers targeted at potential visitors;
- Television and radio ads targeted at potential leisure visitors;
- Development and implementation of a public relations and communications strategy, inclusive of social media outlets and press release distribution designed to increase overnight visitation at assessed businesses;
- Attendance at trade shows;
- Sales missions;
- Familiarization tours;
- Preparation and production of print and electronic collateral promotional materials such as brochures, flyers and maps;
- Attendance at professional industry conferences and affiliation events;
- Lead generation activities, including a Group Incentive Program, designed to attract group events to Carlsbad;
- Sales meetings to plan and coordinate group direct promotion efforts;
- Marketing meetings to plan and coordinate leisure promotion efforts; and
- Other sales & marketing programs and activities that increase demand for overnight visitation to assessed businesses.

Exhibit 12

**Golf-Related Programs & Services**

For lodging businesses that elect to pay the additional one percent (1%) assessment, golf-related services may include, but are not limited to:

- Golf signage and such equipment related specifically to the promotion of golf to increase demand for overnight visitation to lodging businesses paying the additional assessment;
- Joint marketing related to the promotion of golf and golf courses included within the CTBID to increase demand for overnight visitation to lodging businesses that are paying the additional assessment;
- Marketing promotion such as radio, TV, or print and digital advertising of golf and golf courses included within the CTBID to increase demand for overnight visitation to lodging businesses paying the additional assessment;
- On-line/internet promotions jointly advertising golf and golf courses included within the CTBID to increase demand for overnight visitation to lodging businesses paying the additional assessment;
- Marketing and sales staff on time spent on joint marketing efforts to increase demand for overnight visitation to lodging businesses paying the additional assessment; and
- Other programs and activities that promote golf-related tourism and confer a specific benefit to the lodging businesses that are paying the additional assessment.

**Grant Program**

The grant program will continue to fund projects and events that increase overnight visitation to assessed businesses, as well as fund programs that alleviate challenges to maximizing occupancy rates. The objectives of the grant program are to: encourage the development of innovative tourism products; promote collaboration within and across sectors of the tourism industry; elevate Carlsbad's brand as a premier destination; and reach important travel segments such as multicultural, family and senior markets.

Policies relating to the grant program shall be determined by the Visit Carlsbad Board annually.

**Administration and Operations**

The administration and operations portion of the budget shall continue to be utilized for administrative staffing costs, office costs, advocacy and other general administrative costs such as insurance, legal, and accounting fees.

**Contingency/Reserve**

Contingency/reserve funds are set aside for unexpected costs or opportunities that may arise. Policies relating to contributions to the reserve fund, the target amount of the reserve fund, and expenditure of monies from the reserve fund shall be set by the Visit Carlsbad Board. The reserve fund may be used for the costs of renewing the CTBID.

**City Administration Fee**

The City of Carlsbad shall continue to be paid a fee equal to two percent (2%) of the amount of assessments collected to cover its costs of collection and administration.

Exhibit Z.4a

## Public Records Request :: R005830-031626

**From** City of Carlsbad <carlsbadca@govqa.us>
**To** alireza.salemi@udo.edu <alireza.salemi@udo.edu>
**Date** 2026-03-16 10:27

Dear Alireza Salemi:

Thank you for your interest in public records of the City of Carlsbad. Your request has been received and is being processed in accordance with the California Public Records Act, Government Code Section 6256. Your request was received in this office on 3/16/2026 and given the reference number R005830-031626 for tracking purposes.

Records Requested: Subject: California Public Records Act Request – City Vendor Payments and Contracts (Jan 2025 – Present)

Dear City Clerk,

Pursuant to the California Public Records Act (Gov. Code § 7920.000 et seq.), I request the following records in electronic format from January 1, 2025 to the present:
Any contracts, purchase orders, invoices, or payment records from the City of Carlsbad or Carlsbad Police Department to any hotel, security firm, or private entity for "security," "guest monitoring," "emergency housing," "off-duty detail," or similar services.
Please provide the records on a rolling basis. If fees are anticipated, please provide an estimate.

Thank you.

Alireza Salemi

Your request will be forwarded to the relevant department(s) to locate the information you seek and to determine the volume and any costs associated with satisfying your request. You will be contacted about the availability and/or provided with copies of the records in question. PLEASE NOTE: California Public Records Act, does not require a governmental body to create new information, to do legal research, or to answer questions.

You can monitor the progress of your request at the link below and you'll receive an email when your request has been completed. Again, thank you for using the Records Request Center.

City of Carlsbad

To monitor the progress or update this request please log into the [NAMEOFSYSTEM].

Exhibit Z.4b

**Carlsbad Public Records Request Center Public Records Request :: R005830-031626**

**From** City of Carlsbad <carlsbadca@govqa.us>
**To** alireza.salemi@udo.edu <alireza.salemi@udo.edu>
**Date** 2026-03-26 17:20

--- Please respond above this line ---

City of Carlsbad
California

Re: Public Records Request Received March 16, 2026, Request # R005830-031626

Dear Alireza Salemi,

The City of Carlsbad received a public records request from you on March 16, 2026, seeking:

**"Subject: California Public Records Act Request – City Vendor Payments and Contracts (Jan 2025 – Present)**

**Dear City Clerk,**

**Pursuant to the California Public Records Act (Gov. Code § 7920.000 et seq.), I request the following records in electronic format from January 1, 2025 to the present:**
**Any contracts, purchase orders, invoices, or payment records from the City of Carlsbad or Carlsbad Police Department to any hotel, security firm, or private entity for "security," "guest monitoring," "emergency housing," "off-duty detail," or similar services.**
**Please provide the records on a rolling basis. If fees are anticipated, please provide an estimate.**

**Thank you.**

**Alireza Salemi"**

Under the Public Records Act, requests requiring the "need to search for, collect, and appropriately examine a voluminous amounts separate, and distinct records" create "unusual circumstances". Under unusual circumstances, the City of Carlsbad may take an extension of the standard 14-day time period for determining whether a request seeks copies of disclosable public records. Regarding your request, the City of Carlsbad is taking this time extension, which is authorized by Government Code Section 7922.535, subdivision (b), and states:

"In unusual circumstances, the time limit prescribed in this article and Article 1 (commencing with Section 7922.500) may be extended by written notice by the head of the agency or a designee to the person making the request setting forth the reasons for the extension and the date on which a determination is expected to be dispatched. No notice shall specify a date that would result in an extension for more than 14 days."

This letter serves as written notice that the City of Carlsbad requires an extension of the standard 14-day time period for providing its determination to your records request. The City of Carlsbad staff will notify you in writing with a determination on your request no later than April 9, 2026.

Please be assured that City staff members are making every effort to respond effectively to your request.

If you have any questions, or wish to discuss this further, please contact the City Clerk's Office at 442-339-2808.

Sincerely,
Adriana Trujillo
Deputy City Clerk
City Clerk Services

To monitor the progress or update this request please log into the Records Request Center

Powered by GovQA

Exhibit Z.12

## Carlsbad Public Records Request Center Public Records Request :: R005875-033026

**From** City of Carlsbad <carlsbadca@govqa.us>
**To** alireza.salemi@udo.edu <alireza.salemi@udo.edu>
**Date** 2026-04-07 13:33

— Please respond above this line —

City of Carlsbad
California

Re: Public Records Request Received March 30, 2026, Request # R005875-033026

Dear Alireza Salemi,

The City of Carlsbad is in receipt of your public records request received on March 30, 2026, seeking:

***"Subject: CPRA Request – Night Vision Devices (Goal 5) Deployment Logs – Palomar Airport Road (2024–Present)***

***Dear City Clerk,***
***Pursuant to Gov. Code § 7920.000 et seq., I request the following records in electronic format from January 1, 2024 to present:***

***1. Equipment Deployment Logs, Inventory Checkout records, or use tracking for the (2) Night Vision Devices, showing any deployment within 1-mile radius of 2735 Palomar Airport Road.***
***2. Incident Reports or Field Interview cards at 2735 Palomar Airport Road mentioning "laundry room," "breakfast area," or "Salemi."***

***Reference prior Goal 5 Face Sheet production.***

***Provide on a rolling basis. If fees expected, estimate first. If exempt, give privilege log (date/author/subject) and segregable portions per § 7922.525.***
***Thank you.***
***Alireza Salemi"***

In response to request number 1, the city has no responsive records. In response to request number 2, to the extent records exist, incident reports and field interview cards are exempt from disclosure pursuant to Government Code §7923.600 and §7927.705, and California Evidence Code §1040. To the extent this is a denial of your request, Senior Assistant City Attorney Jennifer True is responsible for that denial.

This request is now considered closed. Should you have any questions or need additional information, please do not hesitate to contact the City Clerk's Office at 442-339-2808.

Sincerely,

Adriana Trujillo
Deputy City Clerk
City Clerk Services

To monitor the progress or update this request please log into the Records Request Center

Powered by GovQA

Exhibit Z.14

## RE: Following Up

**From** Stephanie Jimenez <s.jimenez@pacificahost.com>
**To** alireza.salemi@udo.edu <alireza.salemi@udo.edu>
**Cc** Jennifer Sehwani <jsehwani@pacificahost.com>, Kayla Zapata <kzapata@pacificahost.com>
**Date** 2026-04-06 16:35

Hi,
We've made your reservation for the rest of the year and at the same Viasat rate $119.

Gracias,

Stephanie Jimenez

Sales & Administrative Coordinator
Holiday Inn and Staybridge Suites Carlsbad-San Diego
2725 Palomar Airport Road
Carlsbad CA 92009
T: 760.438.2725 x 4006
E: S.Jimenez@pacificahost.com

Monday- Friday
8am- 4:30 pm

Web: Holiday Inn + Staybridge Suites
Holiday Inn and Staybridge Carlsbad, Pacifica Host Hotels

www.pacificahost.com

-----Original Message-----
From: Alireza Salemi <alireza.salemi@udo.edu>
Sent: Saturday, April 4, 2026 11:39 AM
To: Stephanie Jimenez <s.jimenez@pacificahost.com>
Cc: Jennifer Sehwani <jsehwani@pacificahost.com>; Kayla Zapata <kzapata@pacificahost.com>
Subject: Re: Following Up

Hi Stephanie,
Hope you're doing well.
I'm writing to confirm: is my room still booked at $119 per night through the end of the year (December 31, 2026)? I'd really appreciate locking it in—no surprises with any changes.
Thanks for checking!
Best,
Alireza Salemi
(720) 208-8755