Alireza Salemi
2735 Palomar Airport Road, Carlsbad, CA 92009
(720) 208-8755 | alireza.salemi@udo.edu
Plaintiff, Pro Se

FILED
OCT 0 5 2026
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ______ DEPUTY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALIREZA SALEMI, | Case No. 3:25-cv-03387-AGS-MSB |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS DIANA FRANCO ZORRO, D.D.S. AND DIANA FRANCO ZORRO, DDS INC.** dba SMILES FOR HEALTH (ECF No. 72) |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, et al., | |
| Defendants. | Judge: Hon. Andrew G. Schopler<br>Mag.: Hon. Michael S. Berg |

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. BACKGROUND ........ 2
A. The FAC's Allegations Against These Defendants ........ 2
B. Procedural History ........ 4
III. LEGAL STANDARDS ........ 4
IV. ARGUMENT ........ 5

A. The Motion Is Limited to the Six Grounds It Notices; the RICO and Respondeat Superior Allegations Are Not Before the Court ...... 5
B. Federal Pleading Standards Govern; California's State-Court Pleading Rules Do Not ...... 6
C. The FAC States a Claim for Battery ...... 7
D. The Assault Allegations Are Pleaded Together With Battery and the Motion Identifies No Separate Defect ...... 12
E. The Fraud and Falsification Allegations State a Claim ...... 12
F. The FAC States a Claim for IIED ...... 14
G. The Bane Act and Child-Endangerment Allegations ...... 15
H. The Punitive-Damages Arguments Fail ...... 16
I. Attorney's Fees, Treble Damages, and Other Relief ...... 18
J. If Any Claim Is Found Deficient, Leave to Amend Must Be Granted ...... 19
V. CONCLUSION ...... 21

## TABLE OF AUTHORITIES

**Cases**

Akhtar v. Mesa, 698 F.3d 1202 (9th Cir. 2012) ...... 5
Alcorn v. Anbro Eng'g, Inc., 2 Cal. 3d 493 (1970) ...... 15
Ashcroft v. Iqbal, 556 U.S. 662 (2009) ...... 4, 8
Bang v. Charles T. Miller Hosp., 251 Minn. 427 (1958) ...... 9
Berkey v. Anderson, 1 Cal. App. 3d 790 (1969) ...... 9
Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008) ...... 14
Broam v. Bogan, 320 F.3d 1023 (9th Cir. 2003) ...... 19
Burrows v. Redbud Cmty. Hosp. Dist., 188 F.R.D. 356 (N.D. Cal. 1997) ...... 16
Clark v. Allstate Ins. Co., 106 F. Supp. 2d 1016 (S.D. Cal. 2000) ...... 17
Cobbs v. Grant, 8 Cal. 3d 229 (1972) ...... 1, 7, 8, 9, 11, 12

Cochran v. Cochran, 65 Cal. App. 4th 488 (1998) ........................ 14
Corn v. French, 71 Nev. 280 (1955) .................................... 9
Dower v. United Airlines, Inc., 329 F.2d 684 (9th Cir. 1964) .............. 20
Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048 (9th Cir. 2003) ..... 5
Erickson v. Pardus, 551 U.S. 89 (2007) ................................ 5
Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938) .......................... 6
Estate of Prasad v. County of Sutter, 958 F. Supp. 2d 1101 (E.D. Cal. 2013) ................................................ 16
Foman v. Davis, 371 U.S. 178 (1962) .............................. 5, 20
G.D. Searle & Co. v. Superior Court, 49 Cal. App. 3d 22 (1975) ....... 16, 17
George v. Sonoma Cnty. Sheriff's Dep't, 732 F. Supp. 2d 922 (N.D. Cal. 2010) ................................................ 16
Hanna v. Plumer, 380 U.S. 460 (1965) .............................. 6, 16
Hughes v. Pair, 46 Cal. 4th 1035 (2009) .............................. 14
Jackson v. Carey, 353 F.3d 750 (9th Cir. 2003) ........................ 20
Jackson v. East Bay Hosp., 980 F. Supp. 1341 (N.D. Cal. 1997) ........... 16
Kearns v. Ford Motor Co., 567 F.3d 1120 (9th Cir. 2009) .............. 6, 13
Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc) .................. 5
Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097 (9th Cir. 2008) .... 4
Perry v. Shaw, 88 Cal. App. 4th 658 (2001) ............................ 9
Piedra v. Dugan, 123 Cal. App. 4th 1483 (2004) ....................... 10
Salameh v. Tarsadia Hotel, 726 F.3d 1124 (9th Cir. 2013) ................ 20
Saxena v. Goffney, 159 Cal. App. 4th 316 (2008) ........................ 8
Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010) .............................................. 6, 16
Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351 (9th Cir. 1996) ................................................ 20
So v. Shin, 212 Cal. App. 4th 652 (2013) .......................... 11, 12

Sprewell v. Golden State Warriors, 266 F.3d 979 (9th Cir. 2001) ........... 4
State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003) ......... 18
Steel v. City of San Diego, 726 F. Supp. 2d 1172 (S.D. Cal. 2010) ......... 16
Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097 (9th Cir. 2003) ............. 6

**Statutes**

18 U.S.C. § 1343 ........................................... 14
18 U.S.C. § 1519 ........................................... 3
18 U.S.C. §§ 1961, 1962 ........................................... 5
18 U.S.C. § 1964(c) ........................................... 5, 7, 18, 19
28 U.S.C. § 1367(a) ........................................... 7, 16
42 U.S.C. § 1983 ........................................... 7
Cal. Civ. Code § 43 ........................................... 15
Cal. Civ. Code § 52 ........................................... 18
Cal. Civ. Code § 52.1 ........................................... 15, 18
Cal. Civ. Code § 3294 ........................................... 16, 17, 18
Cal. Civ. Proc. Code § 425.13 ........................................... 16
Cal. Penal Code § 245(a)(1) ........................................... 3

**Rules**

Fed. R. Civ. P. 7(b)(1)(B) ........................................... 5
Fed. R. Civ. P. 8 ........................................... 6, 10, 16, 17
Fed. R. Civ. P. 9(b) ........................................... 6, 9, 13, 17, 20
Fed. R. Civ. P. 12(b)(6) ........................................... 4, 15
Fed. R. Civ. P. 15 ........................................... 5

**Other Authorities**

CACI No. 530A ........................................... 11

## I. INTRODUCTION

On September 2, 2025, Plaintiff went to Defendants' office for a routine cleaning. The First Amended Complaint ("FAC," ECF No. 16) alleges that a hygienist refused X-rays, took no photographs, numbed his gums without telling him, activated a Class IV diode laser on them while saying only that she needed "to kill bacteria," and left him with gum lacerations, gum recession, and permanent thermal damage that now require surgical grafts, along with charred teeth and at least thirteen cracked teeth. The laser charge was billed to Plaintiff at $90, outside his insurance, and the chart for that visit records a complaint Plaintiff never made and a dentist examination that never took place. (FAC ¶¶ 34, 81-82A.) Nothing about that sequence was accidental.

The motion mentions the laser once, noting the FAC alleges its use "on Plaintiff without his consent." (ECF No. 72-1 at 2:9-10.) Its argument never mentions it. When the motion restates FAC ¶ 81, it drops the words "laser" and "non-consensual" and calls the claim a challenge to "the dental treatment/cleaning." (Id. at 2:11-12.) It then argues that Plaintiff consented to "dental treatment/cleaning" and that the FAC alleges no deviation from it. (Id. at 10:10-14.) That argument works only if the laser is left out. Consent to a cleaning is not consent to having gum tissue cut with a surgical laser.

The motion also rests on a rule of law that does not exist. It tells the Court that "[p]er Cobbs, medical battery can only occur where the treatment rendered is in an entirely separate anatomical location than the consented treatment." (Id. at 9:27-10:2.) Cobbs v. Grant contains no such rule; the motion's own example from Cobbs involved the same operative field.

The motion's real goal is stated at page 3: it "places particular emphasis on the standard for granting or denying further leave to amend." (Id. at 3:3-5.) This is the first motion these Defendants have filed. No court has ever identified a defect in Plaintiff's dental allegations or told him how to fix one.

Defendants' own July 10, 2026 letter asked that they not "waste the court's time with a motion to dismiss as to the first amended complaint if Plaintiff is going to file a second amended complaint." (ECF No. 72-3 at 3.) On August 24, they agreed to proceed on the FAC only "since the Court has not ruled on your motion for leave to file a second amended complaint." (ECF No. 72-4.) Leave cannot be denied as futile.

The motion does not address the civil RICO counts pleaded against these Defendants (FAC ¶¶ 63-66) or the respondeat superior allegations (FAC ¶ 82A); those claims are not before the Court.

The motion should be denied.

## II. BACKGROUND

### A. The FAC's Allegations Against These Defendants

The motion says FAC ¶¶ 34, 35, 81-83, and 86-88 "are the only paragraphs referencing conduct of these Defendants." (ECF No. 72-1 at 16:13-15.) That is incorrect. The FAC pleads the following:

1. Parties. Smiles for Health DDS employed hygienist Allison Schulz. (FAC ¶¶ 13-15.)
2. The procedure. On September 2, 2025, Plaintiff came for "a routine cleaning." His request for X-rays was refused ("you don't qualify") and no photographs were taken. A smooth, tasteless gel was applied to his gums without his being told it was a numbing agent, after which his teeth and gums became completely numb. Schulz "scraped aggressively before activating a Biolase Epic X Class IV diode laser on Plaintiff's gums, stating only 'we need to kill bacteria.'" No supervising dentist was in the room. (FAC ¶ 34.)
3. The injury. The procedure caused gum lacerations and recession,

permanent thermal damage, charred enamel, and cracking of at least thirteen teeth. (FAC ¶¶ 34, 81.) A periodontist later determined that the gums would require surgical grafts. (FAC ¶ 34.)

4. Concealment. The laser was "billed out-of-pocket at $90 with no submission to insurance ... evidencing intent to conceal the procedure." The progress notes falsely state that Plaintiff presented with discomfort and that a dentist examined him. (FAC ¶ 34.) Those notes were transmitted "through insurance and HIPAA channels." (FAC ¶ 82.) The device logs requested under HIPAA were never produced. (FAC ¶ 34.)

5. Vicarious and supervisory liability. Smiles for Health is liable for Schulz's acts within the scope of her employment, using its equipment, on its premises, and for its $90 benefit; Dr. Zorro is liable as the supervising dentist whose name appears on the false entries. (FAC ¶ 82A.)

6. Civil RICO. Smiles for Health is pleaded as a spoke of an SD-LECC-hubbed enterprise aimed at harming and silencing Plaintiff; CPD then labeled the assault a "civil matter" (FAC ¶¶ 4, 52, 63-64A), and the dental conduct is pleaded as predicate acts: mail and wire fraud through the falsified notes and the $90 billing (FAC ¶ 65(a)), record tampering under 18 U.S.C. § 1519 (FAC ¶ 65(c), (h)), and assault with a deadly weapon under Cal. Penal Code § 245(a)(1) (FAC ¶ 65(d)). RICO injury includes the dental and gum damage. (FAC ¶ 66.)

7. State claims. Battery/assault (FAC ¶ 81); fraud and falsification of records (FAC ¶ 82); Bane Act (FAC ¶ 84, including "dental mutilation without consent"); and IIED (FAC ¶¶ 86-88, including the "non-consensual dental laser assault").

**B. Procedural History**

Plaintiff filed the FAC on April 13, 2026. On May 4, 2026, before any of these Defendants appeared, Plaintiff moved for leave to file a Second Amended Complaint (ECF No. 25), which remains pending.

On July 10, 2026, Defendants' counsel sent a letter raising the arguments now in the motion. The letter asked for an extension "as to not waste the court's time with a motion to dismiss as to the first amended complaint if Plaintiff is going to file a second amended complaint." (ECF No. 72-3 at 3.) On July 12, Plaintiff agreed to the extension, proposing that Defendants respond thirty days after the amended complaint is filed and served. (ECF No. 72-4.) Defendants requested that extension because an amended pleading was coming; they now ask the Court to bar any amendment.

On August 23, Plaintiff asked Defendants to respond to the FAC within 30 days, noting that doing so "would fully preserve their right to move or answer as to the Second Amended Complaint." (ECF No. 72-4.) Defendants agreed on August 24.

On September 21, 2026, the Court vacated pending hearings and set October 5, 2026 as the deadline for oppositions. (ECF No. 70.) Defendants filed this motion on September 23, 2026.

## III. LEGAL STANDARDS

A Rule 12(b)(6) motion tests whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Well-pleaded facts and reasonable inferences are taken in the plaintiff's favor. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal is proper "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d

1097, 1104 (9th Cir. 2008). A pro se complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

Leave to amend "shall be freely given when justice so requires," Foman v. Davis, 371 U.S. 178, 182 (1962); see Fed. R. Civ. P. 15(a)(2), and is applied "with extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). A court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). For a pro se plaintiff, dismissal without leave is improper unless it is "absolutely clear" that the deficiencies cannot be cured. Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012).

## IV. ARGUMENT

### A. The Motion Is Limited to the Six Grounds It Notices; the RICO and Respondeat Superior Allegations Are Not Before the Court.

A motion must "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1)(B). The notice of motion lists six grounds: assault, battery, fraud/falsification, IIED, punitive damages, and attorney's fees. (ECF No. 72 at 2-3.) The memorandum adds, in one sentence and without argument, that the Bane Act and child-endangerment allegations are "vague and ambiguous" and "fail as well," and that there are no grounds for a restraining order, statutory damages, or declaratory relief. (ECF No. 72-1 at 1:14-20.)

Nothing in the motion addresses the civil RICO allegations against these Defendants (FAC ¶¶ 63, 64A, 65(a), (c), (d), (h), 66). It does not cite 18 U.S.C. §§ 1961, 1962, or 1964, and it does not discuss enterprise, pattern, predicate acts, or RICO injury. Defendants' July 10 letter had asked that "treble damages" be stricken (ECF No. 72-3 at 8); that request was removed from the filed

motion. The motion also does not address respondeat superior (FAC ¶ 82A), even though it applies to every intentional tort pleaded against Smiles for Health, and Dr. Zorro is the supervising dentist whose name appears on the false examination entry (FAC ¶¶ 34, 82A).

The notice nonetheless asks the Court to dismiss "the First Amended Complaint" against these Defendants "without leave to amend." (ECF No. 72 at 2.) The Court should not grant relief on claims the motion never argues. Any order should be limited to the grounds actually briefed, and should state that the RICO claims against these Defendants are not affected.

**B. Federal Pleading Standards Govern; California's State-Court Pleading Rules Do Not.**

California law supplies the elements of the supplemental state-law claims; how those claims must be pleaded is a question of federal procedure governed by the Federal Rules. Hanna v. Plumer, 380 U.S. 460, 473-74 (1965); Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398-99 (2010). The motion's premise that intentional torts must be pleaded with "a greater degree of specificity" rests entirely on California state-court cases: Snider v. Whitson, Roberts v. Ball, Hunt, Lopez v. Southern California Rapid Transit District, and Fisher v. San Pedro Peninsula Hospital. (ECF No. 72-1 at 7:9-18.) None applies in federal court. Battery, assault, and IIED are governed by Rule 8(a)(2); Rule 9(b) reaches only fraud and mistake.

Likewise, Rule 9(b), not Lazar v. Superior Court, governs how state-law fraud must be pleaded: the "who, what, when, where, and how" of the misconduct. Kearns v. Ford Motor Co., 567 F.3d 1120, 1124-25 (9th Cir. 2009); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-06 (9th Cir. 2003).

Erie Railroad Co. v. Tompkins, which the motion itself says concerns diversity cases (ECF No. 72-1 at 6:3-6), does not change this. The Court's

jurisdiction rests on federal questions, 18 U.S.C. § 1964(c) and 42 U.S.C. § 1983, with supplemental jurisdiction under 28 U.S.C. § 1367(a). Either way: state elements, federal pleading rules.

**C. The FAC States a Claim for Battery.**

**1. Battery lies when the procedure performed is substantially different from the one consented to.**

Cobbs v. Grant, 8 Cal. 3d 229 (1972), draws the line this way: "The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented. When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present." Id. at 240. The motion itself quotes the governing rule: "Where a doctor obtains consent of the patient to perform one type of treatment and subsequently performs a substantially different treatment for which consent was not obtained, there is a clear case of battery." (ECF No. 72-1 at 8:13-16, quoting Cobbs, 8 Cal. 3d at 239.) Failure to disclose the risks of a procedure the patient did agree to sounds in negligence. Cobbs, 8 Cal. 3d at 240-41. Performing a different procedure is battery.

**2. The FAC pleads a different procedure.**

The FAC alleges that Plaintiff came for "a routine cleaning." (FAC ¶ 34.) What he received was a numbing agent he was not told was a numbing agent, followed by a Class IV surgical laser applied to his gum tissue that caused gum lacerations and recession. (FAC ¶¶ 34, 81.) A cleaning removes deposits from the teeth. Cutting gum tissue with a Class IV laser is a different procedure. The FAC's allegations that the laser was billed separately, at $90, outside insurance (FAC ¶ 34) confirm that even Defendants treated it as something other than the

cleaning.

The motion never engages with these facts. It defines the consented procedure as "dental treatment/cleaning" (ECF No. 72-1 at 10:12), a phrase broad enough to cover anything done in a dental chair, and then says there was no deviation from it. Under that reasoning, consent to a cleaning would authorize any procedure performed in the patient's mouth. Cobbs asks what the patient agreed to, not whether the procedure was dental.

The result is the same on the facts alleged in FAC ¶ 34. Schulz told Plaintiff only that she wanted to use a laser "to kill bacteria." Instead, Schulz cut and burned his gums, causing recession and tissue loss, charred his teeth, and cracked at least thirteen of them. Being told a laser will kill bacteria is not being told it will cut gum tissue. When a provider says an instrument will be used for a limited, non-surgical purpose and instead uses it to cut tissue, the procedure performed is "substantially different" from what the patient was told. The rule the motion quotes from Saxena v. Goffney, 159 Cal. App. 4th 316, 324 (2008), covers an operation the patient consented to whose inherent risks were not disclosed. (ECF No. 72-1 at 8:6-11.) Cut gum tissue is not a risk inherent in killing bacteria; it is a different procedure. Cobbs, 8 Cal. 3d at 239-41. That is the Cobbs pattern: a patient who was told one thing and received another. Plaintiff requested the device log; Defendants produced only a photograph of the device. (FAC ¶ 34.) On this motion, the gum lacerations and recession, charring, and need for surgical grafts are taken as true. Iqbal, 556 U.S. at 678.

**3. Cobbs contains no "separate anatomical location" rule.**

The motion's "entirely separate anatomical location" rule (ECF No. 72-1 at 9:27-10:2) is not in Cobbs. The words "anatomical," "location," and "separate" do not appear in the opinion. Cobbs frames the battery test entirely in terms of consent.

The motion's own examples show why. One case Cobbs describes as "a clear case of battery" involved a patient who consented to a prostate resection and was not told the procedure would involve tying off his sperm ducts. Cobbs, 8 Cal. 3d at 239 (discussing Bang v. Charles T. Miller Hosp., 251 Minn. 427 (1958)). (See ECF No. 72-1 at 9:8-10.) The sperm ducts are in the same operative field as the prostate, not in an "entirely separate anatomical location." Corn v. French, 71 Nev. 280 (1955) (cited in Cobbs, 8 Cal. 3d at 239), also involved one organ: the patient testified the surgeon told her he would only test a lump in her breast, and he removed the breast. The court held her claim should have gone to the jury. Corn, 71 Nev. at 282-83. Berkey v. Anderson, 1 Cal. App. 3d 790 (1969), also cited in the motion, involved a patient who consented to a myelogram after being told it was no more serious than the nerve tests he had already had; it was a spinal puncture. Perry v. Shaw, 88 Cal. App. 4th 658 (2001), involved a patient who consented to removal of excess skin from her arms, back, thighs, and stomach; during the same operation the surgeon enlarged her breasts using tissue moved from the sides of her chest. The court held: "He committed a battery." Id. at 664. In each case, the question was consent, not geography. The same question decides this case.

**4. Deliberate intent to deviate is adequately alleged.**

The motion says the FAC is "barren of a single allegation that Defendants intended to deviate" from the consented procedure. (ECF No. 72-1 at 10:10-14.) Intent may be alleged generally. Fed. R. Civ. P. 9(b). And under Cobbs, performing a different treatment from the one consented to supplies "the requisite element of deliberate intent to deviate." 8 Cal. 3d at 240. Deliberately activating a surgical laser on a patient who came for a cleaning is the intent Cobbs describes.

The FAC also pleads facts that make deliberate conduct plausible:

Plaintiff asked for full-mouth X-rays and was told "you don't qualify," and was shushed when he questioned the refusal. No photographs were taken. (FAC ¶ 34.) The same office, the same day, billed Plaintiff $90 out of pocket for the laser. (Id.) Defendants refused the imaging that would have recorded the condition of his teeth and gums immediately before the procedure, yet billed the laser outside insurance. No X-rays. No photographs. No record of Plaintiff's teeth and gums on the day of the laser. That was deliberate. Defendants knew what the laser would do, and they made sure no same-day "before" existed to compare against the "after." A smooth, tasteless gel was applied to his gums without telling him it was a numbing agent, after which his teeth and gums became completely numb. (FAC ¶ 34.) The laser was activated with no dentist in the room. (FAC ¶ 34.) The progress notes nonetheless state that a dentist examined him, though none did, and record a complaint Plaintiff did not make. (FAC ¶¶ 34, 82.) The laser was billed separately at $90 and kept out of insurance submission, "evidencing intent to conceal the procedure." (FAC ¶ 34.) The device logs were withheld. (FAC ¶ 34.)

A provider who is simply careless does not fabricate a false chart entry and route the charge around the insurer. These facts support a reasonable inference of deliberate conduct, which is all Rule 8 requires.

Piedra v. Dugan, 123 Cal. App. 4th 1483 (2004), does not help Defendants. Piedra affirmed a nonsuit after the plaintiffs presented their evidence at trial; the court held there was no evidence the physician intentionally violated a condition of the parents' consent. Id. at 1485-86. That is an evidentiary ruling on a full record, not a pleading standard. Nor does Piedra's statement that physicians need not discuss rare risks of common procedures (id. at 1490) apply. Plaintiff's claim is not that a known risk of a disclosed procedure materialized. It is that Schulz performed a procedure she never described to him.

**5. The "negligence" label does not defeat the claim.**

The motion calls this "a dental negligence lawsuit" in disguise. (ECF No. 72-1 at 7:19-21.) Plaintiff chooses his theory, and the facts pleaded fit battery.

**6. Each element of battery is pleaded.**

The motion lists four elements. (ECF No. 72-1 at 7:22-27, quoting So v. Shin, 212 Cal. App. 4th 652, 669 (2013).) In the medical setting, the consent element is met where the patient "consented to one medical procedure, but [the defendant] performed a substantially different medical procedure." CACI No. 530A. Each is pleaded.

Touching and intent. Schulz applied a substance that numbed Plaintiff's teeth and gums without telling him it was a numbing agent, then activated a Class IV laser on his gums. (FAC ¶ 34.) Performing a procedure the patient never agreed to supplies the intent. Cobbs, 8 Cal. 3d at 240. The facts in Part IV.C.4 independently show she acted deliberately.

No consent to what was done. Schulz told Plaintiff only that she wanted to use a laser "to kill bacteria." She did not tell him the laser would cut or burn his gums or char his teeth, and he did not agree to have his gums cut or burned — causing recession and tissue loss — his teeth charred, or his enamel cracked. (FAC ¶ 34.)

Harm. Charred enamel, cracked teeth, gum lacerations and recession, tissue loss, and permanent thermal damage requiring surgical grafts. (FAC ¶ 34.)

Offense. Any reasonable person would be offended to learn his teeth and gums were numbed without his knowledge and then cut and burned with a surgical laser. The motion does not argue otherwise.

**D. The Assault Allegations Are Pleaded Together With Battery and the Motion Identifies No Separate Defect.**

The FAC pleads battery and assault in a single count (FAC ¶ 81), and the motion briefs them together, stating that "[t]he elements of an assault are basically the same" as battery. (ECF No. 72-1 at 7:26-27, citing So, 212 Cal. App. 4th at 669.) The motion attacks assault only through its battery arguments, which fail for the reasons above. Plaintiff alleges Schulz refused X-rays, took no photographs that day, numbed him without telling him, and described a surgical laser as a bacteria-killing step, then used it to cut and burn his gums, causing recession and tissue loss, charred his teeth, and cracked at least thirteen of them. (FAC ¶ 34.) That is a substantially different procedure from the one described. Cobbs, 8 Cal. 3d at 239-40. Those steps show the battery was planned and deliberate, and they support punitive damages. (Parts IV.C.4, IV.H.)

**E. The Fraud and Falsification Allegations State a Claim.**

**1. The FAC pleads the who, what, when, where, and how.**

Who: Smiles for Health, Dr. Zorro, and hygienist Schulz. (FAC ¶¶ 13-15, 34, 82, 82A.) What: progress notes stating that Plaintiff presented with discomfort and that a dentist examined him, both false; and a $90 laser charge kept off insurance to conceal the procedure. (FAC ¶¶ 34, 82.) When: September 2, 2025. (FAC ¶¶ 34, 82.) Where: Defendants' office at 2656 Gateway Road, Suite 145, Carlsbad. (FAC ¶ 13.) How: through the chart entries (Exhibit E to the FAC), the billing record (Exhibit F), and transmission "through insurance and HIPAA channels." (FAC ¶¶ 34, 82.) To whom: Plaintiff's dental insurer and anyone receiving his records through those channels. (FAC ¶ 82.) Why the statements are false: Plaintiff reported no discomfort, and no dentist examined him. (FAC ¶ 34.)

That is enough under Rule 9(b). Kearns, 567 F.3d at 1124.

**2. Knowledge, intent, reliance, and damages are adequately pleaded.**

The motion argues that false chart notes "do not amount to fraud against the Plaintiff" and that the FAC does not plead intent to deceive, knowledge, intent to induce reliance, reliance, or damages. (ECF No. 72-1 at 11:10-16.) Knowledge and intent may be alleged generally. Fed. R. Civ. P. 9(b). The people who wrote the entries knew whether Plaintiff complained and whether a dentist examined him. The notes were no clerical slip. A hygienist's soft-tissue laser work on the gums must be performed under a dentist's direct supervision. (FAC ¶ 34.) No dentist examined Plaintiff. (Id.) The chart recorded exactly the two things that would make the laser look authorized: a complaint calling for treatment, and a dentist examination. Neither happened. (Id.) The laser charge from the same visit was kept off insurance, "evidencing intent to conceal the procedure." (Id.) The notes were then transmitted "through insurance and HIPAA channels." (FAC ¶ 82.) False entries that fill the exact gaps in an unauthorized procedure are facts, and intent to deceive follows from them.

Reliance and damages also appear on the face of the FAC. Schulz told Plaintiff the laser was needed "to kill bacteria." (FAC ¶ 34.) Plaintiff was charged $90 for it. (Id.) Plaintiff paid $90 for a bacteria-killing step on the strength of that description, and was injured by what was actually done instead. Part IV.J also identifies a separate false billing: Dr. Zorro billed Plaintiff's insurer $30 for a periodic oral evaluation (D0120) that did not occur, and the insurer paid it from Plaintiff's dental benefits, a fraud actionable under RICO without any reliance by Plaintiff, as shown below.

The fraud allegations are also pleaded as RICO predicate acts (mail and wire fraud and record tampering, FAC ¶ 65(a), (c), (h)). The motion does not address them in that role, where its reliance argument has no application: "a

plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 661 (2008). The wire fraud statute uses the same operative language. 18 U.S.C. § 1343.

**F. The FAC States a Claim for IIED.**

California law supplies the elements: extreme and outrageous conduct, intent or reckless disregard, severe emotional distress, and causation. Hughes v. Pair, 46 Cal. 4th 1035, 1050-51 (2009). The motion argues the dental conduct is not outrageous by reading ¶¶ 34-35 and 86-88 in isolation. (ECF No. 72-1 at 13:9-11.)

The FAC alleges that a health care provider, trusted with a patient's body, numbed him without telling him, used a Class IV surgical laser on his gums while he could not feel it, kept the charge off his insurance, and wrote a chart entry stating a complaint and an examination that never occurred. (FAC ¶¶ 34, 81-82.) These are not "insults, indignities, threats, annoyances, [or] petty oppressions." Hughes, 46 Cal. 4th at 1051. A reasonable jury could find that injuring a patient by numbing him with a gel he was not told was a numbing agent, then telling him one thing and doing another — a laser "to kill bacteria" that cut and burned his gums, causing recession and tissue loss, charred his teeth, and cracked at least thirteen of them — and falsifying the record to cover it goes "beyond all bounds of decency." The FAC alleges intent and reckless disregard (FAC ¶ 87) and severe emotional distress that is objectively serious. (FAC ¶ 88.)

Cochran v. Cochran, 65 Cal. App. 4th 488 (1998), does not help Defendants. Cochran involved a single answering-machine message, left for the

defendant's son, that the plaintiffs read as a threat. Here, the FAC does not rest on intent alone. It rests on what was done to Plaintiff's body. The relationship between the parties matters: a person in a protected relationship is entitled to "a greater degree of protection from insult and outrage than if he were a stranger." Alcorn v. Anbro Eng'g, Inc., 2 Cal. 3d 493, 498 n.2 (1970). A patient who is numbed and lying in a dental chair is entirely in the provider's hands.

The conduct was directed at Plaintiff, and it was meant to hurt him. Schulz numbed him without telling him, then used the laser on his own gums, so he could not feel the injury as it happened. (FAC ¶ 34.) Before the visit, Plaintiff had no discomfort; the chart entry stating he "presented with discomfort" is false. (Id.) Since the visit, he has had ongoing pain and sensitivity and needs surgical grafts. (FAC ¶ 81.) The FAC alleges Defendants acted intentionally (FAC ¶ 87) and names the "non-consensual dental laser assault" as a cause of his distress (FAC ¶ 86). Nothing more is required at this stage.

**G. The Bane Act and Child-Endangerment Allegations.**

Raised in an unexplained sentence outside the notice of motion (ECF No. 72-1 at 1:14-17), the label "vague and ambiguous" does not carry a movant's burden under Rule 12(b)(6).

On the merits, the Bane Act reaches anyone who interferes "by threat, intimidation, or coercion" with rights secured by state or federal law. Cal. Civ. Code § 52.1(b)-(c). California guarantees every person "the right of protection from bodily restraint or harm." Cal. Civ. Code § 43. The FAC alleges "dental mutilation without consent" as one of the acts of interference. (FAC ¶ 84.)

The child-endangerment allegations (FAC ¶ 85) concern Plaintiff's minor son; these Defendants are connected to them through their participation in the enterprise and conspiracy pleaded at FAC ¶¶ 63-64A, which the motion does

not challenge.

### H. The Punitive-Damages Arguments Fail.

#### 1. Section 425.13 does not apply in federal court.

California Code of Civil Procedure § 425.13 requires a plaintiff suing a health care provider for professional negligence to obtain a court order before pleading punitive damages. Federal courts in California have held that § 425.13 is procedural and does not apply in federal court. Jackson v. East Bay Hosp., 980 F. Supp. 1341, 1352 (N.D. Cal. 1997) ("The requirement is essentially a method of managing or directing a plaintiff's pleadings, rather than a determination of substantive rights."); Burrows v. Redbud Cmty. Hosp. Dist., 188 F.R.D. 356, 361 (N.D. Cal. 1997); George v. Sonoma Cnty. Sheriff's Dep't, 732 F. Supp. 2d 922, 951 (N.D. Cal. 2010); Estate of Prasad v. County of Sutter, 958 F. Supp. 2d 1101, 1119-21 (E.D. Cal. 2013) (holding that § 425.13 conflicts with Rule 8(a)(3) and does not apply). Courts in this District have cited Jackson with approval. Steel v. City of San Diego, 726 F. Supp. 2d 1172, 1182 (S.D. Cal. 2010). Jackson is particularly on point because, as here, the state claims were before the court on supplemental jurisdiction under 28 U.S.C. § 1367(a), not diversity.

Under Hanna and Shady Grove, a Federal Rule governing what a complaint must contain displaces a state rule requiring a court order before a remedy may be pleaded. Defendants' remaining § 425.13 authorities (Central Pathology, College Hospital, Goodstein, and Aquino) describe how the state procedure works in state court. They do not answer whether it applies here.

#### 2. The FAC pleads facts supporting malice, oppression, and fraud.

Defendants' alternative argument under Civil Code § 3294 also fails. Defendants' state cases (Smith, Searle, Anschutz, Grieves, and Brousseau)

describe pleading in state court. In federal court, Rules 8(a) and 9(b) "preclude district courts from applying a heightened pleading [standard] for allegations of malice or fraudulent intent." Clark v. Allstate Ins. Co., 106 F. Supp. 2d 1016, 1018-19 (S.D. Cal. 2000). Even under state law, Defendants' own case holds that "[w]hen the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be supported by pleading that the wrong was committed willfully or with a design to injure." G.D. Searle & Co. v. Superior Court, 49 Cal. App. 3d 22, 29 (1975). The rule Defendants quote from the next sentence applies "[w]hen nondeliberate injury is charged." Id. The injury here was deliberate. (FAC ¶¶ 34, 65(d), 87.) That is the "evil motive" Searle calls "the central element" of malice. Searle, 49 Cal. App. 3d at 30. "Clear and convincing evidence" is what a plaintiff must prove at trial, Cal. Civ. Code § 3294(a); it is not a pleading rule. The FAC does not rest on labels like "willful" or "reckless." It pleads specific facts: numbing with a gel he was not told was a numbing agent, followed by a surgical laser on a patient who could not feel it; a separate $90 charge kept off insurance "to conceal the procedure"; and chart entries recording a complaint and an examination that did not happen. (FAC ¶¶ 34, 81-82.) Intentionally injuring a patient and falsifying the record to hide it is "despicable conduct" carried on "with a willful and conscious disregard of the rights or safety of others," Cal. Civ. Code § 3294(c)(1); numbing a patient so he cannot feel his gums being cut subjects him to "cruel and unjust hardship in conscious disregard of [his] rights," id. § 3294(c)(2); and the false entries are "fraud" within § 3294(c)(3). Dr. Zorro, the supervising dentist whose name is on the chart entry falsely recording an examination (FAC ¶¶ 15, 34, 82A), performed no oral examination (FAC ¶ 34), although she billed Plaintiff's insurer for one (D0120), and took no intraoral photographs that day (facts Plaintiff would add, Part IV.J). The FAC alleges that she authorized the falsified examination entry (FAC ¶ 82A). And she left the injury unexamined

and let the false entry stand. That is ratification. Each independently satisfies Cal. Civ. Code § 3294(b). Dr. Zorro is the corporation's sole officer (chief executive officer, secretary, and chief financial officer) and sole director, so her own conduct satisfies § 3294(b) as to the corporation.

State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408 (2003), addresses due-process limits on the size of a punitive award after trial; it says nothing about what a complaint must allege.

Defendants' request that punitive damages be "stricken without leave to amend" (ECF No. 72-1 at 14:15-17) fails for the reasons stated in Parts IV.H.1, IV.H.2, and IV.J.

**I. Attorney's Fees, Treble Damages, and Other Relief.**

Civil RICO provides that a prevailing plaintiff "shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). The Bane Act authorizes fees. Cal. Civ. Code § 52.1(i). The motion does not mention § 1964(c). The restraining-order, statutory-damages, and declaratory-relief objections (ECF No. 72-1 at 1:18-20) are not argued and go to the prayer, not to any claim. The equitable relief sought against these Defendants includes, but is not limited to, preserving the September 2, 2025 laser device logs they have not produced (FAC ¶ 34, Section IX; Prayer ¶¶ b, d(i), e), and statutory relief includes treble damages (Prayer ¶ i) and Civil Code § 52 damages through the Bane Act count (Cal. Civ. Code § 52.1(c); FAC ¶ 84). Damages include, but are not limited to: the non-consensual laser assault and battery itself (FAC ¶¶ 81, 86); gum lacerations, recession and tissue loss, cracking of at least thirteen teeth, charring of enamel, and permanent thermal damage (FAC ¶ 34); permanent dental mutilation requiring surgical grafts and future dental and periodontal treatment (FAC ¶¶ 34, 81, 84); pain and suffering, including ongoing pain and sensitivity

(FAC ¶ 81); emotional distress (Prayer ¶ h); and the $90 charge (FAC ¶ 34). These Defendants also face liability for the full damages caused by the enterprise and conspiracy, trebled as § 1964(c) provides. (FAC ¶¶ 63-64A; Prayer ¶¶ h-j.)

**J. If Any Claim Is Found Deficient, Leave to Amend Must Be Granted.**

Defendants ask the Court to find that Plaintiff "cannot cure the deficiencies by amendment" because "[e]ven after amendment, no facts are alleged to support any claims against" them. (ECF No. 72-1 at 18:24-27.) The record shows otherwise.

First, Plaintiff identifies facts he would add. The Court may consider facts presented in opposition in deciding whether amendment would be futile. Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). Plaintiff would plead, among other things: that Schulz refused Plaintiff's request for X-rays, stating "you don't qualify"; that when Plaintiff renewed the request, the front desk called out "$50," Schulz shushed Plaintiff, and she took none; that she told Plaintiff she had to polish his teeth first, before any cleaning, and applied a tasteless substance, later represented as mint prophy paste, that numbed his teeth and gums; the false chart entries "IS HAVING DISCOMFORT but didnt say where" and "Pt reports discomfort," made although Plaintiff reported none and had been numbed; that Schulz told Plaintiff only that she wanted to use a laser to kill bacteria, and instead, using a Class IV surgical laser with an uninitiated tip, cut and burned his gums, causing tissue loss and permanent gum recession that worsened over time, followed by bone loss and widening gaps between his teeth, especially the rear teeth; that she charred his teeth adjacent to the gum line, causing at least thirteen of them to crack and require future dental treatment, leaving Plaintiff with ongoing pain and sensitivity; that Dr. Zorro performed no oral examination and took no intraoral photographs that day; the

$90 card charge excluded from insurance; the D0120 examination billed but not performed and paid by the insurer; the withheld device logs; and the relief sought against these Defendants. Those are facts, not a request that the Court "trust me." Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013).

Second, none of Defendants' authorities for denying leave fits this case. Salameh involved plaintiffs who had been given specific instructions by the court and did not follow them. Id. Dower v. United Airlines, Inc., 329 F.2d 684, 685 (9th Cir. 1964), involved a plaintiff who declined the court's offer to amend. And Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003), reversed in part the dismissal of a pro se plaintiff's claims and directed leave to amend a third time. Here, no court has ruled on the sufficiency of Plaintiff's dental allegations, and Plaintiff has not refused any opportunity to amend; he asked for one (ECF No. 25).

Third, the "previously amended" rule of Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996), does not apply here. Plaintiff amended once, before any defendant appeared, and never in response to any ruling or any defendant's argument. The only prior order on the pleadings dismissed the original complaint without prejudice solely because the filing fee had not been prepaid, and gave Plaintiff thirty days to cure. (ECF No. 14 at 5.)

Fourth, there is no bad faith, undue delay, or prejudice. Foman, 371 U.S. at 182. The case is at the pleading stage; no discovery has occurred. Plaintiff sought leave to amend on May 4, 2026, three weeks after filing the FAC. (ECF No. 25.) When Defendants asked for more time to respond, Plaintiff agreed. (ECF No. 72-4.) Nor is the theory of amendment new. On July 12, 2026, Plaintiff told Defendants in writing that the amended pleading would allege intent and the "who/what/when/where/how required under Rule 9(b)." (ECF No. 72-4.) The facts listed above supply exactly that.

## V. CONCLUSION

The motion should be denied. If the Court finds any claim insufficient, Plaintiff requests leave to amend, and asks that any order (1) be limited to the grounds noticed and argued in the motion, and (2) state that the civil RICO claims against these Defendants (FAC ¶¶ 63-66) and the respondeat superior allegations (FAC ¶ 82A) are not affected.

Dated: October 5, 2026

Respectfully submitted,

ALIREZA SALEMI
Plaintiff, Pro Se